G.    **Anecdotal Evidence From 87 Declarants Supports the Claims of Gender Discrimination at Novartis.**

In addition to Plaintiffs' anecdotal evidence, 87 women provided declarations that attest to the pay, promotion, and pregnancy discrimination at Novartis. See generally Chart of Declarations (Ex. 35) and Exhibits 27-33. These women hail from 31 states, and include 24 accounts of pay discrimination, 36 accounts of promotion discrimination, and 28 accounts of pregnancy discrimination.[5] Id. Additionally, 24 declarants describe Novartis' failure to address complaints of discrimination, and 11 declarants describe how subjective evaluations were used in a discriminatory manner. Id. Though some declarants fall outside of the class definition, they are nonetheless included to demonstrate the pervasive and long-standing history of discrimination at Novartis.

H.    **Novartis Has Had Ample Notice of Systemic Barriers for Women But Has Failed to Take Effective Measures to Address and Eliminate Such Barriers.**

Novartis has known about, but refused to effectively combat, the systemic barriers in place against its female employees. While Ms. O'Hagan agrees that, as Head of HR for General Medicines, she should understand the EEO processes and ensure that discrimination does not exist at Novartis, (see O'Hagan Dep. 35), Ms. O'Hagan has no idea of the number of EEO charges filed against Novartis in the last three years. Id. at 332-34. In fact, neither Ms. O'Hagan, nor any other high-ranking Novartis representative deposed by Plaintiffs, including the Global Head of Novartis Pharmaceuticals and the former Vice President of Diversity, has even bothered to read the entire Complaint in this case. See e.g., id. at 24; Ebeling Dep. 29, Freire Dep. 8 (Ex. 5).

---

[5] Plaintiffs do not move for class certification on sexual harassment, retaliation, or hostile work environment. However, though their other claims are not explicitly brought herein, 24 women complain of sexual harassment in their declaration; 14 describe the retaliation they experienced after complaining of prohibited activity at Novartis; and 53 assert they experienced a hostile work environment while employed at Novartis. See Chart of Declarations (Ex. 35) and Exhibits 27-33.

25

By its own admission, Novartis requires an extremely high threshold of complaints before it takes action to eliminate discrimination. Global Head of Novartis Pharmaceuticals Thomas Ebeling describes the number of women who would have to complain before he considered gender discrimination a serious problem: "when half the workforce is very much dissatisfied and is complaining and is trying to sue the company, that would be a dimension which would concern me." Ebeling Dep. 97-98. Because women comprise approximately 50 percent of first level sales representative positions, Mr. Ebeling seems to think that all of them would have to complain before he would be concerned.

Finally, numerous women complained directly to Human Resources of gender discrimination, but received no serious response. Plaintiffs attach herewith 24 declarations that support their allegations that HR failed to properly investigate and respond to complaints. See generally Chart of Declarations and Exhibits 27-33.

## IV.    ARGUMENT

### A.    Courts in the Second Circuit and Other Circuits Have Repeatedly Granted Class Certification in Title VII Employment Cases Nearly Identical to the Facts Presented Here. Plaintiffs' Powerful Case for Certifying a Class of Novartis Female Sales Personnel Easily Satisfies the Rule 23 Test Formulated by the Second Circuit's Recent Decision in In re Initial Public Offering Securities Litigation ("IPO").

#### 1.    Employment Discrimination Class Actions are Favored by the Courts.

For over four decades, starting with the 1966 modernization of Rule 23 that launched class actions as a potent remedial device, the Supreme Court has recognized that Title VII lawsuits are "by their very nature class suits, involving classwide wrongs." East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 405 (1977). As the Supreme Court noted in Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997), civil rights cases against parties charged with wrongful class-based discrimination are "prime examples" of classes that deserve

class certification. See Beckmann v. CBS, Inc., 192 F.R.D. 608, 615 (D. Minn. 2000). One of

the primary purposes of Federal Rule of Civil Procedure 23 was to facilitate litigation in civil

rights claims—like those involved here—challenging systemic practices. Fed.R.Civ.P. 23(b)(2),

Advisory Committee Notes, 39 F.R.D. 69, 102 (1966).

2.    **Plaintiffs' Suit Represents a Prototypical Example of a Class that Courts Customarily Certify.**

In General Tel. & Tel. Southwest v. Falcon, 457 U.S. 147, 159 & n.15 (1982), the

Supreme Court observed that "an entirely subjective [employment] decisionmaking process"

could be a mechanism for class-wide discrimination. Such subjectivity, held Falcon, can be a

common employment policy that satisfies the pre-requisites for class certification under Rule 23.

Subsequently, in Watson v. Fort Worth Bank of Trust Co., 487 U.S. 977, 990-91 (1988), the

Court reaffirmed that subjective decision-making constitutes an identifiable and measurable

employment practice that a plaintiff may challenge under a Title VII disparate-impact theory.

Id., 487 U.S. at 990-91. Watson further ruled that decision-making that combines objective with

subjective criteria (as in Novartis' performance system) must be considered subjective for

purposes of Title VII. [("**However one might distinguish 'subjective' from 'objective' criteria, it is apparent that selection systems that combine both types would generally have to be considered subjective in nature.**") 487 U.S. at 989 (emphasis added).]

Building on these principles, the courts in this circuit have consistently certified Title VII

employment classes and other civil rights classes in factual scenarios closely resembling

Novartis' systemic discrimination against its female sales force.[6]

_____

[6] See Hnot v. Willis Group Holdings, 228 F.R.D. 476 (S.D.N.Y. 2005 (Lynch, J.)) (in certifying a class of current and past female officers and female employees eligible to receive officer titles, employer's conferral of unbridled discretion to regional officers supported finding of commonality.); Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2d Cir. 2001) (directing district court to certify plaintiffs' disparate impact claim for Rule 23 (b)(2) class treatment where African-American employees

Courts in other circuits have just as readily certified Title VII classes where, as in this case, the defendant-employer gives managers unencumbered discretionary authority over pay and promotion, and female and/or minority employees offer statistical and anecdotal proof that this discretion serves as a conduit for biased employment decisions, explaining disparities in pay and promotions affecting women and minority employees.[7]

3.    **Certifying a Class Here is Completely Consistent with IPO.**

The Second Circuit's recent decision, In re Initial Public Offering Sec. Litig., 471 F.3d 24 (2d Cir. 2006),[8] did not break the powerful phalanx of supporting case law discussed above.

---

challenged Metro North's policy of delegating to department supervisors discretionary authority to make disciplinary and promotion decisions); Warren v. Xerox Corp., 2004 WL 1562884 (E.D.N.Y. Jan. 26, 2004) (certifying class of African-American sales people); Latino Officers' Ass'n of New York v. City of New York, 209 F.R.D. 79 (S.D.N.Y. 2002) (certifying class of Latino and African-American members of the NYPD who alleged disparate disciplinary treatment where the disciplinary process was rife with subjectivity); Wright v. Stern, 2003 WL 21543539 (S.D.N.Y. July 9, 2002) (certifying class of African-American and Hispanic park employees who claimed that defendant-governmental employers discriminated against minorities in pay and promotion); Krueger v. New York Telephone Co., 163 F.R.D. 433 (S.D.N.Y. 1995) (age discrimination class certified where defendant-corporation disproportionately fired older employees); Caridad v. Metro-North Commuter Railroad Co., 191 F.3d 283 (2d Cir. 1999) (reversing denial of class certification on behalf of African-American employees who were subjected to differential disciplinary treatment); Jones v. Ford Motor Credit Co., 2005 WL 743213 (S.D.N.Y. March 31, 2005) (class certification granted to African-American borrowers who claimed that defendant's lending policy of delegating discretional authority to approve loans to dealers practices violated the Equal Credit Opportunity Act.).

[7] See, e.g., Smith v. Nike Retail Services, Inc., 234 F.R.D. 648 (N.D. Ill. 2006); Mathers v. Northshore Mining Co., 217 F.R.D. 474 (D. Minn. 2003); McReynolds v. Sodexho Marriott Services, 208 F.R.D. 428 (D. D.C. 2002); Taylor v. District of Columbia Water & Sewer Auth., 205 F.R.D. 43 (D. D.C. 2002); Wilfong v. Rent-a-Car, Inc., 2001 WL 1795093 (S.D. Ill. Dec. 27, 2001); Staton v. Boeing, 327 F.3d 938 (9th Cir. 2003); Beckmann v. CBS, Inc., 192 F.R.D. 608 (D. Minn. 2000); Morgan v. United Parcel Service of America, Inc., 169 F.R.D. 349 (E.D. Mo., 1996); Shores v. Publix Super Markets, Inc., 1996 WL 407850 (M.D. Fla. Mar 12, 1996); Shipe v. Trinity Indus. 987 F. 2d 311 (5th Cir. 1993); Barefield v. Chevron U.S.A., Inc., 1987 WL 65054 (N.D. Cal. 1987).

[8] IPO was an unwieldy securities case against dozens of defendants occupying different positions and roles in the business of issuing and distributing stocks. Defendants included 55 underwriters, 310 issuers and hundreds of individual officers of the issuing companies. Plaintiffs tried to turn defendants' multi-tiered fraud into a class action by invoking a presumption of reliance in the face of an inefficient initial offering market. IPO is far different from this gender discrimination class, which epitomizes exactly the type of systemic wrong that Rule 23 was designed to remedy.

The IPO Appellate Court disapproved of the amorphously broad language of Caridad v. Metro-North Commuter R.R. Co., 191 F.3d 283 (2d Cir. 1999) and In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 254 (2d Cir. 2001) ("Visa Check"). Caridad held that to prevail on a motion for class certification, a plaintiff need only make "**some showing**" that Rule 23 requirements have been met. Caridad, 191 F.3d 283 (emphasis added). Caridad was followed by Visa Check, which affirmed a district court's conclusion as to commonality on the lenient basis that the plaintiffs' expert's methodology used to show common questions of fact "**was not fatally flawed.**" Visa Check/MasterMoney Antitrust Litig., 280 F.3d 254 (emphasis added).

The Second Circuit in IPO: (a) commented that it is "surprisingly unsettled in this Circuit. . . . what standards govern a district judge in adjudicating a motion for class certification;" (b) repudiated its own language in Caridad and Visa Check that "some showing" and a class proponent's expert submission that was not "fatally flawed" sufficed to earn class certification; and (c) spelled out a new, clearer standard which plaintiff must satisfy on a motion for class certification. The IPO panel held that:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

IPO, 471 F.3d 24, 41 (2d Cir. 2006). The Second Circuit reversed Judge Scheindlin's grant of class certification and ruled that plaintiffs' own allegations and evidence demonstrated that they

could not fulfill Rule 23's requirement that common questions predominate over individual questions. Id. at 42.

Yet, IPO articulates a standard already foreshadowed by judges in this Circuit. Even under the old Caridad-Visa Check regime (plaintiffs need only make "some showing" and an expert's affidavit in support of certification and it will pass muster if it is not "fatally flawed"), many of the district judges in this Circuit employed a stringent approach before granting class certification, which is virtually the same as the one applied by IPO.[9]

For example, in Hnot v. Willis Group Holdings, 228 F.R.D.476, 484 (S.D.N.Y. 2005 (Lynch, J.)), the court certified a class of female employees alleging gender discrimination in pay and promotion after finding that plaintiffs' expert presented a "plausible" position that defendant-employer's delegation of discretionary authority produced statistically significant adverse effects on the female class of officer-eligible employees. This is a far cry from Visa Check's allowance of expert evidence that is "not fatally flawed."

Similarly, in In re Salomon Analyst Metromedia Litig., 236 F.R.D. 208, 212 (S.D.N.Y. 2006 (Lynch, J.)), this court held that to establish commonality, plaintiff must show that the action "raise[s] an issue of law or fact common to the class." In DeMarco v. Robertson Stephens, Inc., 228 F.R.D. 468, 470 (S.D.N.Y. 2005), Judge Lynch certified a class after emphasizing that the plaintiffs must meet a higher standard than that which prevails on a motion to dismiss. Finally, in McBean v. City of New York, 228 F.R.D. 487, 491-92 (S.D.N.Y. 2005), Judge Lynch certified a class that consisted of pre-trial detainees who were arraigned on certain misdemeanors and strip-searched upon their post-arraignment admission to jails. Judge Lynch

---

[9] Distrist courts have already used the IPO standard to certify a class action. See In re Citigroup Pension Plan Erisa Litig., 2006 U.S. Dist. LEXIS 92000, at *15 (S.D.N.Y. 2006)(certifying a class of plaintiffs bringing ERISA claims after noting that district courts may now certify classes only after assessing "all the relevant evidence admitted at the class certification stage," and finding that "each of the Rule 23 requirements has been met.")

foreshadowed IPO's standard and held that to obtain class certification "plaintiffs must demonstrate that the class meets the express requirements of [Rule 23]. . . . Plaintiffs have the burden of establishing that the class satisfies all requirements. . . . [And] district courts must conduct a rigorous analysis of the Rule 23 requirements, which may require the court to probe behind the pleadings." Id. "**Some showing**," in other words, will not afford plaintiffs class status. Because there is little (or no) difference between this burden and the one laid down by IPO, nothing in IPO precludes certifying a meritorious Title VII case like the one at bar.

Significantly, in the circuits that have already adopted the sharply-defined class action test (the Seventh Circuit, Third Circuit, Eighth Circuit and Eleventh Circuit), courts have readily certified Title VII employment cases where the facts match those shown by Plaintiffs in this lawsuit. For example, in Smith v. Nike Retail Services, Inc., 234 F.R.D. 648 (N.D. Ill. 2006), African-American employees alleged that, because of the company's decentralized delegation of discretion to Nike managers, Nike's Chicago-based African-American employees were victimized by a variety of discriminatory practices. To support class certification, plaintiffs produced statistical and anecdotal evidence that Nike's policies of leaving employment decisions to the unfettered discretion of store managers resulted in a disparate impact on African-American employment opportunities.

The Nike court granted class certification, but explicitly rejected plaintiffs' contention that it should accept as true all of plaintiffs' allegations and supporting evidence in favor of certifying a class. Stated differently, (and identically with IPO) Nike held that it is not enough for a class plaintiff to present "some evidence" and expect to win class certification. The Nike Court certified a class consistent with Seventh Circuit precedent that places a preponderance of

31

the evidence burden on the party requesting class certification.  See Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 677 (7th Cir. 2001).[10]

   **4.   Under IPO's Clarified Standard, Plaintiffs Have Satisfied All the Requirements of Rule 23.**

   Defendants have produced deposition testimony from Novartis Head of Human Resources for General Medicine Judy O'Hagan which demonstrates that Novartis delegated unfettered discretion regarding pay and promotion to a predominantly male managerial class. See O'Hagan Dep. 307-18. Ms. O'Hagan herself acknowledged the subjectivity inherent in Novartis' evaluation process.  Id.  Additionally, Plaintiffs have submitted the report and declaration of Expert witnesses Louis Lanier, Ph.D., and the report of David Martin, Ph.D. Eighty-seven declarations from women in 31 buttress the cold statistical evidence and demonstrate that Novartis is saturated with an anti-women culture that results in women being relegated to second-class positions with respect to pay and promotion.  Plaintiffs have reviewed two million pages of documents produced by Novartis and have taken and defended 29 depositions.  Based on the evidence produced during discovery, the expert declarations and reports of Plaintiffs' experts, and 87 declarations from current and former female sales personnel, Plaintiffs satisfy the IPO standard.

---

[10] See also Mathers v. Northshore Mining, Co., 217 F.R.D. 474, 483 (D. Minn. 2003) (certifying a class of female employees who alleged that defendant-employer used a subjective decision-making process which caused disparities in earnings and promotions.  Mathers relied on Eighth Circuit Court of Appeals precedent that "in reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can properly be resolved as a class action.") See additionally McReynolds v. Sodexho Marriott Services, 208 F.R.D. 428 (D. D.C. 2002), where the court certified a class of African American employees who had been denied access to defendant-Sodexho's promotional pool for managerial positions.  Plaintiffs proffered (1) proof that Sodexho conferred decentralized and unfettered discretionary power vested in predominantly white managers and (2) statistical and anecdotal evidence that demonstrated that the company discriminated against African-American employees.   Sodexho certified the class under the D.C. Circuit's approach that class representatives are required to make a "significant showing" (not "some showing" à la Caridad) that the employer's promotion practices operated under a common policy of discrimination, citing  Hartman v. Duffy, 19 F.3d 1459, 1472 (D.C. Cir. 1994).

**B.     Standards for Class Actions Under F.R.C.P. Rule 23.**

As proponents of class certification, Plaintiffs must show that the proposed class meets

the four prerequisites set forth in Rule 23(a) of the Federal Rules of Civil Procedure. See e.g.,

Hnot v. Willis Group Holdings LTD, 228 F.R.D. 476, 480-81 (S.D.N.Y. 2005) ("Plaintiffs have

the burden of establishing that the class satisfies all requirements."); IPO, supra, 471 F.3d 24, 27

("A district judge may certify a class only after making determinations that each of the Rule 23

requirements has been met."); McBean v. The City of New York, 228 F.R.D. 487, 491-492

(S.D.N.Y. 2005, (Lynch, J)) ("To obtain class certification, plaintiffs must demonstrate that the

class meets the express requirements of [Rule 23].") (Gen. Tel. Co. of the Southwest v. Falcon,

457 U.S. 147, 156 (1982)).  Rule 23(a)'s four prerequisites are: (1) numerosity; (2) commonality;

(3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  The class meets all of

these requirements.

After meeting the Rule 23(a) challenges, Plaintiffs must show that the proposed class fits

into one of the three categories set forth in Rule 23(b). See e.g., Amchem Products, Inc. v.

Windsor, 521 U.S. 591, 614 (1997); Fed. R. Civ. P. 23(b); Visa Check/Mastermoney Antitrust

Litig., 280 F.3d 124, 132-3 (2d Cir. 2001), cert denied, 122 S. Ct. 2382 (2002).  The class

proposed here satisfies the requirements of Rule 23(b)(2), which permits an action to be

maintained as a class action where the plaintiffs establish that (1) the complaint seeks relief that

is predominantly injunctive or declaratory, and (2) the defendant "acted or refused to act on

grounds generally applicable to the class." Fed. R. Civ. P. 23(a)(2).  The class also satisfies Rule

23(b)(3), which requires that the court find "that the questions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy. . . ." Fed. R. Civ. P. 23(b)(3). Alternatively, and discussed below, a so-called "hybrid" class action, involving elements of both (b)(2) and (b)(3) classes, may also be appropriate.

### C.    The Proposed Class Meets the Requirements of Rule 23(a).

#### 1.    The Proposed Class is Ascertainable.

The proposed class in this matter is sufficiently ascertainable so as to qualify for class certification. While Rule 23(a) does not expressly require that a class be definite in order to be certified as a class action, a requirement that there be an identifiable class has been implied by the courts.[11]

The putative class consists of all women who are currently holding, or have held, a sales-related job position with Novartis during the time period July 15, 2002 through the present, including those who have held positions as Sales Representatives, Sales Consultants, Senior Sales Consultants, Executive Sales Consultants, Sales Associates, Sales Specialists, Senior Sales Specialists, and District Managers I. Because such potential class members are readily identifiable by objective, rather than subjective, criteria, the ascertainability requirement is met.

#### 2.    Plaintiffs Satisfy Rule 23(a)(1)'s Requirement of Numerosity Because the Proposed Number of Class Members Make Joinder Impracticable.

To establish numerosity for class certification, Plaintiffs must show that the class "is so numerous that the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(l). There are

---

[11] See e.g., In re Methyl Tertiary Butyl Ether Products Liability Litig., 209 F.R.D. 323, 336 (S.D.N.Y. 2002) ("The requirement of ascertainability, though not expressly mentioned in Rule 23, is fundamental."); Hnot v. Willis Group Holdings LTD, 228 F.R.D. 476, 481-2 (S.D.N.Y. 2005) (plaintiffs must demonstrate "that the aggrieved class can be readily identified."); See People United for Children, Inc., v. City of New York, 214 F.R.D. 252, 256 (S.D.N.Y. 2003). A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination. See e.g., Hnot at 481 (citing Dunnigan v. Metropolitan Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003)).

potentially thousands of women in the proposed class. Compl. at 14. These numbers are more than sufficient to establish numerosity, "which is presumed at a level of 40 [class] members" in this Circuit. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), citing, 1 Newberg On Class Actions 2d, (1985 ed.) § 3.05; see also In re Worldcom, Inc. Sec. Litig., 219 F.R.D. 267, 279 (S.D.N.Y. 2003); Wolkenstein v. Reville, 539 F.Supp. 87, 89 (W.D.N.Y. 1982). Thus, because the potential class members consist of members of the sales force from July 15, 2002 to the present and numbers in the thousands, Plaintiffs satisfy the requirement of numerosity under Fed. R. Civ. P. 23(a)(1). The number of declarations of potential class members who complain of disparate pay and promotion exceeds 80. Thus, the potential class clearly exceeds the number of individuals that this Circuit deems appropriate for class actions.

### 3. Plaintiffs Satisfy 23(a)(2)'s Requirement of Commonality Because The Proposed Class Members Share Common Questions of Law and Fact.

In order to demonstrate the requisite commonality for class certification, Plaintiffs must show that the class members' claims share common questions of law or fact. See e.g., Fed. R. Civ. P. 23(a)(2); Falcon, 457 U.S. at 157; see also Robinson, 267 F.3d at 144 (citing Marisol A. v. Guiliani, 126 F.3d 372, 376 (2d Cir. 1997)). The commonality test is to be liberally applied and is satisfied if there is at least one common issue of fact or law that affects all class members. See Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992). Further, any differences in the ways in which the defendants' practices affect individual members of the class do not undermine these common questions. See e.g., Latino Officers Ass'n of New York v. The City of New York, 209 F.R.D. 79, 88 (S.D.N.Y. 2002) ("the fact that defendants' allegedly discriminatory practices manifest in myriad ways cannot save the defendants from answering to the class of persons injured by those practices."); Caridad, 191 F.3d at 292-93 (certification not defeated merely because some class members were victims of discriminatory discipline while

35

others were the victims of discrimination in promotion.) Plaintiffs satisfy the commonality requirement because this case raises multiple common factual and legal claims based on patterns of conduct by Novartis that are common to the class.

In short, Plaintiffs rely on the same evidence (statistical data, personnel management analysis, sworn deposition testimony, extensive anecdotal information contained in voluminous declarations, and documents), which involves the same questions of law (whether Novartis' treatment of women constitutes a pattern or practice of gender discrimination or disparate impact) and the same facts (whether Novartis' subjective evaluation system and other forms of discretion result in gender bias). Commonality is clear.

### a.    Plaintiffs and the Class Have Common Claims That Rely on the Same Evidence.

Plaintiffs and the class have common claims about Novartis' promotion and compensation practices and their effect on women. Novartis uses personnel policies and practices to delegate both the promotion and pay decisions to predominantly male managers. These managers rely on highly subjective criteria with virtually no oversight and operate in a corporate atmosphere extremely hostile to women. Novartis' delegation of promotion and pay decisions to managers who enjoy unbridled decision-making power constitutes a policy or practice sufficient to satisfy the commonality requirement. Due to the consistent application of subjective criteria for pay and promotion, commonality exists.[12]

---

[12] See e.g., Latino Officers Ass'n v. City of New York, 209 F.R.D. 79, 88 (S.D.N.Y. 2002) (holding that "the delegation of discretionary authority to supervisors constitutes a policy or practice sufficient to satisfy the commonality requirement"); Caridad, 191 F. 3d at 286, 292-93 (certifying class action where "class plaintiffs' statistical evidence support[ed] a finding of commonality on [a] promotion claim" that involved a subjective decision making process that yielded a class-wide impact); Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 482 (S.D.N.Y. 2005) (finding commonality met where female employees alleged that a delegation policy subjected them to discrimination because of the unfettered discretion resting in the hands of regional officers); Wagner v. The NurtraSweet Co., 170, F.R.D. 448, 450-51 (N.D. Ill. 1997) (finding commonality met where company-wide salary guidelines, in conjunction with

Plaintiffs and the class rely upon the same type of evidence to make their claim that subjective criteria used in performance evaluations ultimately stymie professional opportunities for women at Novartis and result in them receiving lower compensation than their male counterparts: company-wide statistical data, an expert report analyzing Novartis' personnel structure and payment and promotion, and documents and deposition testimony.[13]  Plaintiffs' statistical evidence refutes the contention that Novartis' actions are "isolated or discrete incidents," rather, they "form a pattern of behavior that commonly affects all of the proposed class members." Marisol v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997).

     **b.**    **Multiple Common Questions of Fact and Law Are Present in This Case.**

Plaintiffs' claims raise common questions of fact.  Such common questions include, *inter alia*, whether through its policies, practices, and procedures: (a) Novartis has denied or delayed the promotion of females; (b) Novartis has paid females less than comparably situated male employees; and (c) Novartis' policies and procedures have had a disparate impact on pregnant employees.

---

managerial discretion, "systematically undercompensated women"); Morgan v. United Parcel Service, 169 F.R.D. 349, 356 (E.D. Mo. 1996) (finding commonality requirement met where plaintiffs alleged that employer violated Title VII by implementing nationwide personnel policies that included a subjective, decentralized system of decision-making and a subjective method of evaluating and compensating employees); see also Smith v. Nike Retail Services, Inc., 234 F.R.D. 648 (N.D. Ill. 2006); McReynolds v. Sodexho Marriott Services, 208 F.R.D.428 (D.D.C. 2002); Mathers v. Northshore Mining, Co., 217 F.R.D.474 (D.Minn. 2003); Warren v. Xerox Co., 2004 WL 1562884 (E.D.N.Y. 2004), all of which certified Title VII employment discrimination classes where plaintiffs alleged that defendant employers' use of a subjective decision-making process adversely affected the pay and promotional opportunities of protected classes.

[13] Class certification can be based on statistical evidence alone, Hnot v. Willis Group Holding Ltd., 2005 WL 659475 *6 (S.D.N.Y. 2005), but courts have the discretion to rely on anecdotal evidence when statistical evidence is weak. Id. (citing Cokely v. N.Y. Convention Ctr. Operating Corp., WL 1751738, at *3 (S.D.N.Y. 2003) (requiring plaintiffs to compile sworn statements from a large enough sample of plaintiffs to demonstrate that common issues exist where no statistical data was available)).  Thus, the combination of statistical evidence, expert reports, and anecdotal accounts comfortably suffice to demonstrate commonality in this case.

Numerous common questions of law operate in the instant action, including, *inter alia*, (a) whether Novartis has engaged in unlawful, systemic gender discrimination in its selection, promotion, and advancement practices and/or procedures, and in the general terms and conditions of work and employment; (b) whether Novartis has unlawfully discriminated against female employees based on their pregnancies; and (c) whether Novartis is liable for a continuing systemic violation of Title VII.

### c.    Common Issues of Law Arise From Plaintiffs' Reliance on Both Disparate Impact and Disparate Treatment Theories of Gender Discrimination.

Plaintiffs' claims raise common class-wide issues of law, under both disparate impact and disparate treatment theories of gender discrimination.

### i.    Disparate Treatment.

In order to prevail under a class-wide disparate **treatment** theory, Plaintiffs must establish that intentional discrimination against female Novartis sales force employees was standard operating procedure. See Int'l Bhd. Of Teamsters v. United States, 431 U.S. 324, 336 (1977). Particularly, the focus of the proof rests on the class as a whole and not on the treatment of individual plaintiffs or class members. See Robinson, 267 F.3d at 158 & n.5. The most important evidence from which a pattern of intentional discrimination may be inferred is class-wide statistical evidence. See Teamsters, 431 U.S. at 338-39; Robinson, 267 F.3d at 158 n.5, (statistical evidence is the core of plaintiffs' pattern or practice in disparate treatment cases).

The class-wide statistical evidence in Dr. Lanier's report demonstrates the significant gender disparities with regard to compensation and promotion. In short, Dr. Lanier concluded that males were 2.2 times more likely than females to receive a promotion to management during the period 2002-2004, which is statistically significant to 4.1 standard deviations. See Lanier Report p. 18. With respect to pay, women earned an average of approximately $1,600 less than

38

their male counterparts annually across sales job categories, deviations in all years from 2002 through 2005. See Lanier Report pp. 12-16. In Wright v. Stern, 2003 WL 21543539, at *5-6 (S.D.N.Y. 2003), the court held that where statistics showed 6.12 standard deviations between minority and Caucasian compensation, plaintiffs' statistics demonstrated common questions of fact because they tend to show that being an African-American or Hispanic has an effect on an employee's compensation and geographic assignment.  See also Hnot, supra, 286 F.R.D. 476, 484 (S.D.N.Y. 2005) ("Class certification can be based on statistical evidence alone.").

Plaintiffs here also rely on the anecdotal evidence of Novartis sales representatives and managers to show the systemic discrimination against women at Novartis.  The chart attached as Ex. 35 summarizes the claims of 87 women who gave declarations supporting Plaintiffs' claims that Novartis intentional discrimination against females was standard operating procedure.  The anecdotal accounts bring "the cold numbers convincingly to life," Teamsters, 431 U.S. at 338, and provide "texture to the statistics," Robinson, 267 F.3d at 168.

Thus, the combination of statistics and anecdotal evidence assist the court in drawing legal inferences that raise common legal issues.  "In short, consistent with the decisions in Robinson, Caridad, and Latino Officers, where, as here, Plaintiffs' statistical and anecdotal evidence tends to show that being a member of a minority has a negative effect on compensation, that showing suffices to demonstrate a common question of fact, concerning Defendants' employment practices, within the meaning of Rule 23(a)."  Warren v. Xerox Co., 2004 WL 1562884, at *10 (E.D.N.Y. 2004).

### ii.    Disparate Impact.

In order to prevail under a disparate **impact** theory, plaintiffs must prove that employment practices that appear facially neutral have a discriminatory **effect**.  See Griggs v.

Duke Power Co., 401 U.S. 424, 432 (1971); Watson, 487 U.S. at 986-87. Plaintiffs need not demonstrate discriminatory intent. See Griggs, 401 U.S. at 431; Watson, 487 U.S. at 986. Disparate impact analysis may be applied to an employer's undisciplined system of subjective decision making. See Watson, 487 U.S. at 990; Caridad, 191 F.3d at 292. Such analysis raises common questions of law.

A disparate impact claim also relies upon class-wide statistical evidence. See id.; Robinson, 267 F.3d at 160 (statistical proof occupies "center stage" in a disparate impact claim). Statistical evidence demonstrates that Novartis' practices have an adverse effect on women in terms of compensation and promotion. See generally Lanier Report pp. 13-21 and Lanier Dec. ¶ 9-13; 16. This evidence applies to Novartis as a whole and raises common questions of law as to whether Novartis can rebut the *prima facie* case established by plaintiffs' showing adverse impact and any reliance on a business necessity defense. See Robinson, 267 F.3d at 161.

### 4.    Plaintiffs Satisfy 23(a)(3)'s Requirement of Typicality Because the Claims of the Named Plaintiffs Are Typical of Those of the Class.

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge." Falcon, 457 U.S. at 158, n.13. This is due to the fact that both commonality and typicality help the court determine whether maintenance of a class action is economical and whether the plaintiffs' claims and the class claims are so interrelated that the plaintiffs will adequately represent the interests of the class. Id.

"Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Robinson, 267 F.3d at 155. There is no requirement that the "factual background of each named plaintiff's claim be identical to that of all class members." Caridad, 191 F.3d at 293. Typicality

40

can be found so long as the disputed issue of law or fact "occup[ies] essentially the same degree of centrality" between the named representatives and the class. Id. (quoting Krueger v. N.Y. Tel. Co., 163 F.R.D. 433, 442 (S.D.N.Y. 1995).)

In fact, courts have repeatedly certified classes challenging discriminatory policies or practices, despite differing factual circumstances of the class members' claims.[14]    Here, Plaintiffs' experiences are typical and illustrative of the class, both in terms of disparate pay and promotion, and pregnancy.

   a.    **Plaintiffs' Pay Claims Are Typical of The Class.**

Plaintiffs allege that they received less pay than equally or less-qualified, less-experienced male counterparts.   Plaintiffs' claim that male employees with equal or less tenure and sales experience and the same or poorer sales numbers than their female counterparts consistently receive higher ratings and, thus, more pay.

For instance, as is set forth more fully on pp. 17-19 Plaintiff Jennifer Recht earned as much as $30,000 less than almost all of her male counterparts. See Recht Dep. 300-301.

---

[14] See Wright v. Stern, 2003 WL 21543539, at *6 (S.D.N.Y. 2003) (typicality satisfied when plaintiffs' allegations of disparate treatment are shared by the class despite differing factual circumstances); Hnot, supra, 228 F.R.D. at 485 ("Plaintiffs can satisfy typicality even if there are factual differences between the named representatives and some of the class members, so long as the disputed issues of law or fact occupy essentially the same degree of centrality between the named representatives and the class."); Warren v. Xerox Co., 2004 WL 1562884 (E.D.N.Y. 2004) ("Courts within the Second Circuit have certified classes despite the varying circumstances of the individual members of the proposed class."); (Ingles v. City of New York, 2003 WL 402565, at *5 (S.D.N.Y. 2003) (holding that claims met typicality requirement where they were grounded in the same legal arguments and arose from sufficiently similar events); Latino Officers, 209 F.R.D. at 89 (typicality met where plaintiffs felt different effects of discrimination); Meyer v. MacMillan Publ'g Co., 95 F.R.D. 411, 414 (S.D.N.Y. 1982) (typicality found where named plaintiffs held differing jobs) (citing Lo Re v. Chase Manhattan Corp., 431 F. Supp. 189, 196-197 (S.D.N.Y. 1977) (certifying class of women in various professional, managerial and official positions, where hiring and promotion decisions hinged upon a variety of subjective factors)); Ansoumana v. Gristedes Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding commonality where plaintiffs' jobs and conditions of employment varied); Spinner v. City of New York, 2003 WL 23648356, at *4 (E.D.N.Y. 2003) (certifying class of persons subjected to a strip search at a booking facility even though central policy was implemented in different ways in different cases.).

Likewise, Plaintiff Simona Lopes received a lower salary than similarly-situated male employees with substantially less sales experience than her. See Lopes Dec. ¶ 20. At one point during her career, Plaintiff Roberta VonLintel earned approximately $14,932 dollars less than her husband, who was her direct counterpart in the same territory. See VonLintel Dep. 200-02. Even after she was promoted, VonLintel earned approximately $8,000 less than her husband. Id. at 201.

Plaintiffs' experiences are typical and illustrative of the class. For example, in their declarations, 24 women echo the claims voiced by the class representatives and articulate the inequitable paradox that, overwhelmingly, underperforming males earn more money. See generally Chart of Declarations and Exhibits 27-33. This evidence, along with Plaintiffs' statistical analysis, establishes a systemic pattern or practice of discrimination against women by Novartis. Plaintiffs' experiences are not unique and satisfy the typicality requirement.

b.    **Plaintiffs' Promotion Claims Are Typical of The Class.**

Plaintiffs' promotion claims are also typical and illustrative of those of class members. As is set forth more fully on pp. 14-17, Plaintiffs were repeatedly and inexplicably denied promotional opportunities in favor of less qualified male employees.

For example, Plaintiff Recht was denied a senior ophthalmology specialty position, though she had an excellent track record, good reviews, and the most relevant experience of any of the applicants. See Recht Dep. 213-14; 232-33. Plaintiff Penni Zelinkoff was advised that she would not be considered for a promotion unless she ranked in the top 35 percent of Novartis nationwide, while several male employees who were not in the top 35 percent received promotions. See Zelinkoff Dep. 211-12; 100-01. Plaintiff Lopes was denied a promotion on the ground that she had not been at Novartis for two years, while her male counterpart who also did not have two years' tenure received the promotion. See Lopes Dep. 123-26.

42

Women face particularly severe challenges in achieving perhaps the most important promotion at Novartis—to management. For instance, as is set forth more fully on pp. 15-17, Plaintiff Jamie Holland was abruptly withdrawn from the Management Development Program on the premise that her numbers were too low while male counterparts with numbers equal to or lower than hers remained in the program. See Holland Dep. 93-96. Though she was number one nationwide in sales for one product in 2001 and 2002 and had won various contests and awards, Plaintiff Marta Deyne was told she needed to show more consistency when she expressed her interest in MDP, while male employees with lower numbers were allowed to participate in the program. Deyne Dep. 34-35; 53-56. Plaintiff Minel Tobertga's manager told her she would not be considered for the MDP because of her sales numbers, while a male counterpart with similar numbers was selected to participate in the program. Tobertga Dep. 128; 149-50.

Plaintiffs' experiences are typical and illustrative of the class. For example, in their declarations, 36 women echo the claims voiced by the class representatives and describe how equally or less-qualified, poorer performing males were promoted with greater frequency than women. This evidence, along with Plaintiffs' statistical evidence, establishes a systemic pattern or practice of discrimination against women by Novartis, demonstrates that Plaintiffs' experiences are not unique, and satisfies the typicality requirement.

      c.    **Plaintiffs' Pregnancy Claims Are Typical of The Class.**

Pregnant women face discrimination for taking maternity leave. As is set forth more fully on pp. 20-22, Plaintiffs Amy Velez, Minel Tobertga, Holly Waters and Joan Durkin received less pay, fewer promotions, and increased disciplinary action when they took such leave. Plaintiffs' experiences are typical and illustrative of the class. For example, 28 Novartis sales personnel complain of pregnancy discrimination in their declarations. This evidence, along

43

with Plaintiffs' statistical evidence, establishes a systemic pattern or practice of discrimination against women by Novartis, demonstrates that Plaintiffs' experiences are not unique, and satisfies the typicality requirement.

> 5.  **Plaintiffs Satisfy 23(a)(4)'s Requirement of Adequate Representation Because Plaintiffs And Their Counsel Will Sufficiently Protect The Interests of The Class.**

The final requirement to gain class action certification is adequacy of representation. Fed. R. Civ. P. 23(a)(4). "[T]he representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Determining whether a class action satisfies the adequacy of representation requirements is a two-part inquiry, focusing first on whether plaintiffs' interests are antagonistic to the interests of other class members, and, second, whether plaintiffs' attorneys are qualified, experienced and able to conduct the litigation. See e.g., Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000); Robinson, 267 F.3d at 170-71.

With regard to the first inquiry, there are no conflicts of interest here. All of the class representatives and class members are sales force employees who were or continue to be subject to discriminatory treatment at the hands of Novartis. The fact that some differences exist between the women, including the amount of supervisory responsibility associated with some of their positions, does not create a conflict of interest. This Court has found that if "supervisory employees and supervisees all are subject to discrimination, all have an equal interest in remedying the discrimination, and the named plaintiffs can still be expected to litigate the cases with ardor." Hnot v. Willis Group Holdings, Ltd., 228 F.R.D. 476, 486 (S.D.N.Y. 2005) (holding that an asserted conflict of interest between supervisory and non-supervisory class members need not defeat class certification and that the potential conflict is not a "fundamental"

conflict as required by the Second Circuit) (citing <u>In re Visa Check</u>, 280 F.3d at 145).  <u>See also</u> <u>Meyer v. MacMillan Publishing Co.</u>, 95 F.R.D. 411, 416-17 (S.D.N.Y. 1982) (holding that "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.")  Thus, differences in job titles and/or the supervisory responsibilities enjoyed by plaintiffs do not render their representation of other class members inadequate.

Here, the interests of the Plaintiffs and the interests of the class members align.  Both seek to prove the existence of Novartis' pattern and practice of gender discrimination in promotion and compensation, and both challenge Novartis' vesting of discretionary decision-making power with predominantly male employees.  Once a pattern or practice of discrimination is proven by the named plaintiffs, it is by definition proven for all class members.  <u>See Latino</u> <u>Officers</u>, 209 F.R.D. at 92.  Thus, because (1) no class members have interests antagonistic to each other, (2) all class members challenge the pattern and practice of gender discrimination at Novartis, and (3) all Plaintiffs will vigorously prosecute on behalf of the class members, representation is adequate.

With regard to the second inquiry, counsel for plaintiffs are qualified and adequate. Counsel have been appointed class counsel in 25 other employment discrimination cases and have substantial experience successfully prosecuting complex employment discrimination and wage and hour class actions.  <u>See</u> Sanford Dec. (App. A); Morris Dec. (App. B).  The Court should thus find that Plaintiffs and their counsel will adequately represent the class.

**D.    The Proposed Class Meets The Requirements of Rule 23(b)(2) And Rule 23(b)(3).**

**1.    The Proposed Class Meets The Requirements of Rule 23(b)(2).**

A proposed class that meets the four requirements of Rule 23(a) should be certified if it complies with any one of the three subsections of Rule 23(b).  <u>See e.g.</u>, Fed. R. Civ. P. 23(b);

Amchem Prods., Inc., 521 U.S. 591, 614. Rule 23(b)(2) permits an action to be maintained as a class action where the plaintiffs establish that (1) the complaint seeks relief that is predominantly injunctive or declaratory; and (2) the defendant "acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2); see also Robinson, 267 F.3d at 162 (holding that "the (b)(2) action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury"). Certification under (b)(2) is appropriate even if not every member of the class "felt the brunt of" the defendants' discrimination, so long as plaintiffs "would be entitled to the injunctive and declaratory relief that they seek with respect to the class as a whole." Latino Officers, 209 F.R.D. at 92.

Further, the Second Circuit finds that "if the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action should be allowed to proceed under subdivision (b)(2)." Cokely v. New York Convention Center Operating Corp., 2004 WL 1152531, at *9 (S.D.N.Y. 2004)[15] (citing Gelb v. Am. Tel. & Tel. Co., 150 F.R.D. 76, 78 (1993) (quoting Charles A. Wright, et al., 7A Federal Practice and Procedure: Civil 2d, § 1775, at 470 (1986)).)

Plaintiffs satisfy the first requirement of Rule 23(b)(2) because they seek relief predominantly injunctive and equitable in nature, which includes: (1) a declaratory judgment that Novartis' employment policies, practices, and/or procedures challenged are illegal and in violation of Title VII; (2) a permanent injunction against Novartis . . . from engaging in . . . gender discrimination; (3) an Order requiring Novartis to initiate and implement corrective programs; (4) an Order requiring Novartis to initiate and implement systems of assigning, training, transferring, compensating, and promoting female employees in a non-discriminatory manner; (5) an Order establishing a task force on equality and fairness; (6) an Order placing or

---

[15] See all unpublished cases attached as Appendices C-F.

restoring the Class Representatives and the class members into those jobs that they would now be occupying but for Novartis' discriminatory policies, practices, and/or procedures; and (7) an Order directing Novartis to adjust the wage rates and benefits for the Class Representatives and the class members to the level that they would be enjoying but for the Defendants' discriminatory policies, practices and/or procedures.  See Fourth Amended Class Action Complaint at 110, Dkt. No. 56.

Plaintiffs also seek nominal damages, compensatory damages, and punitive damages.  Id. However, the fact that Plaintiffs request monetary damages in addition to equitable relief does not preclude certification of a (b)(2) class.  In In re Visa Check/Mastermoney Antitrust Litig., 192 F.R.D. 68, 88 (E.D.N.Y. 2000), aff'd, 280 F.3d 124 (2d Cir. 2001), cert. denied sub nom. Visa U.S.A., Inc. v. Wal-Mart Stores, Inc., 536 U.S. 917, 153 L. Ed. 2d 201, 122 S. Ct. 2382 (2002), the court held that: "**The presence of a damages claim will not defeat maintenance of a class under Rule 23(b)(2) when the requested . . . injunctive relief is a significant component of the overall relief which plaintiffs seek.**" (emphasis added.)  The Second Circuit ruled in Robinson, supra 267 F.3d at 164 that, even should plaintiffs request significant monetary damages and other individualized relief, the court may nevertheless certify a (b)(2) class action if, "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring this suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."

The court must conduct an ad hoc inquiry to determine whether a (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case.  Id.;  Accord Warren v. Xerox Corp., 2004 WL 1562884 *14

47

(E.D.N.Y. 2004); <u>McBean v. City of New York</u>, 228 F.R.D.487, 501-02 (S.D.N.Y. 2005); <u>Latino</u>
<u>Officers Assn'n</u>, 209 F.R.D. at 93 (finding that the value of the declaratory and injunctive relief
sought to remedy discriminatory disciplinary practices was predominant).[16] Here, injunctive or
declaratory relief are both reasonably necessary and appropriate if plaintiffs are to succeed on the
merits.  <u>Id.</u>; <u>see, e.g.</u>, <u>Robinson</u>, at 164-65; <u>see also</u> <u>McBean v. City of New York</u>, 228
F.R.D.487, 501-02 (S.D.N.Y. 2005); <u>Warren v. Xerox Corp.</u>, 2004 WL 1562884, at * 14
(E.D.N.Y. 2004); <u>Mathers v. Northshore Mining Co.</u>, 217 F.R.D. 474, 487 (D. Minn. 2003);
<u>Shores v. Publix Super Markets, Inc.</u>, 1996 WL 407850 (M.D. Fla. 1996).

The Second Circuit has frequently certified employment discrimination class actions
under 23(b)(2) where plaintiffs requested both equitable and monetary relief.[17]

Plaintiffs also satisfy the second requirement of 23(b)(2) because Defendants "acted . . .
on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2). Novartis has acted and
refused to act on grounds generally applicable to the entire class by engaging in a pattern and
practice of gender discrimination. Plaintiffs present ample evidence that these general practices
adversely affect many members of the class and seek declaratory, injunctive, and equitable relief

---

[16] Certification under (b)(2) is appropriate for Plaintiffs' claims of back pay as well, because back pay awarded under Title VII, while monetary in nature, is a form of equitable relief. <u>Robinson</u>, 267 F.3d 157; <u>Latino Officers</u>, 209 F.R.D. at 93; <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402 (5th Cir. 1998) "back pay should be sought in a (b)(2) class action because, as an equitable remedy similar to other forms of affirmative injunctive relief permitted in (b)(2) class actions, it was an integral component of Title VII's 'make whole' remedial scheme.")

[17] <u>Parker v. Time Warner Entm't Co.</u>, 331 F.3d 13, 19-20 (2d Cir. 2003) (holding that when a district court determines a class certification motion involving injunctive relief and non-incidental monetary damages, the court must assess the relative importance of the remedies sought, given all of the facts and circumstances of the case.) (quoting <u>Robinson</u>, 267 F.3d 147); <u>Robinson</u>, 267 F.3d at 164 (rejecting the "bright-line approach" that required a finding of the absence of all claims of compensatory and punitive in order to certify a class action); <u>Hnot v. Willis Group Holdings, Ltd.</u>, 228 F.R.D. at 486 (citing <u>Robinson</u> in finding that "courts should assess the relative importance of the remedies sought given the context of the case" in evaluating whether an action should be certified under Rule 23(b)(2)).

with respect to the class as a whole.  As such, Plaintiffs here meet the requirements as set forth in Robinson and certification of a class under Rule 23(b)(2) is appropriate.

### 2. This Action Also Meets The Requirements For Certification Under Rule 23(b)(3).

In the alternative, Plaintiffs' claims are also appropriate for certification under Rule 23(b)(3).  In order to obtain certification under Rule 23(b)(3), plaintiffs must show that they meet the requirements of Rule 23(a), that the "questions of law or fact common to the class members predominate," and that "a class action is superior to other available methods of resolving the dispute."  Fed. R. Civ. P. 23(b)(3).  The Second Circuit has held that satisfying the typicality requirement of Rule 23(a) "goes a long way towards satisfying the Rule 23(b)(3) requirement of commonality."  Rossini v. Oglivy & Mather, 798 F.2d 590, 598 (2d Cir. 1986).

Numerous common issues operate in this case.  See supra at III(C)(3).  Common questions dominate over individual issues.[18]

Further, class treatment is superior to other available methods of litigation.  The class is manageable and certification furthers judicial economy and champions efficiency.  See Robinson, 267 F. 3d at 164.  A class action precludes the need for hundreds or thousands of duplicative lawsuits that would clog court dockets across the country and run the risk of yielding

---

[18] See Robinson, 267 F.3d at 167 n.12 (noting that (b)(3) certification could be appropriate in civil rights actions seeking compensatory damages).  See also In re Visa Check/MasterMoney Antitrust Litig., 280 F. 3d 124, 136-8 (2d Cir. 2001) (class-wide liability questions predominate over questions related to individual damages); Mendez v. Radec Corp., 232 F.R.D. 78, 92 (W.D.N.Y. 2005) (finding that class certification was appropriate under 23(b)(3) where employment policy issues that were subject to generalized proof and thus were applicable to the class as a whole and holding that those issues predominated over those that were subject to individualized proof) (citing In re Visa Check/Master Money Antitrust Litig.); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 343 (S.D.N.Y. 2004) (finding commonality despite differences among plaintiff employees relating to amount of unpaid overtime due); Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002) (holding that certification of class action under Rule 23(b)(3) was recommended for a case involving unpaid overtime despite the necessity of individualized damages calculations); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding that individual differences relating to damages did not defeat commonality in certifying a class action under Rule 23(b)(3)).

inconsistent verdicts. In the absence of class action litigation, each aggrieved female employee would be tasked with seeking discovery of Novartis' policies, obtaining data concerning personnel decisions, and retaining an expert to analyze the data. The disparity between individual women and Novartis, a global company with vast resources, could intimidate potential plaintiffs from filing individual actions. Certification eliminates these issues and affords female victims of discrimination a forum in which their claims can be heard.

### 3.    The Proposed Class May Also Be Certified as a Hybrid Action.

A third alternative would be to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects of the suit. See Robinson, 267 F.3d 147, 169 (2d Cir. 2001) (finding that the district court abused its discretion in failing to certify the liability stage of the claim for class treatment in pattern-or-practice race discrimination matter); Latino Officers, 209 F.R.D. at 93 (certifying liability stage for class treatment and severing individual remedial stage); Morgan v. UPS, 169 F.R.D. 349, 358 (E.D. Mo. 1996) (severing issues of liability and injunctive relief from damages phase of class action under Title VII and section 1981).[19]

---

[19] See also Mathers v. Northshore Mining Co., 217 F.R.D 474, 487 (D. Minn. 2003), where the court concluded that a hybrid Rule 23(b) class was appropriate in a gender discrimination suit; Maneely v. City of Newburgh, 204 F.R.D. 69, 78 (S.D.N.Y. 2002) (citing Robinson in holding that the Second Circuit has urged district courts to take advantage of partial certification in order to "reduce the range of disputed issues in complex litigation and achieve judicial efficiencies."); In re Livent, Inc. Noteholders Securities Litig., 210 F.R.D. 512, 519 (S.D.N.Y. 2002) (granting partial certification of class claims and noting the efficiency of a single consolidated action instead of multiple parallel actions); Warren v. Xerox Corp., 2004 WL 1562884, at *16 (( E.D.N.Y. 2004) (severing the remedial monetary phase from the liability and injunctive relief phase for class certification purposes); Wright v. Stern, 2003 WL 21543539, at *8 (S.D.N.Y. Jul 09, 2003) (holding that "should a need for individualized relief arise at the remedial stage of the proceedings, it would be appropriate for the Court to afford notice and opt-out rights for absent class members.'") (citing Latino Officers, 209 F.R.D. at 93); accord Butler v. Home Depot, 1996 WL 421436 (N.D.Cal. 2006), (certifying a class of female employees and applicants and bifurcating the litigation into separate phases: (1) under Rule 23(b)(2), addressing liability and relief applicable to the class as a whole, including declaratory and injunctive relief, and whether defendant is liable for punitive

The Court could also treat Plaintiffs' Rule 23(b)(2) class as if it were certified under Rule 23(b)(3), giving class members notice and an opportunity to opt out on the authority of Rule 23(b)(2). See <u>Williams v. Burlington Northern, Inc.</u>, 832 F.2d 100, 103 (7th Cir. 1987). Because of the discretionary authority granted to a district judge to manage class actions in this manner, Rule 23(b)(2) certification should not be denied on the mistaken assumption that a rule 23(b)(3) class is the only means by which to protect class members. See <u>In re Monumental Life Ins. Co.</u>, 365 F.3d 408, 417 (5th Cir. 2004).

## V.    CONCLUSION

The court should grant Plaintiffs' motion to certify a class of Novartis' female sales personnel. Plaintiffs have demonstrated the need for injunctive relief, and have fulfilled all of the elements spelled out by the Second Circuit's recent decision in <u>In re Initial Public Offering Securities Litigation</u>, 471 F.3d 24 (2d Cir. 2006) for certifying a Title VII class.

Plaintiffs have presented expert statistical evidence, extensive sworn deposition testimony, and anecdotal evidence in the form of 87 declarations that show Novartis' policy and practice of delegating extensive discretionary power to mostly male managers—a policy and practice that have an adverse impact on the pay and promotion opportunities of women employed by Novartis. Plaintiffs have also shown that Novartis harbors a deeply embedded corporate culture that views women with disdain and regards them as potentially pregnant liabilities.

---

damages; and (2) if liability is established, addressing in a second phase appropriate individual compensatory and equitable relief, including individual entitlement to back and front pay (leaving the precise procedures to be used during the second phase to be determined later in this litigation)).

For the reasons set forth herein, Plaintiffs respectfully request that this Court certify this action as a class action pursuant to Fed. R. Civ. P. (23)(b)(2) and 23(b)(3), or alternatively, a hybrid class bifurcated into liability and damage stages.


Respectfully Submitted.


Dated:  January 16, 2007                       **SANFORD, WITTELS & HEISLER, LLP**

                                        By:  _____/s/ David Sanford_____
                                               David W. Sanford, D.C. Bar No. 457933
                                               Angela Corridan, D.C. Bar No. 492978
                                               **SANFORD, WITTELS & HEISLER, LLP**
                                               1666 Connecticut Avenue, N.W., Suite 310
                                               Washington, D.C. 20009
                                               Telephone: (202) 742-7780
                                               Facsimile:  (202) 742-7776

                                               Jeremy Heisler, (JH-0145)
                                               Steven Wittels, (SLW-8110)
                                               **SANFORD, WITTELS & HEISLER, LLP**
                                               950 Third Avenue, 10th Floor
                                               New York, NY 10022
                                               Telephone: (646) 723-2947
                                               Facsimile:  (646) 723-2948

                                               Grant Morris, D.C. Bar No. 926253
                                               **LAW OFFICES OF GRANT E. MORRIS**
                                               1666 Connecticut Avenue, N.W., Suite 310
                                               Washington, D.C. 20009
                                               Telephone: (202) 742-7780
                                               Facsimile:  (202) 742-7776

                                               *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically on

this 16th day of January, 2007 upon the following counsel of record:

Mr. Richard Schnadig, Esq.
Mr. Thomas G. Abram, Esq.
**VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.**
222 North LaSalle Street
Chicago, IL 60601

Mr. Jonathan A. Wexler, Esq.
**VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.**
805 Third Avenue
Suite 2200
New York, NY 10022

Mr. Vincent R. Fitzpatrick, Jr., Esq.
Ms. Heather K. McDevitt, Esq.
Mr. Jack E. Pace, Esq.
**WHITE & CASE, LLP**
1155 Avenue of the Americas
New York, NY 10036

Ms. Andrea S. Christensen, Esq.
**KAYE SCHOLER, LLP**
425 Park Avenue
New York, NY 10022

_____/s/_____
Angela Corridan