

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884
(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))

Kellett v. Glaxo Enterprises, Inc.
S.D.N.Y.,1994.

United States District Court, S.D. New York.
Kathleen KELLETT, Plaintiff,
v.
GLAXO ENTERPRISES, INC., Defendant.
No. 91 CIV. 6237 (LMM).

Nov. 30, 1994.

MEMORANDUM AND ORDER

MCKENNA, District Judge.

*1 Plaintiff, Kathleen Kellett ("Kellett"), commenced this action against Defendant, Glaxo Enterprises, Inc. ("Glaxo"), on September 16, 1991. Defendant has moved the Court for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Defendant's motion is granted.

I. Facts

Certain facts underlying this action are undisputed. Glaxo was in the business of investing and managing the funds of various affiliated companies. Glaxo hired Kellett in September, 1986, at age 39, to be their Manager of Financial Control.

In April 1989, Glaxo Holdings PLC, the ultimate parent company, announced that a new entity, Glaxo Bermuda Ltd., would assume Glaxo's fund management function. Glaxo consequently discharged five of its eight employees over the next several months, including Kellett. Kellett was terminated on October 20, 1989, when she was 43 years old. Following the reduction in force, Glaxo has never employed more than three persons and has not reentered the fund management business.

Kellett alleges that she was terminated because of her age and gender, asserting claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (1985) ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (1981) ("Title VII") and state contract law. Kellett also alleges pre-termination age and gender discrimination, including a violation of the Equal Pay Act, 29 U.S.C. § 206(d) (1978).

Glaxo makes three primary arguments in support of its motion for summary judgment. First, Glaxo contends that it is not an "employer" for purposes of the ADEA or Title VII, because neither statute applies to a company with so few employees. With regard to Kellett's Equal Pay Act claim, Glaxo argues that Kellett's job was sufficiently dissimilar from that of Hock Lau, Glaxo's Fund Manager, to justify their salary differential. Finally, Glaxo maintains that Kellett has failed to establish a prima facie case of age or sex discrimination.

II. Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). "[A] fact is material when its resolution would 'affect the outcome of the suit under governing law,' and a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Hetchkop v. Grundolt Carpet Workroom, Inc.,* 1994 WL 7524 at *2 (S.D.N.Y.) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Celotex,* 477 U.S. at 322-24. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884  
**(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))**

Page 2

that party's case." *Celotex,* 477 U.S. at 322. The nonmoving party's "evidence ... is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Eastman Kodak Co. v. Image Technical Servs.,* 112 S.Ct. 2072, 2077 (1992) (quoting *Anderson,* 477 U.S. at 255).

*2 While the Second Circuit has suggestion caution in granting summary judgment in discrimination cases where intent is in issue, *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994), the Court subsequently reaffirmed the availability of summary judgment in discrimination cases. *McLee v. Chrysler Corp.,* 38 F.3d 67 (2d Cir.1994).

### III. Jurisdictional Predicate for ADEA or Title VII Action

In order to maintain an ADEA action, a plaintiff must show that their employer had twenty or more employees. 29 U.S.C. § 630(b). Title VII similarly requires fifteen or more employees. 42 U.S.C. § 2000e(b). Glaxo contends that Kellett's ADEA and Title VII claims fail to meet these jurisdictional predicates, since it has never employed more than eight persons.

Kellett attempts to fulfill the statutory requirements by invoking the "single employer" doctrine, which, she claims, allows her to combine Glaxo's employees with the larger number of employees of one or more related entities, such as Glaxo's parent corporation or subsidiary, for ADEA and Title VII jurisdictional purposes.

The single employer doctrine requires a particularly close relationship between two or more corporate entities:

In order to determine whether these entities are so interrelated as to assume joint responsibility for the acts of the immediate employer, the court will

assess the degree of (1) interrelated operations, (2) common management, (3) centralized control of

labor relations, and (4) common ownership.... All four criteria need not be present in all cases and, even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable.

*Perry v. Manocherian,* 675 F.Supp. 1417, 1425 (S.D.N.Y.1987) (quoting *Armbruster v. Quinn,* 711 F.2d 1332, 1337-38 (6th Cir.1983) (collecting cases)).

Courts do not readily find that related entities are single employers in discrimination cases. In *Watson v. Gulf & W. Indus.,* 650 F.2d 990, 993 (9th Cir.1981), the Ninth Circuit noted that "[i]n the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary." The court affirmed the trial court's grant of summary judgment to a parent corporation, as there was "no indication that the parent-subsidiary relationship [was] a 'sham' or that circumstances exist that would render the parent liable for debts of its subsidiary." *Id.* The Ninth Circuit observed that the result would be different if there had been evidence that the parent "participated in or influenced the employment policies" of the subsidiary, or that the parent "had undercapitalized [the subsidiary] in a way that defeated potential recovery by a Title VII plaintiff." *Id.; see also Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993) ("The doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances.")

*3 Of the four *Armbruster* factors, "[c]ourts have recognized that the centralized control of labor relations is the central factor in the single employer analysis." *Jackson v. National Football League,* No. 92 Civ. 7012, 1994 WL 282105, at *7 1994 U.S.Dist. LEXIS 8303, at *21 (S.D.N.Y. June 30, 1994) (granting summary judgment to a corporate entity that was not involved in the decisions of a related entity to hire, fire or promote its employees).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884
**(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))**

The standard for such centralized control has been variously described as "highly integrated with respect to ownership and operations,"*Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 726 (N.D.Ala.), *aff'd,*664 F.2d 295 (11th Cir.1981), as "involvement [that] is sufficient and necessary to the total employment process,"*Rivas v. State Bd. for Community Colleges & Occupational Educ.,* 517 F.Supp. 467, 470 (D.Colo.1981), and as "a degree of control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary,"*Armbruster,* 711 F.2d at 1338.

In determining that Kellett's single employer argument raises no triable issues of fact, the Court is guided by its review of the relevant caselaw. In the following cases, the plaintiff failed to establish sufficient integration between corporate entities, generally resulting in summary judgment for at least one of the corporate defendants. In *Rogers v. Sugar Tree Prods., Inc.,* 824 F.Supp. 755 (N.D.Ill.1992), *aff'd,*7 F.3d 577 (7th Cir.1993), the court characterized the ADEA's twenty employee requirement as a prerequisite to establishing subject matter jurisdiction. The burden of showing jurisdiction fell on the plaintiff, as the party asserting jurisdiction. *Id.* at 759. The court found the single employer doctrine inapplicable to meet the statutory threshold, where, although there was

> some interrelationship of operations such as long distance shipping, there were no common offices ..., or equipment or plant facilities. They are separate entities located in different states. Further, although tax and some financial and billing records were prepared at [one entity], there is no showing that the records were common. Payroll and daily operations were independent.

*Id.* at 762-63. While the two entities in *Rogers* were owned by a single individual who controlled the labor relations of both entities, the court found that this centralized control was grounded solely on the fact of common ownership. The court observed that "the critical inquiry is whether [the owner's] actions taken regarding labor relations were done pursuant to his status as owner of defendant or [other entity] or both." *Id.* at 762. In *Kelber v. Forest Elec. Corp.,* 799 F.Supp. 326, 331 (S.D.N.Y.1992), two entities were found to be distinct for Title VII purposes even though some high-level managers performed functions for both the parent and the subsidiary corporations. In *Frishberg v. Esprit De Corp.,* 778 F.Supp. 793, 800 (S.D.N.Y.1991), *aff'd,*969 F.2d 1042 (2d Cir.1992), the trial court first considered whether the plaintiff, the president and sole shareholder of a small sales organization, might be viewed as an employee of the parent corporation, or as an independent contractor-hence not entitled to ADEA protection. The court determined that the plaintiff was not an employee, finding insufficient control by the parent of the "means and manner of the worker's performance,"*Id.* at 799. The court then performed a single employer analysis, and found for the defendant because:

*4 [t]his same kind of control is also at the heart of the hybrid test for distinguishing between employees and independent contractors that was discussed above. Since [parent's] control of the actions of [subsidiary] and its employees was insufficient to make [plaintiff] an employee of [parent] rather than of [subsidiary], the facts are likewise insufficient to support the theory that [parent] and [subsidiary] constitute an integrated enterprise.

*Id.* at 800. Finally, in *Mochelle v. J. Walter Inc.,* 823 F.Supp. 1302 (M.D.La.1993), *aff'd,*15 F.3d 1079 (5th Cir.1994), a U.S. and a Canadian corporation were found to be distinct entities for ADEA purposes, even though they were owned by the same holding company, had some common board members, and the sole business of the U.S. corporation was the domestic sale of the Canadian corporation's products. This result obtained because the two corporations had distinct employees and the Canadian company played no role in the plaintiff's termination by the U.S. corporation.

Cases in which a plaintiff successfully invoked the single employer doctrine, at least to the extent of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://web2.westlaw.com/print/printstream.aspx?prft=HTMLE&destination=atp&sv=Split&rs=W... 6/15/2008

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884
**(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))**

avoiding summary judgment in favor of the corporate defendants, stand in sharp contrast to these cases. In *Perry v. Manocherian,* 675 F.Supp. 1417, 1426 (S.D.N.Y.1987), the Court found the doctrine applicable where the two entities had common management, shared office space, and employees hired to work for one entity were in practice used by the other. In *Harris v. New York Times,* No. 90 Civ. 5235, 1993 WL 42773, at *12, 1993 U.S.Dist. LEXIS 1534, at *36 (S.D.N.Y. Feb. 9, 1993), the record established that the president of a subsidiary, originally an employee of the parent, "shuttled back and forth" between the parent and its subsidiaries on a number of occasions. It was also determined that the parent had "input" into the practices and policies of the subsidiary with respect to compensation, benefits, and job grading levels. *Id.* at *12,1993 U.S.Dist. LEXIS 1534 at *37. Among other labor relations connections, a vice president of the parent met on occasion with executives of the subsidiary to discuss the hiring and promotion of black workers. *Id.* In *Berkowitz v. Allied Stores of Penn-Ohio, Inc.,* 541 F.Supp. 1209, 1213-14 (E.D.Pa.1982), the court found that an employee of a subsidiary could be characterized as an employee of the parent where the parent was regularly and intimately involved with business decisions of the subsidiary, particularly with regard to the management of personnel. The court also found that the very existence of the subsidiary-beyond its presence on an organization chart-was questionable.

In the instant action, Kellett contends that Glaxo is embedded in a complex corporate structure, "a corporate labrynth [sic] which consists of several different wholly owned subsidiaries of Glaxo Holdings, P.L.C.... One of Enterprises' subsidiaries alone, Glaxo Inc., employs 3000 people." (Pl.'s. Mem. at 25-26.) Kellett claims direct or indirect connections between Glaxo Holdings PLC, Defendant Glaxo Enterprises, Inc., Glaxo, Inc. and Glaxo Bermuda Ltd. (*Id.* at 1, 2, 6, 7, 12, 17-19, 23, 25-28.)

*5 The fact that Glaxo Holdings PLC presides over a complex corporate structure does not, by itself, advance Kellett's argument. A plaintiff seeking to use the single employer doctrine may not rely on the totality of relationships between the various subsidiaries of a common parent, but must establish a sufficiently close relationship between the hiring entity and one or more related entities. *Frank,* 3 F.3d at 1362 (collecting cases). That is, relationships between any two non-hiring entities are irrelevant to this analysis.

The Court must therefore look to Kellett's allegations of relationships between Defendant Glaxo and *particular* related entities, such as Glaxo Holdings PLC, to determine the applicability of the doctrine. The Court finds, even drawing all inferences in Kellett's favor, that no "extraordinary circumstances" have been shown that could sustain applicability of the single employer doctrine. *Id.* Kellett alleges such connections as: common and interlocking directors; a common package of benefits; central control of personnel and operations, central control of bonuses and salaries, consolidated financial reports and tax returns, and common ownership of each corporate entity. (Def.'s Mem. at 26.) Kellett also contends that the transfer of the management function to Bermuda was the decision of the management of Glaxo Holdings PLC. (*Id.*)

Comparing these allegations to cases such as *Mochelle* and *Rogers,* which rejected application of the single employer doctrine, the Court finds Kellett's allegations of corporate interlocking to be trivial or without any support in the record. The use of a common benefits package speaks only to economies of scale for an eight person operation and not to centralized control of labor relations. Cases such as *Rogers* have established that common ownership of corporate entities is, by itself, essentially irrelevant, despite being an *Armbruster* factor. The decision of Glaxo Holdings PLC to move the fund management operation to Bermuda does not represent "control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary." *Armbruster,* 711 F.2d

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 5
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884
(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))

at 1338. As Glaxo notes, their "management of funds in accordance with policies set down by the owners of the funds is hardly 'extraordinary.' " (Def.'s Mem. at 4.) While Kellett has observed that Glaxo and Glaxo Holdings PLC have common board members, she does not claim overlap in management or employees.

Kellett alleges that Paul Girolami, Chairman of Glaxo Holdings PLC approved bonuses and salaries for persons in Glaxo Enterprises. In support of her position, she has submitted a letter from Girolami approving a salary increase to Hock Lau. (Ex. 1 to Pl.'s Mem.) Kellett ignores the critical fact that Girolami is also a member of Glaxo's board. Since the letter was drafted on Glaxo, rather than Glaxo Holdings PLC stationery, Girolami's action does not suggest "centralized control of labor relations" in the parent corporation. *Jackson,* 1994 WL 282105, at *6, 7, 1994 U.S.Dist. LEXIS 8303, at *21. The Court also observes that some of Kellett's other allegations concerning the interlocking nature of Glaxo and Glaxo Holdings PLC are directly contradicted by the record.[FN1]

*6 Whether the Court applies the standard of highly integrated with respect to operations, a "sham" parent-subsidiary relationship, or exercising control exceeding that normally exercised by a parent, Kellett has clearly failed to establish single employer status for Glaxo and any other entity. Since Glaxo's eight employees are insufficient to meet the jurisdictional predicates for ADEA or Title VII actions, these claims must fail.

### IV. Equal Pay Act Claim

Kellett's third claim alleges a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1). The Act prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions...." *Id.*

Kellett complains that "Defendant's payment of considerably [sic] less money to plaintiff's male coworker, Hock Lau, for equal work in a position requiring equal skill, effort and responsibility, performed under similar working conditions, violated her rights." (Am.Compl. ¶ 28.) Kellett presumably intended to state that Glaxo paid Hock Lau considerably *more* money for equal work.

Recovery under the Equal Pay Act requires that the work in question be "substantially equal," *Usery v. Columbia Univ.,* 568 F.2d 953, 958 (2d Cir.1977), but not that it be "identical," *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), *aff'd,* 452 U.S. 161 (1981).

The Court rejects Kellett's Equal Pay Act claim because she has failed to demonstrate that she and Lau had substantially equal jobs. Kellett describes Lau as her "male counterpart," (Pl.'s Mem. at 28); however, she has presented no evidence to rebut Glaxo's showing that Lau's position differed from Kellett's by far more than their respective job titles. *Gunther,* 623 F.2d at 1309 ("[A]ctual job performance and content not job titles, classifications or descriptions-is determinative.").

Kellett focuses on the "equal effort" component of Equal Pay Act claims. While not irrelevant to *mental* exertion, 29 C.F.R. §§ 800.114-800.163 (1976), the Second Circuit in *Usery* noted that "effort" plays a greater role in cases of purely physical labor. 568 F.2d at 959. Congress could not have intended, for example, that every hard-working employee be compensated at the same rate as their supervisor.

Kellett skirts the issue of substantial equality by characterizing her job function and that of Hock Lau as being "inter-related with each dependent upon the other" and by declaring that "[b]oth were essential to the over all [sic] investment function of the company." (Pl.'s Mem. at 28-29.) The Court holds that language of interdependency does not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884  
**(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))**

Page 6

speak to the issue of substantial equality.

Kellett describes her job responsibilities as:

*7 working closely with the cash manager, approving and verifying all of the security transactions. I would be responsible for more or less the *back office type work,* which was arranging for settlement transactions, sending out confirmations, checking confirmations that would come in from brokers, oversee the accounting function. I would be involved in budgeting, five year planning, cash forecasting.

(Kellett Dep. at 88 (emphasis supplied)). Lau, on the other hand, was fund manager, who "implemented the investment strategy, that is, he was responsible for actually going into the market and buying or selling securities or placing money market deposits." (Kellett Dep. at 93). While Kellett provided backup to Lau in his role as fund manager, (*id.* at 105), this was only when Lau was out of the office, (*id.* at 106). Even when serving as "backup" Lau exercised control over Kellett's actions.

Q. For instance, let's say there was a particular transaction he wanted to accomplish, would he tell you to perform that transaction?

A. Yes.

(*Id.* at 106.)  
Q. With respect to these other types of investment instruments, other than bank deposits, did you make any decisions on those on your own?

A. The decisions-first of all, the board of directors developed the investment strategy.... It was Hock's responsibility to implement the strategy. So he-he-again, he made decisions based on the strategy that had been determined by the board of directors.

Q. But, in terms of formulating that strategy, that was-

A. The board of directors formulated the investment strategy.

Q. But, the implementation of it was the primary responsibility of Hock Lau and Bryan Williams?

A. Yes. Yes, they implemented it.

Q. Your involvement in that process was only when Hock Lau wasn't there?

A. Except, as I mentioned, on occasions, he was extremely busy and couldn't deal with everything at once. He would ask me to help him out.

(*Id.* at 116.)

Reading Kellett's allegations generously on this motion, the Court could find some small degree of overlap between her tasks and Lau's, but Kellett could not establish substantial equality between the two positions. *See Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1194 & n. 3 (S.D.N.Y.1985) (granting summary judgment where plaintiff's own description of a male worker's job, despite some overlap, undermined her claim of "substantial equality"). The Court holds that Kellett has failed to make a sufficient showing of substantial equality to support her Equal Pay Act claim.FN2

V. Failure to Adduce Evidence of Age or Sex Discrimination

While the Court has disposed of Kellett's federal claims on other grounds, the Court holds, as an alternative basis for its decision, that Kellett's ADEA and Title VII claims are defective because she has failed to adduce *any* proof of age or gender discrimination by Glaxo.

To oppose summary judgment in a suit for age or sex discrimination, the plaintiff must produce "concrete particulars" that support allegations of discrimination. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829 (1985). Plaintiff may not rely on mere "conclusory allegations of discrimination." *Gratien v. Pan Am,* No. 84 Civ. 0595, 62 Fair Empl.Prac.Cas. (BNA) 1715

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884  
**(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))**

Page 7

(S.D.N.Y. Oct. 6, 1986) (granting summary judgment to employer where employee's claim amounted to challenging the wisdom of employer's decisions).

*8 To establish a prima facie case of discrimination, a plaintiff must show, *inter alia,* that a discharge occurred in circumstances giving rise to an inference of prejudice. *Maresco v. Evans Chemetics,* 964 F.2d 106, 110-11 (2d Cir.1992). It is uncontested that, due to the loss of its fund management function, Glaxo had a substantial reduction in force in which both Kellett's position and duties were eliminated. Such facts do not suggest a discriminatory animus. *DiCola v. Swissre Holding, Inc.,* 996 F.2d 30, 33 (2d Cir.1993). Furthermore, the nature of the reduction in force does not suggest discrimination against women or older persons. Two of the four persons terminated were males under forty, and one was a female under forty. (Smith Aff. ¶ 14) The ADEA protects workers between the ages of forty and seventy. *DiCola,* 996 F.2d at 32. Of the three persons retained by Glaxo, two were women. (Def.'s Mem. at 8-9.) Kellett herself was hired at age 39, only four years before a discharge that she contends was based on age discrimination.

Kellett cannot argue that any subsequent employee of Glaxo Enterprises has taken over her duties, since Glaxo Bermuda Ltd. took over Glaxo's portfolio starting in June, 1989. Kellett has instead complained that the Bermuda corporation failed to offer her a job. She fails to make any showing to rebut Glaxo's contention that Glaxo Bermuda Ltd. is an independent company that makes its own hiring decisions. (Williams Aff. ¶ 16.) Kellett has also complained that Glaxo failed to offer her a promised new accounting position. Glaxo observes that this accounting "position" was a part-time position that went to a woman, a high school graduate, who also performed clerical and secretarial work at a salary $47,000 below Kellett's. (Smith Dep. 207.) Kellett has not forwarded a theory of entitlement to any position that includes a low-level accounting function.

Glaxo's decision to retain a lower paid employee to do less responsible work does not impinge on any right of Kellett's. As the Second Circuit recently noted under similar facts:

It is true that [Plaintiff's] relatively higher salary was a reason for his termination. However, the substantial diminution of his responsibilities not only eliminated the need for his position, but also rendered his high salary economically unjustified. In such circumstances, salary is not a surrogate for age because the employer is seeking to adjust costs to match productivity, rather than to eliminate a salary differential based on longevity.

*DiCola,* 996 F.2d at 32-33. Nor did Glaxo have an obligation to create a new position for Kellett merely to keep her on the payroll. *Stanojev v. Ebasco Servs., Inc.,* 643 F.2d 914, 920 (2d Cir.1981).

Since Kellett has failed to establish a prima facie case, the Court need not address the subsequent shifting burdens of production under *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981), and *St. Mary's Honor Ctr. v. Hicks,* 113 S.Ct. 2742 (1993). Had the Court had found that Kellett's prima facie showing sufficient, it is certain that she could never satisfy her ultimate burden of proving intentional discrimination. *Hicks,* 113 S.Ct. at 2747.

*9 The Court has reviewed each of Kellett's numerous allegations of pre and post-termination discrimination, and finds no colorable claim or disputed issue of material fact to defeat Glaxo's motion for summary judgment.

VI. Conclusions

The Court finds each of Kellett's federal claims to be without merit. Lacking an independent basis of federal jurisdiction, the Court dismisses Kellett's state claims. Defendant's motion for summary judgment is granted. The Clerk will enter judgment dismissing the Complaint.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884
**(Cite as: Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.))**

Page 8

SO ORDERED.

FN1. Kellett states "Smith admitted that he did not have the authority as 'General Manager' to have Hock Lau be [sic] be transferred out of his function" citing to page 106 of the deposition testimony of Jack Smith. (Pl.'s Mem. at 27.) This provocative statement, suggesting direct control of labor relations, finds no support in the record. Smith merely stated that the decision to relocate the fund management function in Bermuda was not in his hands, but was a decision for the Board of Directors. (Smith. Dep. at 105-106.) Kellett also misstates Smith's testimony as to *which* Board of Directors made the decision to relocate. (Pl.'s Mem. at 26, Smith Dep. at 105.)

FN2. The Court also notes that due to Kellett's relatively large starting salary ($60,000 in September, 1986) compared to Lau's starting salary ($30,000 in July, 1984), Lau's salary only exceeded Kellett's for the three month period that immediately preceeded her termination. (Def.'s 3(g) statement ¶¶ 38-39.) Also relevant is Lau's two year seniority, (*Id.* at ¶ 35) which under the Equal Pay Act, constitutes an exception to the general rule of equal pay for equal work. 29 U.S.C. § 206(d)(1).

S.D.N.Y.,1994.
Kellett v. Glaxo Enterprises, Inc.
Not Reported in F.Supp., 1994 WL 669975 (S.D.N.Y.), 66 Fair Empl.Prac.Cas. (BNA) 1071, 2 Wage & Hour Cas.2d (BNA) 884

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.