

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUE EARL,                                    )
                                             )
            Plaintiff,                       )
                                             )
v.                                           )    **07 CIV 9595**
                                             )    COMPLAINT
NOVARTIS CONSUMER HEALTH,                     )
INC.                                         )
                                             )    **JURY TRIAL DEMANDED**
            Defendant.                       )
                                             )

Plaintiff Sue Earl (hereinafter "Ms. Earl"), brings this action by and through her attorneys Sanford Wittels & Heisler, LLP, against Defendant Novartis Consumer Health, Inc. (hereinafter "Novartis" or "Defendant"). Ms. Earl brings this action pursuant to Title VII, New York Executive Law §296 and other New York state law to redress the gender discrimination, pregnancy discrimination, retaliation and infliction of emotional distress she experienced as an employee of Novartis.

## I.    NATURE OF THIS ACTION

1. This case arises from Defendant's discriminatory treatment of Ms. Earl, wherein Novartis subjected Ms. Earl to sex discrimination and retaliation in the work place.

2. Ms. Earl was injured, personally and financially, by Novartis's discriminatory and retaliatory practices. At a minimum, she suffered on the basis of the following factors: (1) Novartis's sex discrimination practices and policies denied her promotions and equal pay within Novartis; and (2) Novartis retaliated against her for complaining to Novartis Human Resources by subjecting her to a hostile work environment.

3. While at Novartis, Ms. Earl was denied promotions and training opportunities because of her sex. The promotions and training opportunities denied to her were awarded to

employees, mostly male, with less tenure and/or less education than Ms. Earl. Also, Novartis managers treated Ms. Earl in a harassing, offensive and hostile manner in the workplace. In response to Novartis's discriminatory practices, Ms. Earl complained to Novartis Human Resources.

4.    In response to her complaint, Novartis retaliated against Ms. Earl by subjecting her to a hostile work environment. Ms. Earl was compelled to resign from Novartis to avoid further discrimination and retaliation. Ms. Earl brings this action against Defendant in light of its unjust practices and policies based on the alleged facts herein.

5.    Ms. Earl has no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is her only means of securing adequate relief. Ms. Earl suffered irreparable injury from Novartis's unlawful policies, practices and/or procedures as set forth herein.

## II.    PROCEDURAL HISTORY

6.    Ms. Earl timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about May 27, 2005. Ms. Earl received her Notice of Right to Sue on June 24, 2005.

7.    On or about June 2, 2005, at which time Ms. Earl was in the process of perfecting her Notice of Right to Sue, plaintiffs in the pending matter Velez v. Novartis Corporation, 04 Civ. 09194 (GEL) ("Velez matter"), filed their Second Amended Complaint, including Ms. Earl as a Plaintiff and Class Representative.

8.    In the Velez matter, Ms. Earl was one of twenty-two (22) women who brought a class action discrimination lawsuit against Corporate Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation and against Thomas Ebeling to redress gender

2

discrimination in employment on behalf of themselves and all other female employees of Novartis who are similarly situated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended.

9.    The statute of limitations on Ms. Earl's discrimination claim tolled as of the filing of the Second Amended Complaint in the Velez matter.

10.    On or about July 31, 2007, Judge Gerard Lynch dismissed Defendant Novartis Corporation, the parent company for Novartis Consumer Health, from the Velez matter, foreclosing Ms. Earl's ability to recover through the Velez matter as pled.  As of the July 31, 2007 decision, the statute of limitations was no longer tolled.

11.    Since no time passed between Ms. Earl's receipt of her Notice of Right to Sue and the filing of the Second Amended Complaint in the Velez matter, Ms. Earl had the full ninety (90) days to re-establish her claims, either through an amendment to the complaint in the Velez matter or by filing a related but individual action.  This ninety (90) day period expires on October 28, 2007.

12.    As such, Plaintiff timely files the instant action.

**III.    JURISDICTION AND VENUE**

13.    This Court has subject matter jurisdiction pursuant to Title VII to redress and enjoin employment practices of Novartis in violation of this statute.

14.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendant is subject to personal jurisdiction and has an offices in New York.

3

15.    The Southern District of New York is the most logical forum in which to litigate Plaintiff's claims. Ms. Earl worked for Novartis in New York, and the preceding Velez matter is properly maintained in New York.

IV.    **PARTIES**

A.    **Plaintiff**

16.    **Plaintiff Sue Earl** is a female citizen of the United States and a resident of Sparta in the State of New Jersey. Ms. Earl was employed by Novartis in New Jersey and New York from approximately July 1991 to March 2005. During that time, Ms. Earl held the positions of Long-term Care Sales Representative and Acute Care Account Manager.

B.    **Defendant**

17.    **Defendant Novartis Consumer Health, Inc.** is a division of Novartis Corporation specializing in the development, manufacture, and marketing of over-the-counter pharmaceuticals. Novartis Consumer Health is incorporated in Delaware and has office buildings in New York and New Jersey.

V.    **ALLEGATIONS OF PLAINTIFF**

18.    Ms. Earl was hired by Novartis in approximately July 1991 as a Long-term Care Sales Representative. She subsequently became an Acute Care Account Manager and also served in the roles of Field Sales Trainer and member of the Market Advisory Board.

19.    Ms. Earl worked for Novartis in New York and New Jersey.

20.    She was constructively discharged from Novartis in March 2005. Ms. Earl filed an EEO Charge in approximately May 2005, in which she complained about the gender discrimination she experienced at Novartis.

4

## Denials of Promotion

21.    In approximately 2002, while Ms. Earl was working in Acute Care, Novartis created an Acute Care "Associate Director" position, in which Ms. Earl was extremely interested. Her manager, Ken Notaro ("Notaro"), considered Ms. Earl his leading candidate for the position.

22.    However, when Ms. Earl interviewed with Eastern Regional Account Manager John Hawkins ("Regional Manager Hawkins"), he told her that he was hesitant to promote her because she was in the Pennsylvania district, which was not performing well. Ms. Earl explained that she had been transferred to the Pennsylvania district only several months before the interview, having previously worked very successfully in the high-performing New York district. Regional Manager Hawkins nonetheless continued to object to Ms. Earl's promotion.

23.    That evening, Regional Manager Hawkins left Ms. Earl a voicemail message stating that they had reached a decision and he had good news to share with her. When Ms. Earl spoke with Regional Manager Hawkins, however, he informed her that a male employee, Dan Cullman ("Cullman"), received the promotion. Cullman worked in Corporate Accounts and did not have relevant experience for the position. When Ms. Earl pointed out that Cullman lacked Acute Care knowledge, as Regional Manager Hawkins was well aware, Regional Manager Hawkins told her that he was counting on her to train Mr. Cullman in his new position.

24.    At a meeting shortly afterwards, numerous employees joked that Ms. Earl did not receive the promotion because she did not "have a penis."

25.    Following this denial of promotion in 2002, Ms. Earl continued to excel in her new district and, in fact, was ranked the top sales representative in the country in 2003.

26.    Ms. Earl complained to Human Resources about being denied the Acute Care Associate Director promotion, but to her knowledge, Human Resources took no action in response to her complaint.

27.    In addition, when Ms. Earl expressed her interest in a position in the Home Care division to Regional Manager Hawkins, he pointed out that the position required a great deal of travel and commented that the travel would not suit Ms. Earl well because she had four children. Upon information and belief, managers did not prevent male employees from advancing their careers with Novartis because they had children.

**Disparate Pay**

28.    In 2002, Ms. Earl was one of approximately four employees who received the Career Achievement Award for being an "advanced" performer who had ten or more years with the company. At the meeting during which Ms. Earl collected this award, Vice President Rob Harrington ("Harrington") asked her whether she noticed that she was the only female on stage.

29.    Further, at the end of 2002, Ms. Earl's performance was rated "solid," even though she had received the Career Achievement Award for her advanced performance. Had Ms. Earl received the "advanced" rating that she clearly deserved, she would have been entitled to an additional $30,000 in commission. However, because she was rated "solid," Ms. Earl was denied the $30,000 commission.

30.    In 2003, Ms. Earl was ranked the number one sales representative in the country. However, Regional Manager John Hawkins selected a lower ranking male employee as the "exceptional" performer. As a result, this male employee received an additional $10,000 that Ms. Earl was denied.

## Pregnancy Discrimination

31.    In approximately 1997, Ms. Earl became pregnant. Before her pregnancy, Ms. Earl served the role of Field Sales Trainer. As a Field Sales Trainer, she had greater responsibilities, including training other sales representatives, and was supposedly being groomed for management positions. Even though the Field Sales Trainer role was supposed to be a two year rotation, Ms. Earl was removed from the role after only one year when she became pregnant. Ms. Earl was prematurely removed from the role because she was going to be taking maternity leave.

32.    Further, Ms. Earl began to be subjected to much closer scrutiny after she became pregnant. Specifically, if she was a few minutes late to a meeting, she observed that other managers noted her tardiness. Conversely, male employees and non-pregnant female employees were not held to such strict standards.

33.    During Ms. Earl's pregnancy, Vice President Harrington rode along with her. While Ms. Earl was ready to begin working at approximately 7:30 a.m., Vice President Harrington did not arrive until approximately 8:30 a.m., at which time they began the day. During the ride along, Ms. Earl mentioned to Vice President Harrington that she was pregnant. Harrington ended the ride along in the early afternoon, telling Ms. Earl that he had to end the day early in order to catch a flight.

34.    However, after the ride along, Vice President Harrington wrote a memo to management stating that he was trying to analyze why employees were not able to make five calls per day and that, after riding along with a sales representative, he determined it was because employees were starting their days late and ending early. Because other managers inquired as to

7

which sales representative was being referenced in Vice President Harrington's memo, Ms. Earl's reputation was unfairly tarnished.

35.    After Ms. Earl returned from maternity leave, she heard rumors that she was going to be "squeezed out" of Novartis and replaced by a male employee.

## Differential Treatment and Hostile Work Environment

36.    After Dan Cullman received the Acute Care Associate Director promotion that Ms. Earl was denied, he favored male employees and subjected female employees to harsher treatment. For example, Cullman harassed Ms. Earl for being approximately one minute late to a meeting, even though he had shown up one and a half hours late to a meeting on another occasion.

37.    Further, because of his lack of relevant experience, Cullman was unable to competently perform his job as Acute Care Associate Director. Upon information and belief, several female employees attempted to get Cullman removed from his position due to his incompetence.

38.    When the Food Service unit of Novartis combined with its Clinical unit in the fall of 2004, Ms. Earl was stripped of the territory in which she had worked for the past 14 years and was assigned to an entirely new territory, while many of Ms. Earl's counterparts were able to maintain all or parts of their former territories.

39.    In March 2005, a female candidate for a position at Novartis confided in Ms. Earl that the male manager with whom she had interviewed inappropriately interrogated her about her personal life, for example, asking her when she planned on having children.

40.    On one occasion, Cullman told Ms. Earl that "talking to you is like talking to my two-year-old."

41.    At a national meeting in February 2005, Regional Manager Hawkins and other management personnel joked in front of Ms. Earl's peers about the fact that a friend of hers had fallen off of the George Washington Memorial Bridge.  The managers disregarded Ms. Earl's concern for her friend, a construction worker, who later died from his injuries, and mocked the fact that a family member of Ms. Earl's had previously died from a fall.

42.    In addition, many of Ms. Earl's female coworkers confided in her that Regional Manager Hawkins frequently touched them in a way that made them uncomfortable, including touching their hair and putting his arm around them.

### Retaliation

43.    Ms. Earl contacted Human Resources on several occasions to complain about the discrimination she was experiencing.  After the first time she contacted Human Resources, in approximately 2002, it became common knowledge among her coworkers and managers that she had complained.

44.    Upon information and belief, Regional Manager Hawkins singled out Ms. Earl as a result of her complaint to Human Resources.  Regional Manager Hawkins made threatening comments, such as telling Ms. Earl that she could go to Human Resources, but that Human Resources works for him.

45.    Regional Manager Hawkins harassing and retaliatory treatment of Ms. Earl was so pervasive that a female coworker of Ms. Earl urged her to find alternate employment so Ms. Earl could get away from Mr. Hawkins.

<u>COUNT I</u>
VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
42 U.S.C. § 2000e-5(f), *et seq.*, AS AMENDED

GENDER DISCRIMINATION

46.    Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

47.    Novartis has discriminated against Ms. Earl by treating her differently from and less preferably than similarly situated male employees and by subjecting her to discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory performance evaluations, disparate pay, disparate terms and conditions of employment, harassment, hostile work environments and other forms of discrimination in violation of Title VII.

48.    Novartis's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Earl.

49.    As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

50.    Novartis's policies, practices and/or procedures have produced a disparate impact against Ms. Earl with respect to her terms and conditions of employment.

51.    By reason of the continuous nature of Novartis's discriminatory conduct, persistent throughout the employment of Ms. Earl, Ms. Earl is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

52.    By reason of the discrimination suffered at Novartis, Ms. Earl is entitled to all legal and equitable remedies available under Title VII.

10

## COUNT II
### VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000(e) *et seq.*

### SEXUAL HARASSMENT

53.    Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

54.    Novartis has discriminated against Ms. Earl by permitting an ongoing, severe and pervasive pattern and practice of sexual harassment against her by creating and maintaining a sexually hostile work environment, in violation of Title VII.

55.    Novartis's sexual harassment altered Ms. Earl's conditions of employment by creating an abusive working environment for her.

56.    Novartis's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Earl.

57.    As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

58.    By reason of the continuous nature of Novartis's discriminatory conduct, persistent throughout the employment of Ms. Earl, Ms. Earl is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

59.    By reason of the sexual harassment suffered at Novartis, Ms. Earl is entitled to all legal and equitable remedies available under Title VII.

11

## COUNT III
## VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e(k) *et seq.*

### PREGNANCY DISCRIMINATION

60.     Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

61.     Novartis discriminated against Ms. Earl because of or on the basis of pregnancy, childbirth, or related medical conditions.

62.     Ms. Earl was not treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

63.     Novartis's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Earl.

64.     As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

65.     By reason of the continuous nature of Novartis's discriminatory conduct, persistent throughout the employment of Ms. Earl, Ms. Earl is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

66.     By reason of the pregnancy discrimination suffered at Novartis, Ms. Earl is entitled to legal and equitable remedies available under Title VII.

## COUNT IV
## VIOLATIONS OF TITLE VII, 28 U.S.C. § 2000e(k)

### RETALIATION

67.     Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

68.     Novartis retaliated against Ms. Earl because she insisted upon a work environment free of sexual harassment, gender discrimination and pregnancy discrimination and also because she complained about sexual harassment, gender discrimination and pregnancy discrimination.

69.     Novartis retaliated against Ms. Earl by subjecting her to adverse employment actions, including but not limited to, denying her promotions for which she was qualified and subjecting her to disparate terms and conditions of employment, gender discrimination, sexual harassment, a hostile work environment and/or other forms of discrimination in violation of Title VII.

70.     Novartis's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to Ms. Earl.

71.     As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

72.     By reason of the retaliation suffered at Novartis, Ms. Earl is entitled to all legal and equitable remedies available under Title VII.

13

**COUNT V**
**VIOLATIONS OF N.Y. EXEC. LAW § 296**

**GENDER DISCRIMINATION**

73.    Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

74.    Because of her gender, Novartis discriminated against Ms. Earl in compensation or in the terms, conditions or privileges of her employment, in violation of New York Executive Law § 296.

75.    As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

76.    By reason of the continuous nature of Novartis's discriminatory conduct, persistent throughout the employment of Ms. Earl, Ms. Earl is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

77.    By reason of the gender discrimination suffered at Novartis, Ms. Earl is entitled to all legal and equitable remedies available under New York Executive Law § 296.

**COUNT VI**
**VIOLATIONS OF N.Y. EXEC. LAW § 296**

**SEXUAL HARASSMENT**

78.    Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

79.    Novartis discriminated against Ms. Earl by creating and maintaining a sexually hostile work environment, in violation of New York Executive Law § 296.

14

80. Novartis's sexual harassment altered Ms. Earl's conditions of employment by creating an abusive working environment for her.

81. As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

82. By reason of the sexual harassment suffered at Novartis, Ms. Earl is entitled to all legal and equitable remedies available under New York Executive Law § 296.

## COUNT VII
## VIOLATIONS OF N.Y. EXEC. LAW § 296

### RETALIATION

83. Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

84. In violation of New York Executive Law § 296, Novartis discharged, expelled and otherwise discriminated against Ms. Earl because she opposed practices forbidden by New York Executive Law § 296.

85. As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

86. By reason of the sexual harassment suffered at Novartis, Ms. Earl is entitled to all legal and equitable remedies available under New York Executive Law § 296.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87. Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

15

88.    While employed at Novartis, Ms. Earl suffered intentional infliction of emotional distress at the hands of Defendants.

89.    Novartis's actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

90.    Novartis's actions can be regarded as atrocious and utterly intolerable in a civilized community.

91.    As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

92.    By reason of the continuous nature of Novartis's discriminatory conduct, persistent throughout the employment of Ms. Earl, Ms. Earl is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

93.    By reason of the gender discrimination suffered at Novartis, Ms. Earl is entitled to legal and equitable remedies.

COUNT IX
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

94.    Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

95.    Novartis's negligence caused Ms. Earl to suffer emotional distress.

96.    Novartis owed a duty to Ms. Earl.

97.    Novartis breached this duty and either unreasonably endangered the physical safety of Ms. Earl, or caused Ms. Earl to fear for her own safety.

98.    Novartis's actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

16

99.    Novartis's actions can be regarded as atrocious and utterly intolerable in a civilized community.

100.    As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

101.    By reason of the continuous nature of Novartis's discriminatory conduct, persistent throughout the employment of Ms. Earl, Ms. Earl is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

102.    By reason of the gender discrimination suffered at Novartis, Ms. Earl is entitled to legal and equitable remedies.

## COUNT X
### NEGLIGENT HIRING, RETENTION, AND SUPERVISION

103.    Ms. Earl re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

104.    As a result of direct negligence on the part of Novartis, Ms. Earl experienced emotional distress.

105.    Novartis placed its employees in a position to cause foreseeable harm, harm which Ms. Earl most probably would have been spared had Novartis taken reasonable care in making its decision concerning the hiring and retention of the employee.

106.    Novartis knew, or should have known, of its employees' propensity for the sort of conduct which caused the injuries of Ms. Earl.

107.    As a direct and proximate result of Novartis's aforementioned conduct, Ms. Earl was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

17

108.    By reason of the gender discrimination suffered at Novartis, Ms. Earl is entitled to legal and equitable remedies.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Ms. Earl requests the following relief:

A.    Acceptance of the jurisdiction of this case;

B.    Declaratory judgment that Defendant Novartis's employment policies, practices and/or procedures challenged herein are illegal and in violation of Title VII;

C.    A temporary and permanent injunction against Defendant Novartis and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, and gender discrimination by the Defendant Novartis as set forth herein;

D.    An Order requiring Defendant Novartis to initiate and implement programs that (i) remedy the discrimination at Novartis; (ii) ensure prompt, remedial action regarding all claims of gender discrimination; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

E.    An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by Ms. Earl to be determined at trial;

F.    Any other appropriate equitable relief to which Ms. Earl is entitled;

G.    An award of compensatory, nominal and punitive damages to Ms. Earl in an amount not less than $6 million dollars;

H.    An award of litigation costs and expenses, including reasonable attorneys' fees, to Ms. Earl;

I.    Pre-judgment and post-judgment interest; and

18

J.    Such other and further relief as the Court may deem just and proper.

## VII.   DEMAND FOR JURY

Ms. Earl demands a trial by jury of all issues.

Dated: New York, NY

October 26, 2007

SANFORD WITTELS & HEISLER, LLP

By:_____

Steven L. Wittels (SW-8110)
William R. Weinstein (WW-4289)
Jeremy Heisler (JH-0145)
950 Third Avenue, 10th Floor
New York, New York 10022
(646) 723-2947
Email: swittels@nydclaw.com;
        wweinstein@nydclaw.com;
        jheisler@nydclaw.com

David Sanford, D.C. Bar No. 457933
SANFORD, WITTELS & HEISLER, LLP
1666 Connectcut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776

*Attorney for Plaintiff*