UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMY VELEZ, SONIA KLINGER, PENNI ZELINKOFF, MINEL HIDER TOBERTGA, MICHELLE WILLIAMS, JENNIFER WAXMAN-RECHT, KAREN LIGGINS, LORI HORTON, HOLLY WATERS, STEPHANIE CATES, WENDY PINSON, ROBERTA VONLINTEL, ASHLEY NARMOUR, CATHERINE WHITE, KELLY CORBETT, SUE EARL, JAMIE HOLLAND, JOAN DURKIN, SIMONA LOPES, MARYANNE JACOBY, MARTA DEYNE, and DONNA MARTIN,

Individually and on Behalf of Others Similarly Situated,

                Plaintiffs,

-against-

NOVARTIS CORPORATION, NOVARTIS PHARMACEUTICALS CORPORATION, and THOMAS EBELING,

                Defendants.

Case No. 04 Civ. 09194 (GEL)

ECF CASE

---

### ANSWER OF NOVARTIS PHARMACEUTICALS CORPORATION TO SECOND AMENDED CLASS ACTION COMPLAINT

I.    **NATURE OF THIS ACTION**

**ALLEGATION NO. 1:**

Twenty-two (22) women who work or have worked for Novartis in New York and sixteen (16) other states, as well as Washington, D.C., in the United States and in Europe bring this action against Corporate Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation (jointly "Novartis" or "Corporate Defendants") and against Defendant Thomas Ebeling ("Ebeling") (collectively "Defendants") to redress gender discrimination in employment. Specifically, Amy Velez, Sonia Klinger, Penni Zelinkoff, Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Karen Liggins, Lori Horton, Holly Waters, Stephanie Cates, Wendy Pinson, Roberta VonLintel, Ashley Narmour, Catherine White, Kelly Corbett, Sue Earl,

Jamie Holland, Joan Durkin, Simona Lopes, Maryanne Jacoby, Marta Deyne and Donna Martin, the Class Representatives ("Class Representatives"), all of whom are present or former employees of Novartis, bring this amended class action against Novartis on behalf of themselves and all other female employees of Novartis who are similarly situated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended ("Title VII").

**ANSWER:**

For purposes of its responses, NPC interprets Plaintiffs' reference to "Novartis" in all allegations in this Amended Complaint as referring to NPC, and answers all allegations only on behalf of NPC. NPC admits that nineteen of its current and/or former employees have filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), et seq., as amended ("Title VII"), and seek to represent a class of female employees. NPC denies that it employed Ashley Narmour or Sue Earl. NPC further states that Donna Martin has been dismissed from this matter. NPC denies the remaining allegations contained in this Paragraph

**ALLEGATION NO. 2:**

The Class Representatives have worked and/or continue to work for Novartis throughout the United States in sixteen (16) states: Alabama, Arkansas, California, Connecticut, Delaware, Illinois, Kansas, Maryland, Missouri, New Jersey, New York, Oregon, Pennsylvania, Tennessee, Virginia, Washington, and in Washington, D.C. Class Representative Donna Martin has also worked for Novartis in Basel, Switzerland. Three Plaintiffs, Sue Earl, Simona Lopes and Marta Deyne, worked and/or continue to work for Novartis in New York.

**ANSWER:**

NPC admits that the plaintiffs have worked and/or continue to work in Alabama, California, Connecticut, Delaware, Illinois, Kansas, Maryland, Missouri, New Jersey, New York, Oregon, Tennessee, and Virginia, Washington, and in Washington, D.C. NPC further states that Donna Martin has been dismissed from this matter. NPC denies that it employed Sue Earl. NPC admits that Simona Lopes and Marta Deyne worked in New York. NPC further states that Donna Martin has been dismissed from this matter. NPC denies the remaining allegations contained in this Paragraph.

the Los Angeles area from March 2001 to June 2004. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 24:**

**Plaintiff Kelly Corbett** is a female citizen of the United States and a resident of Fairfax in the State of California.. Ms. Corbett was employed by Novartis from approximately May 2002 to March 2005 as a district manager in California.

**ANSWER:**

NPC lacks knowledge and information sufficient to form a belief as to Corbett's current residence. NPC admits that it employed Corbett as a district manager in California from May 2002 to March 2005. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 25:**

**Plaintiff Sue Earl** is a female citizen of the United States and a resident of Sparta in the State of New Jersey. Mrs. Earl was employed by Novartis in New Jersey, New York and Pennsylvania from approximately July 1991 to March 2005. During that time, Mrs. Earl held the positions of Long-term Care sales representative and Adult Care accounts manager, and served as a field sales trainer and a member of the Market Advisory Board.

**ANSWER:**

NPC denies that it employed Earl. NPC lacks knowledge and information sufficient to form a belief as to the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 26:**

**Plaintiff Jamie Holland** is a female citizen of the United States and a resident of Salisbury in the State of Maryland. Ms. Holland was employed by Novartis in Baltimore, Maryland, Washington, D.C. and Delaware from approximately April 2000 to August 2004. During that time, Ms. Holland held the positions of senior sales consultant and executive sales consultant.

**ANSWER:**

NPC lacks knowledge and information sufficient to form a belief as to Holland's current residence. NPC admits it employed Holland as a senior sales consultant and executive sales

level of job classification correlates with a lower percentage of female employees holding those positions.

**ANSWER:**

NPC denies the allegations contained in this Paragraph.

### E. Typicality of Claims and Relief Sought

**ALLEGATION NO. 66:**

The claims of the Class Representatives are typical of the claims of the proposed class. The Class Representatives assert claims in each of the categories of claims they assert on behalf of the proposed class. The relief sought by the Class Representatives for gender discrimination complained of herein is also typical of the relief which is sought on behalf of the proposed class.

**ANSWER:**

NPC denies the allegations contained in this Paragraph.

**ALLEGATION NO. 67:**

The Class Representatives are, like the members of the proposed class, all female employees who have worked for the Defendants during the liability period.

**ANSWER:**

NPC admits that nineteen of the Plaintiffs are present or former female employees of NPC. NPC denies that it employed Earl or Narmour. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 68:**

Discrimination in selection, promotion, advancement and training affects the compensation of the Class Representatives and all the class members in similar ways.

**ANSWER:**

NPC denies the allegations contained in this Paragraph.

**ALLEGATION NO. 69:**

Differential treatment between male and female employees occurs as a pattern and practice throughout all levels and departments of Novartis. Novartis' predominantly male managers hold female employees, including both the Class Representatives and class members, to stricter standards than male employees, and thus, female employees often receive lower

Duhart did not regularly make such changes and that two of Corbett's other employees who had received 2-3 performance evaluations received lower percentage increases. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 336:**

Regional Manager Duhart also informed Ms. Corbett and other District Managers, in a joking manner, that a female manager with whom he had previously worked at another pharmaceutical company had filed a sexual harassment complaint against him. Upon information and belief, Regional Manager Duhart has also had a female manager at his new company complain about his unfair employment practices.

**ANSWER:**

NPC lacks knowledge and information sufficient to form a belief as to what has happened at Duhart's current employer. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 337:**

Another female sales representative, Jessica Ellers, who was formerly a member of Ms. Corbett's district and later transferred to District Manager Mike Ruberio's team, was subjected to sexual harassment by District Manager Ruberio. During a ride-along with Ms. Ellers, District Manager Ruberio informed her that he had a vasectomy and, therefore, it would be safe for them to have a sexual relationship. Ms. Corbett learned of this incident only after Ms. Ellers resigned from her position at Novartis. District Manager Ruberio also left Novartis with Regional Manager Duhart and, upon information and belief, they currently work together at another company.

**ANSWER:**

NPC lacks knowledge and information sufficient to form a belief as to whether Ruberio and Duhart work together. NPC denies the remaining allegations contained in this Paragraph.

P.    **SUE EARL**

**Background**

**ALLEGATION NO. 338:**

**Plaintiff Sue Earl** ("Mrs. Earl") was hired by Novartis in approximately July 1991 as a Long-term Care sales representative. She subsequently became an Acute Care Account Manager and also served in the roles of Field Sales Trainer and member of the Market Advisory Board. Mrs. Earl worked for Novartis in New York, New Jersey and Pennsylvania. She was

constructively discharged from Novartis in March 2005. Mrs. Earl filed an EEO Charge in approximately May 2005, in which she complained about the gender discrimination she experienced at Novartis.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### Denials of Promotion

**ALLEGATION NO. 339:**

In approximately 2002, while Mrs. Earl was working in Acute Care, Novartis created an Acute Care "Associate Director" position, in which Mrs. Earl was extremely interested. Her manager, Ken Notaro ("Notaro"), considered Mrs. Earl his leading candidate for the position. However, when Mrs. Earl interviewed with Eastern Regional Account Manager John Hawkins ("Hawkins"), he told her that he was hesitant to promote her because she was in the Pennsylvania district, which was not performing well. Mrs. Earl explained that she had been transferred to the Pennsylvania district only several months before the interview, having previously worked very successfully in the high-performing New York district. Regional Manager Hawkins nonetheless continued to object to Mrs. Earl's promotion.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 340:**

That evening, Regional Manager Hawkins left Mrs. Earl a voicemail message stating that they had reached a decision and he had good news to share with her. When Mrs. Earl spoke with Regional Manager Hawkins, however, he informed her that a male employee, Dan Cullman ("Cullman"), received the promotion. Cullman worked in Corporate Accounts and did not have relevant experience for the position. When Mrs. Earl pointed out that Cullman lacked Acute Care knowledge, as Regional Manager Hawkins was well aware, Regional Manager Hawkins told her that he was counting on her to train Mr. Cullman in his new position.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 341:**

At a meeting shortly afterwards, numerous other employees joked that Mrs. Earl did not receive the promotion because she did not "have a penis." Following this denial of promotion in 2002, Mrs. Earl continued to excel in her new district and, in fact, was ranked the top sales representative in the country in 2003.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 342:**

Mrs. Earl complained to Human Resources about being denied the Acute Care Associate Director promotion, but to her knowledge, Human Resources took no action in response to her complaint.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 343:**

In addition, when Mrs. Earl expressed her interest in a position in the Home Care division to Regional Manager Hawkins, he pointed out that the position required a great deal of travel and commented that the travel would not suit Mrs. Earl well because she had four children. Upon information and belief, managers did not prevent male employees from advancing their careers with Novartis because they had children.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

<u>Disparate Pay</u>

**ALLEGATION NO. 344:**

In 2002, Mrs. Earl was one of approximately four employees who received the Career Achievement Award for being an "advanced" performer who had ten or more years with the company. At the meeting during which Mrs. Earl collected this award, Vice President Rob Harrington ("Harrington") asked her whether she noticed that she was the only female on stage.

-114-

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 345:**

Further, at the end of 2002, Mrs. Earl's performance was rated "solid," even though she had received the Career Achievement Award for her advanced performance. Sales representatives received ratings of "needs improvement," "solid," "advanced," or "exceptional." Had Mrs. Earl received the "advanced" rating that she clearly deserved, she would have been entitled to an additional $30,000 in commission. However, because she was rated "solid," Mrs. Earl was denied the $30,000 commission.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 346:**

In 2003, Mrs. Earl was ranked the number one sales representative in the country. However, Regional Manager John Hawkins selected a lower ranking male employee as the "exceptional" performer. As a result, this male employee received an additional $10,000 that Mrs. Earl was denied.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### Pregnancy Discrimination

**ALLEGATION NO. 347:**

In approximately 1997, Mrs. Earl became pregnant. Before her pregnancy, Mrs. Earl served the role of Field Sales Trainer. As a Field Sales Trainer, she had greater responsibilities, including training other sales representatives, and was supposedly being groomed for management positions. Even though the Field Sales Trainer role was supposed to be a two year rotation, Mrs. Earl was removed from the role after only one year when she became pregnant. Mrs. Earl was prematurely removed from the role because she was going to be taking maternity leave.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 348:**

During Mrs. Earl's pregnancy, Vice President Harrington rode along with her. While Mrs. Earl was ready to begin working at approximately 7:30 a.m., Vice President Harrington did not arrive until approximately 8:30 a.m., at which time they began the day. During the ride along, Mrs. Earl mentioned to Vice President Harrington that she was pregnant. Harrington ended the ride along in the early afternoon, telling Mrs. Earl that he had to end the day early in order to catch a flight. However, after the ride along, Vice President Harrington wrote a memo to management stating that he was trying to analyze why employees were not able to make five calls per day and that, after riding along with a sales representative, he determined it was because employees were starting their days late and ending early. Because other managers inquired as to which sales representative was being referenced in Vice President Harrington's memo, Mrs. Earl's reputation was unfairly tarnished.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### Differential Treatment and Hostile Work Environment

**ALLEGATION NO. 349:**

After Dan Cullman received the Acute Care Associate Director promotion that Mrs. Earl was denied, he favored male employees and subjected female employees to harsher treatment. For example, Cullman harassed Mrs. Earl for being approximately one minute late to a meeting, even though he had shown up one and a half hours late to a meeting on another occasion.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 350:**

Further, because of his lack of relevant experience, Cullman was unable to competently perform his job as Acute Care Associate Director. Upon information and belief, several female employees attempted to get Cullman removed from his position due to his incompetence.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 351:**

In March 2005, a female candidate for a position at Novartis confided in Mrs. Earl that the male manager with whom she had interviewed inappropriately interrogated her about her personal life, for example, asking her when she planned on having children.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 352:**

Mrs. Earl contacted Human Resources on several occasions to complain about the discrimination she was experiencing. After the first time she contacted Human Resources, in approximately 2002, it became common knowledge among her coworkers and managers that she had complained. Mrs. Earl believed that she was singled out by Regional Manager Hawkins as a result of her complaint to Human Resources. Regional Manager Hawkins made threatening comments, such as telling Mrs. Earl that she could go to Human Resources, but that Human Resources works for him.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 353:**

In addition, many of Mrs. Earl's female coworkers confided in her that Regional Manager Hawkins frequently touched them in a way that made them uncomfortable, including touching their hair and putting his arm around them.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 553:**

Ebeling was aware of, or should have known that the U.S. corporate defendants were retaliating against women employees who were exercising their rights and complaining about gender discrimination at Novartis' United States facilities.

**ANSWER:**

NPC does not respond to the allegations contained in this Paragraph because this Count purports to state a claim against Thomas Ebeling, not NPC.

**ALLEGATION NO. 554:**

As a direct and proximate result of Ebeling's aiding and abetting conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

**ANSWER:**

NPC does not respond to the allegations contained in this Paragraph because this Count purports to state a claim against Thomas Ebeling, not NPC.

**ALLEGATION NO. 555:**

By reason of the sexual harassment suffered at Novartis which Ebeling aided and abetted, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under New York Executive Law § 296.

**ANSWER:**

NPC does not respond to the allegations contained in this Paragraph because this Count purports to state a claim against Thomas Ebeling, not NPC.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1.  No Plaintiff may recover for any acts occurring more than 300 days prior to the day she filed her EEOC charge.

2.  Plaintiffs' claims are barred to the extent Plaintiffs have failed to exhaust the administrative prerequisites for filing suit under Title VII.

3. Plaintiffs' claims are barred to the extent they are not like or reasonably related to the underlying EEOC Charges.

4. Plaintiff Amy Velez is barred from recovery because her EEOC Charge was dismissed as untimely.

5. Plaintiff Stephanie Cates falsified her employment application with NPC. Therefore, any back pay recovery by Cates would be cut-off as of the discovery date of this falsification.

6. Those Plaintiffs who are no longer employed by NPC have failed to mitigate their damages.

7. The claims of any Plaintiff are barred to the extent any Plaintiff has executed or, in the future executes, a release of employment-related claims.

8. NPC exercised reasonable care to prevent and promptly correct alleged harassing behavior and Plaintiffs' claims are barred to the extent they unreasonably failed to take advantage of NPC's preventive and corrective opportunities, including but not limited to internal complaint procedures, or avoid harm otherwise.

9. Plaintiffs are not entitled to punitive damages in that NPC has acted at all times with good faith efforts to comply with all laws prohibiting discrimination.

10. Novartis Corp. is not a proper party Defendant because it did not employ any of the Plaintiffs or putative class members, and was otherwise not responsible for the employment actions or practices of which Plaintiffs complain.

11. The venue of this action should be transferred to the District of New Jersey.

12. Ashley Narmour and Sue Earl are not proper plaintiffs because they were not employees of Novartis Pharmaceuticals Corporation.

13. The New York Executive Law does not apply to one or more of the Plaintiffs and/or purported Class Members.

Dated: Chicago, Illinois.
July 25, 2005

Respectfully submitted,

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.

By: _____S/_____
Richard H. Schnadig, Esq.
Jonathan A. Wexler, Esq.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
(312) 609-7500
(312) 609-5005

Attorneys for Defendant Novartis Pharmaceuticals Corporation