UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMY VELEZ, SONIA KLINGER, PENNI ZELINKOFF, MINEL HIDER TOBERTGA, MICHELLE WILLIAMS, JENNIFER WAXMAN-RECHT, KAREN LIGGINS, LORI HORTON, HOLLY WATERS, STEPHANIE CATES, WENDY PINSON, ROBERTA VONLINTEL, ASHLEY NARMOUR, CATHERINE WHITE, KELLY CORBETT, SUE EARL, JAMIE HOLLAND, JOAN DURKIN, SIMONA LOPES, MARYANNE JACOBY, MARTA DEYNE, and DONNA MARTIN,<br><br>**Individually and on Behalf of Others Similarly Situated,**<br><br>PLAINTIFFS,<br><br>v.<br><br>NOVARTIS CORPORATION, NOVARTIS PHARMACEUTICALS CORPORATION, and THOMAS EBELING,<br><br>DEFENDANTS. | **SECOND AMENDED**<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**04 Civ. 09194 (GEL)**<br><br><br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

### I.     NATURE OF THIS ACTION

1.     Twenty-two (22) women who work or have worked for Novartis in New York and sixteen (16) other states, as well as Washington, D.C., in the United States and in Europe bring this action against Corporate Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation (jointly "Novartis" or "Corporate Defendants") and against

Defendant Thomas Ebeling ("Ebeling") (collectively "Defendants") to redress gender discrimination in employment. Specifically, Amy Velez, Sonia Klinger, Penni Zelinkoff, Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Karen Liggins, Lori Horton, Holly Waters, Stephanie Cates, Wendy Pinson, Roberta VonLintel, Ashley Narmour, Catherine White, Kelly Corbett, Sue Earl, Jamie Holland, Joan Durkin, Simona Lopes, Maryanne Jacoby, Marta Deyne and Donna Martin, the Class Representatives ("Class Representatives"), all of whom are present or former employees of Novartis, bring this amended class action against Novartis on behalf of themselves and all other female employees of Novartis who are similarly situated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended ("Title VII").

2.      The Class Representatives have worked and/or continue to work for Novartis throughout the United States in sixteen (16) states: Alabama, Arkansas, California, Connecticut, Delaware, Illinois, Kansas, Maryland, Missouri, New Jersey, New York, Oregon, Pennsylvania, Tennessee, Virginia, Washington, and in Washington, D.C. Class Representative Donna Martin has also worked for Novartis in Basel, Switzerland. Three Plaintiffs, Sue Earl, Simona Lopes and Marta Deyne, worked and/or continue to work for Novartis in New York.

3.      The Class Representatives seek to represent female employees of Novartis who have been subjected to one or more aspects of the systemic gender discrimination described in this Complaint, including, but not limited to: (a) discriminatory policies, practices and/or procedures in selection, promotion and advancement; (b) disparate pay; (c) differential treatment; (d) gender hostility; (e) hostile work environment; (f) pregnancy discrimination; (g) sexual harassment; and (h) retaliation in the workplace. The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

4.      The Class Representatives are seeking, on behalf of themselves and the class they seek to represent, declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses to redress Novartis' pervasive and discriminatory employment policies, practices and/or procedures.

## II.    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Title VII to redress and enjoin employment practices of Novartis in violation of this statute.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants are subject to personal jurisdiction and reside in New York.

7.      The Southern District of New York is the most logical forum in which to litigate the claims of the Class Representatives and the proposed class in this case.  Novartis Corporation is headquartered in New York, New York and incorporated in the State of New York, with Registered Agents in New York.  Additionally, Novartis Pharmaceuticals Corporation has both a physical presence and a Registered Agent in New York.  Further, Class Representative Simona Lopes ("Lopes") resides in New York and Lopes and other Class Representatives worked for Novartis in New York.  Finally, the Class Representatives and potential class members reside in all areas of the United States and Europe in which Novartis conducts business.

## III.    PROCEDURAL HISTORY

8.      Class Representative Amy Velez timely filed a Charge of Discrimination with the New Jersey Division on Civil Rights and the Equal Employment Opportunity Commission ("EEOC") on or about July 15, 2003.  Ms. Velez received her Notice of Right to Sue on August 24, 2004, and on November 19, 2004, timely filed suit within ninety (90) days of receipt of her

3

Notice of Right to Sue. Class Representatives Sonia Klinger, Penni Zelinkoff, Karen Liggins, Lori Horton, Holly Waters and Roberta VonLintel also filed Charges with the EEOC and have each received Notices of Right to Sue. Class Representatives Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Stephanie Cates, Wendy Pinson, Ashley Narmour, Catherine White, Kelly Corbett, Sue Earl, Jamie Holland, Joan Durkin, Simona Lopes and Marta Deyne have filed charges of gender discrimination with the EEOC and are in the process of perfecting their Notices of Right to Sue.

9.      The Class Representatives are relying on their own EEO charges and/or those of other Class Representatives.

## IV.    PARTIES

### A.    Plaintiffs

10.     **Plaintiff Amy Velez** is a female citizen of the United States and a resident of Laurel in the State of Maryland. Ms. Velez was employed by Novartis from approximately January 1997 to April 2004 in Novartis' Washington, D.C. sales district. Throughout that time, Ms. Velez worked as a sales representative, sales consultant, and senior sales consultant, a position she held until her constructive discharge from Novartis in April 2004.

11.     **Plaintiff Sonia Klinger** is a female citizen of the United States and a resident of St. Louis in the State of Missouri. Ms. Klinger was employed by Novartis from approximately June 2001 to November 2004 as an area sales manager in the Senior Care Department in Novartis' St. Louis/Kansas City district. In November 2004, Ms. Klinger was displaced from her position as area sales manager and was subsequently constructively discharged in March 2005.

12.     **Plaintiff Penni Zelinkoff** is a female citizen of the United States and a resident of Arvada in the State of Colorado. Ms. Zelinkoff was employed by Novartis from approximately

4

23.    **Plaintiff Catherine White** is a female citizen of the United States and a resident of Las Vegas in the State of Nevada. Ms. White was employed by Novartis from approximately March 2001 to June 2004 in Los Angeles, California. During that time, Ms. White held the positions of sales representative and sales consultant.

24.    **Plaintiff Kelly Corbett** is a female citizen of the United States and a resident of Fairfax in the State of California. Ms. Corbett was employed by Novartis from approximately May 2002 to March 2005 as a district manager in California.

25.    **Plaintiff Sue Earl** is a female citizen of the United States and a resident of Sparta in the State of New Jersey. Mrs. Earl was employed by Novartis in New Jersey, New York and Pennsylvania from approximately July 1991 to March 2005. During that time, Mrs. Earl held the positions of Long-term Care sales representative and Adult Care accounts manager, and served as a field sales trainer and a member of the Market Advisory Board.

26.    **Plaintiff Jamie Holland** is a female citizen of the United States and a resident of Salisbury in the State of Maryland. Ms. Holland was employed by Novartis in Baltimore, Maryland, Washington, D.C. and Delaware from approximately April 2000 to August 2004. During that time, Ms. Holland held the positions of senior sales consultant and executive sales consultant.

27.    **Plaintiff Joan Durkin** is a female citizen of the United States and a resident of Darien in the State of Illinois. Ms. Durkin was employed by Novartis in Illinois from approximately 1997 to February 2005. During that time, Ms. Durkin held the positions of sales representative, sales consultant, senior sales consultant, in-house trainer and worked in Executive Sales.

54.    The Class Representatives and class members have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. The Class Representatives and class members are now suffering irreparable injury from Novartis' unlawful policies, practices and/or procedures as set forth herein, and will continue to suffer unless those policies, practices and/or procedures are enjoined by this Court.

## VI.    CLASS ACTION ALLEGATIONS

### A.    Class Definition

55.    The Class Representatives seek to maintain claims on their own behalf and on behalf of a class of current and former Novartis employees. Each of the Class Representatives is a member of the class.

56.    The class consists of all female citizens of the United States who are, or have been, employed by Novartis in the United States and Europe and have experienced gender discrimination at any time during the applicable liability period. All of the Class Representatives are proposed representatives of the class. Upon information and belief, there are hundreds, if not thousands, of members of the proposed class.

### B.    Efficiency of Class Prosecution of Common Claim

57.    Certification of a class of female employees similarly situated to the Class Representatives is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class. The individual claims of the Class Representatives require resolution of the common question of whether Novartis has engaged in a systemic pattern and/or practice of gender discrimination against female employees. The Class Representatives seek remedies to eliminate the adverse

effects of such discrimination in their own lives, careers and working conditions and in the lives, careers and working conditions of the proposed class members, and to prevent continued gender discrimination in the future. The Class Representatives have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on females generally. In order to gain such relief for themselves, as well as for the proposed class members, the Class Representatives will first establish the existence of systemic gender discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the proposed class of females who have been affected by these common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the proposed class and Novartis.

58.     The Class Representatives' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this case. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### C.      Numerosity and Impracticability of Joinder

59.     The class which the Class Representatives seek to represent is too numerous to make joinder practicable. The proposed class consists of hundreds, if not thousands, of current, former, and future female employees during the liability period.

### D.      Common Questions of Law and Fact

60.     The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and

15

those of the proposed class they seek to represent. The common questions of law include, *inter alia*: (a) whether Novartis has engaged in unlawful, systemic gender discrimination in its selection, promotion, advancement, transfer, training and discipline policies, practices and/or procedures, and in the general terms and conditions of work and employment; (b) whether Novartis has engaged in unlawful, systemic sexual harassment; (c) whether Novartis has unlawfully discriminated against female employees based on their pregnancies; (d) whether Novartis has unlawfully retaliated against female employees for complaining about gender discrimination; and (e) whether Novartis is liable for a continuing systemic violation of Title VII; and (f) a determination of the proper standards for proving a pattern and/or practice of discrimination by Novartis against its female employees.

61.     The common questions of fact would include, *inter alia*: whether, through its policies, practices and/or procedures: (a) Novartis has denied or delayed the promotion of females; (b) Novartis has precluded females from eligibility for promotions by denying them training that male employees are afforded; (c) Novartis has paid females less than comparable situated male employees; (d) Novartis has subjected females to differential treatment, including, but not limited to, less preferable work assignments, inequitable evaluations and stricter discipline; (e) Novartis has maintained a hostile work environment based on gender; (f) Novartis has subjected females to disparate treatment based on pregnancy; (g) Novartis' policies and procedures have had a disparate impact on pregnant female employees; (h) Novartis has subjected female employees to sexual harassment and/or a sexually hostile work environment; (i) Novartis has retaliated against women for complaining about the gender discrimination described in (a) through (h) above; and (j) Novartis has engaged in a pattern and practice of failing to take prompt and effective action to remedy the gender discrimination in its workplace.

62.     The employment policies, practices and/or procedures to which the Class Representatives and the class members are subject are set at Novartis' corporate level and apply universally to all class members throughout the country.  These employment policies, practices and/or procedures are not unique or limited to any department; rather, they apply to all departments, and, thus, affect the Class Representatives and proposed class members no matter the district, division or position in which they work.

63.     Throughout the liability period, a disproportionately large percentage of the managers and supervisors at Novartis have been male.

64.     Discrimination in selection, promotion and advancement occurs as a pattern and practice throughout all levels and all divisions of Novartis.  Selection, promotion, and advancement opportunities are driven by personal familiarity, subjective decision-making, pre-selection and interaction between male managers, supervisors, and subordinates rather than by merit or equality of opportunity.  As a result, male employees have advanced and continue to advance more rapidly to better and higher paying jobs than female employees.

65.     Novartis' policies, practices and/or procedures have had an adverse impact on females seeking selection for, or advancement to, better and higher paying positions.  In general, a higher level of job classification correlates with a lower percentage of female employees holding those positions.

E.      **Typicality of Claims and Relief Sought**

66.     The claims of the Class Representatives are typical of the claims of the proposed class.  The Class Representatives assert claims in each of the categories of claims they assert on behalf of the proposed class.  The relief sought by the Class Representatives for gender

17

discrimination complained of herein is also typical of the relief which is sought on behalf of the proposed class.

67.    The Class Representatives are, like the members of the proposed class, all female employees who have worked for the Defendants during the liability period.

68.    Discrimination in selection, promotion, advancement and training affects the compensation of the Class Representatives and all the class members in similar ways.

69.    Differential treatment between male and female employees occurs as a pattern and practice throughout all levels and departments of Novartis. Novartis' predominantly male managers hold female employees, including both the Class Representatives and class members, to stricter standards than male employees, and thus, female employees often receive lower performance appraisals than males for performing at the same level. Female employees are also disciplined, formally and informally, more frequently and severely than their male counterparts. Additionally, male employees more often receive preferable work assignments and other preferential treatment.

70.    Discrimination in the form of a hostile work environment occurs as a pattern and practice throughout all levels and departments of Novartis and affects the Class Representatives and the members of the class in the same ways. Male supervisors and employees have made hostile comments and jokes; harassed and intimidated female employees; made it clear in various ways that they favor male employees; and otherwise have created a working environment hostile to female employees.

71.    Discrimination in the form of hostility towards pregnant female employees occurs as a pattern and practice throughout all levels and departments of Novartis and affects the Class Representatives and the members of the class in the same ways. Male supervisors have denied

18

promotions and promotional opportunities to pregnant female employees; denied equal compensation to pregnant female employees; subjected pregnant female employees to stricter scrutiny; made hostile comments to pregnant female employees; unreasonably disciplined female employees after they return from maternity leave; and subjected female employees to adverse employment actions after they return from maternity leave.

72.    Sexual harassment occurs as a pattern and practice throughout all levels and departments of Novartis and affects the Class Representatives and the members of the class in similar ways.   Male supervisors and employees hold sexually explicit conversations; make sexually hostile jokes and remarks; comment on female employees' bodies; inappropriately touch female employees; make unwelcome sexual advances on female employees; and practice other forms of sexual harassment.

73.    Several of the Class Representatives, and numerous other female employees, have complained to Novartis' management and Human Resources about gender discrimination and a sexually hostile work environment.  Company investigations into these complaints have been inadequate and/or superficial.   The Class Representatives and the class members have been affected in the same ways by Novartis' failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

74.    Several of the Class Representatives, and numerous other female employees, have experienced retaliation from managers after complaining about gender discrimination, contacting Human Resources or filing EEO Charges of Discrimination.

75.    Novartis has failed to create adequate incentives for its managers to comply with equal employment opportunity laws regarding each of the employment policies, practices and/or procedures referenced in this Complaint and has failed to adequately discipline its managers and

other employees when they violate the anti-discrimination laws. These failures have affected the Class Representatives and the class members in similar ways.

76.    The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the proposed class members in this case. The Class Representatives seek the following relief for their individual claims and for those of the members of the proposed class: (a) a declaratory judgment that Novartis has engaged in systemic gender discrimination against female employees by limiting their ability to be promoted to better and higher paying positions, limiting their employment opportunities to lower and less desirable classifications, limiting their training and transfer opportunities, exposing them to differential treatment, subjecting them to gender hostility at work, subjecting them to sexual harassment and a sexually hostile work environment, and retaliating against them for complaining about the gender discrimination to which they are subjected; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of Novartis' promotion, transfer, training, performance evaluation, compensation, work environment and discipline policies, practices and/or procedures so that females will be able to compete fairly in the future for promotions, transfers and assignments to better and higher paying classifications with terms and conditions of employment traditionally enjoyed by male employees; (d) equitable relief which effects a restructuring of the Novartis workforce so that females are promoted into higher and better paying classifications that they would have held in the absence of Novartis' past gender discrimination; (e) back pay, front pay, and other equitable remedies necessary to make female employees whole from the Defendants' past discrimination; (f) compensatory damages; (g) punitive and nominal damages to prevent and deter Novartis from engaging in similar discriminatory practices in the future; and (h) attorneys' fees, costs and expenses.

### F.    Adequacy of Representation

77.    The Class Representatives interests are co-extensive with those of the members of the proposed class that they seek to represent in this case. The Class Representatives seek to remedy Novartis' discriminatory employment policies, practices and/or procedures so that females will no longer be prevented from advancing into higher paying and more desirable positions, will not receive disparate pay and differential treatment, will not be subjected to gender hostility and sexual harassment at work, and will not be retaliated against for speaking out against gender discrimination and harassment. The Class Representatives are willing and able to represent the proposed class fairly and vigorously as they pursue their similar individual claims in this action. The Class Representatives have retained counsel who are qualified, experienced and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience and resources of the Class Representatives and their counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Fed.R.Civ.P. 23(a)(4).

### G.    Requirements of Rule 23(b)(2)

78.    Novartis has acted on grounds generally applicable to the Class Representatives and the proposed class by adopting and following systemic policies, practices and/or procedures which are discriminatory on the basis of gender. Gender discrimination is Novartis' standard operating procedure rather than a sporadic occurrence. Novartis has refused to act on grounds generally applicable to the class by, *inter alia*: (a) refusing to adopt and apply selection, promotion, training, performance evaluation, compensation and discipline policies, practices and/or procedures which do not have a disparate impact on, or otherwise systemically

discriminate against, females and/or pregnant employees; (b) refusing to provide equal terms and conditions of employment for female and/or pregnant employees; and (c) refusing to provide a working environment which is free of gender hostility and sexual harassment. Novartis' systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the class as a whole.

79.    Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of Novartis' individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the Class Representatives' and class members' entitlement to monetary and non-monetary remedies at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female employees at Novartis. Declaratory and injunctive relief are the factual and legal predicates for the Class Representatives' and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by, and for exemplary purposes necessitated by, such systemic discrimination.

### H.    Requirements of Rule 23(b)(3)

80.    The common issues of fact and law affecting the claims of the Class Representatives and proposed class members, including, but not limited to, the common issues identified in paragraphs 46-50 above, predominate over any issues affecting only individual claims.

81.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the proposed class.

82.    The cost of proving Novartis' pattern and practice of discrimination makes it impracticable for the Class Representatives and members of the proposed class to pursue their claims individually.

## VII.    ALLEGATIONS OF THE CLASS REPRESENTATIVES

### A.    AMY VELEZ

#### Background

83.    **Plaintiff Amy Velez** ("Ms. Velez") was hired by Novartis in approximately January 1997 as a sales representative in Novartis' Washington, D.C. sales district. Ms. Velez became a Sales Consultant in approximately February 1998. In approximately March 2000, Ms. Velez became a Senior Sales Consultant. She held this position until her constructive discharge from Novartis in April 2004. Ms. Velez filed an EEO Charge on or about July 15, 2003, in which she complained about the gender discrimination she experienced at Novartis.

#### Denials of Promotion

84.    Beginning in November 1997, Ms. Velez began winning numerous "Building from Strength" and "Show Me the Growth" sales contests. In addition, several of her managers gave her "Recognition Reward" letters and gifts.

85.    In 1998, one of Ms. Velez's managers sent her a thank-you note, commending Ms. Velez on her "commitment to excellence." In 1999, Ms. Velez also won "Gain and Maintain" and "Miacalcin Blitz" contests for her high product sales numbers.

86.    In 1999, Ms. Velez applied and interviewed for an Institutional Hospital Specialty position, a promotional opportunity. Ms. Velez's application was denied, and Craig Lafferty ("Lafferty"), a male, received the promotion instead.

23

recommended an approximately 2% salary increase for her, Regional Manager Duhart retroactively increased her raise to 5.5%. It is extremely unusual for Regional Managers to change a sales representative's salary increase by such a high margin. Meanwhile, two of Ms. Corbett's other employees who had received 2-3 performance evaluations were not awarded such high raises. Because of the inappropriate manner in which Regional Manager Duhart treated Edler, Ms. Corbett believed that he determined Edler's raise based on his sexual attraction to her.

336.    Regional Manager Duhart also informed Ms. Corbett and other District Managers, in a joking manner, that a female manager with whom he had previously worked at another pharmaceutical company had filed a sexual harassment complaint against him. Upon information and belief, Regional Manager Duhart has also had a female manager at his new company complain about his unfair employment practices.

337.    Another female sales representative, Jessica Ellers, who was formerly a member of Ms. Corbett's district and later transferred to District Manager Mike Ruberio's team, was subjected to sexual harassment by District Manager Ruberio. During a ride-along with Ms. Ellers, District Manager Ruberio informed her that he had a vasectomy and, therefore, it would be safe for them to have a sexual relationship. Ms. Corbett learned of this incident only after Ms. Ellers resigned from her position at Novartis. District Manager Ruberio also left Novartis with Regional Manager Duhart and, upon information and belief, they currently work together at another company.

P.    SUE EARL

### Background

338.    **Plaintiff Sue Earl** ("Mrs. Earl") was hired by Novartis in approximately July 1991 as a Long-term Care sales representative. She subsequently became an Acute Care

74

Account Manager and also served in the roles of Field Sales Trainer and member of the Market Advisory Board. Mrs. Earl worked for Novartis in New York, New Jersey and Pennsylvania. She was constructively discharged from Novartis in March 2005. Mrs. Earl filed an EEO Charge in approximately May 2005, in which she complained about the gender discrimination she experienced at Novartis.

### Denials of Promotion

339.    In approximately 2002, while Mrs. Earl was working in Acute Care, Novartis created an Acute Care "Associate Director" position, in which Mrs. Earl was extremely interested. Her manager, Ken Notaro ("Notaro"), considered Mrs. Earl his leading candidate for the position. However, when Mrs. Earl interviewed with Eastern Regional Account Manager John Hawkins ("Hawkins"), he told her that he was hesitant to promote her because she was in the Pennsylvania district, which was not performing well. Mrs. Earl explained that she had been transferred to the Pennsylvania district only several months before the interview, having previously worked very successfully in the high-performing New York district. Regional Manager Hawkins nonetheless continued to object to Mrs. Earl's promotion.

340.    That evening, Regional Manager Hawkins left Mrs. Earl a voicemail message stating that they had reached a decision and he had good news to share with her. When Mrs. Earl spoke with Regional Manager Hawkins, however, he informed her that a male employee, Dan Cullman ("Cullman"), received the promotion. Cullman worked in Corporate Accounts and did not have relevant experience for the position. When Mrs. Earl pointed out that Cullman lacked Acute Care knowledge, as Regional Manager Hawkins was well aware, Regional Manager Hawkins told her that he was counting on her to train Mr. Cullman in his new position.

341.    At a meeting shortly afterwards, numerous other employees joked that Mrs. Earl did not receive the promotion because she did not "have a penis."  Following this denial of promotion in 2002, Mrs. Earl continued to excel in her new district and, in fact, was ranked the top sales representative in the country in 2003.

342.    Mrs. Earl complained to Human Resources about being denied the Acute Care Associate Director promotion, but to her knowledge, Human Resources took no action in response to her complaint.

343.    In addition, when Mrs. Earl expressed her interest in a position in the Home Care division to Regional Manager Hawkins, he pointed out that the position required a great deal of travel and commented that the travel would not suit Mrs. Earl well because she had four children. Upon information and belief, managers did not prevent male employees from advancing their careers with Novartis because they had children.

### Disparate Pay

344.    In 2002, Mrs. Earl was one of approximately four employees who received the Career Achievement Award for being an "advanced" performer who had ten or more years with the company.  At the meeting during which Mrs. Earl collected this award, Vice President Rob Harrington ("Harrington") asked her whether she noticed that she was the only female on stage.

345.    Further, at the end of 2002, Mrs. Earl's performance was rated "solid," even though she had received the Career Achievement Award for her advanced performance.  Sales representatives received ratings of "needs improvement," "solid," "advanced," or "exceptional." Had Mrs. Earl received the "advanced" rating that she clearly deserved, she would have been entitled to an additional $30,000 in commission.  However, because she was rated "solid," Mrs. Earl was denied the $30,000 commission.

346.   In 2003, Mrs. Earl was ranked the number one sales representative in the country. However, Regional Manager John Hawkins selected a lower ranking male employee as the "exceptional" performer.  As a result, this male employee received an additional $10,000 that Mrs. Earl was denied.

### Pregnancy Discrimination

347.   In approximately 1997, Mrs. Earl became pregnant.  Before her pregnancy, Mrs. Earl served the role of Field Sales Trainer.  As a Field Sales Trainer, she had greater responsibilities, including training other sales representatives, and was supposedly being groomed for management positions.  Even though the Field Sales Trainer role was supposed to be a two year rotation, Mrs. Earl was removed from the role after only one year when she became pregnant.  Mrs. Earl was prematurely removed from the role because she was going to be taking maternity leave.

348.   During Mrs. Earl's pregnancy, Vice President Harrington rode along with her. While Mrs. Earl was ready to begin working at approximately 7:30 a.m., Vice President Harrington did not arrive until approximately 8:30 a.m., at which time they began the day. During the ride along, Mrs. Earl mentioned to Vice President Harrington that she was pregnant. Harrington ended the ride along in the early afternoon, telling Mrs. Earl that he had to end the day early in order to catch a flight.  However, after the ride along, Vice President Harrington wrote a memo to management stating that he was trying to analyze why employees were not able to make five calls per day and that, after riding along with a sales representative, he determined it was because employees were starting their days late and ending early.  Because other managers inquired as to which sales representative was being referenced in Vice President Harrington's memo, Mrs. Earl's reputation was unfairly tarnished.

## Differential Treatment and Hostile Work Environment

349.    After Dan Cullman received the Acute Care Associate Director promotion that Mrs. Earl was denied, he favored male employees and subjected female employees to harsher treatment. For example, Cullman harassed Mrs. Earl for being approximately one minute late to a meeting, even though he had shown up one and a half hours late to a meeting on another occasion.

350.    Further, because of his lack of relevant experience, Cullman was unable to competently perform his job as Acute Care Associate Director. Upon information and belief, several female employees attempted to get Cullman removed from his position due to his incompetence.

351.    In March 2005, a female candidate for a position at Novartis confided in Mrs. Earl that the male manager with whom she had interviewed inappropriately interrogated her about her personal life, for example, asking her when she planned on having children.

352.    Mrs. Earl contacted Human Resources on several occasions to complain about the discrimination she was experiencing. After the first time she contacted Human Resources, in approximately 2002, it became common knowledge among her coworkers and managers that she had complained. Mrs. Earl believed that she was singled out by Regional Manager Hawkins as a result of her complaint to Human Resources. Regional Manager Hawkins made threatening comments, such as telling Mrs. Earl that she could go to Human Resources, but that Human Resources works for him.

353.    In addition, many of Mrs. Earl's female coworkers confided in her that Regional Manager Hawkins frequently touched them in a way that made them uncomfortable, including touching their hair and putting his arm around them.

### Q.    JAMIE HOLLAND

#### Background

354.    **Plaintiff Jamie Holland** ("Ms. Holland") was hired by Novartis in April 2000 as a Senior Sales Consultant in Baltimore, Maryland and Washington, D.C.  In September 2001, Ms. Holland was transferred to Wilmington, Delaware to work as an Executive Sales Consultant and she continued to hold that position until her resignation in August 2004.  Ms. Holland filed an EEO Charge in approximately June 2005, in which she complained about the gender discrimination she experienced at Novartis.

#### Denials of Promotion

355.    In May 2004, Ms. Holland was denied entry into the Management Development Workshop ("MD1"), which is necessary to advance into management positions at Novartis.  Ms. Holland was told that she could not enter the June 2004 MD1 training course because of her current sales numbers.  However, her enrollment in the training had previously been based on sales numbers from 2003, during which Ms. Holland was in the top 50% of the company and received a "superior" performance rating.

356.    Upon information and belief, male sales representatives who had lower sales numbers than Ms. Holland and who did not consistently perform within the top 50% of the company were admitted into management development training.  For example, Nick Fineman, whose sales numbers were in the bottom 20% of Novartis in 2004, was allowed entry into the Management Development Program ("MDP").

357.    At a December 2003 training session in Tampa, Florida, a female sales representative, Becky Maher ("Maher"), who was attempting to complete the MDP, told Ms. Holland that she would likely not be admitted into the MDP because she had young children.

Maher, who also had young children, was experiencing extreme resistance from her managers about completing the MDP.

358.    In June 2004, Ms. Holland applied for a specialty sales position in Oncology, but her application was denied.    However, Adrian Hawkins, a male employee with a similar performance record to Ms. Holland, was promoted to an Oncology specialty sales position in 2004.

### Sexual Harassment

359.    Ms. Holland was routinely subjected to offensive, sexually explicit comments about women, including female employees in the district, by District Manager Brian Aiello ("Aiello").    For example, at a meeting, District Manager Aiello made sexual jokes and referenced drug use.

360.    In January 2003, District Manager Aiello discussed a recently hired female sales representative and described her physical attributes as a factor which helped in her hiring for the job at Novartis.

361.    Also, on numerous occasions, District Manager Aiello showed Ms. Holland sexually offensive material on his computer.

362.    In August 2004, Ms. Holland submitted a complaint about District Manager Aiello's conduct to Human Resources.    However, the Senior Care Human Resources Representative told Ms. Holland that no disciplinary action would be taken against District Manager Aiello unless he was physically threatening or had physically harmed Ms. Holland. Because of these requirements, Ms. Holland was unable to pursue her complaint.

### Hostile Work Environment

363.   District Manager Aiello routinely treated Ms. Holland in a degrading manner, including making hurtful comments about her weight in front of other employees.  On one occasion, District Manager Aiello joked that Ms. Holland looked as though she were nine months pregnant, even though he knew that she was not pregnant.

364.   When District Manager Aiello became angry with Ms. Holland, he made threatening comments to imply that she could lose her job with Novartis.  District Manager Aiello also made comments to Ms. Holland's customers, including doctors and their staff, about firing Ms. Holland

365.   Additionally, District Manager Aiello often bragged about terminating all of the minority employees on his sales team during his two years as the Area Sales Manager.  Moreover, he openly discussed the reasons why he fired them, for example, commenting on their stupidity.  After firing one African American female employee, District Manager Aiello told other sales representatives that the African American female employee was disgusting and black and that "her car was full of chicken bones."

366.   District Manager Aiello also complained about receiving applications from "diversity" candidates and often refused to grant them interviews.

### R.   JOAN DURKIN

### Background

367.   **Plaintiff Joan Durkin** ("Ms. Durkin") was hired by Novartis in approximately 1997 as a sales representative in North Illinois.  Ms. Durkin subsequently became a Sales Consultant, a Senior Sales Consultant, an in-house Trainer and worked in Executive Sales.  She resigned from Novartis in February 2005.  Ms. Durkin filed an EEO Charge in approximately

experienced under Reed.   She also showed Human Resources Head Broketzky-Geiger her favorable performance review, high ratings and bonuses she had received at Novartis.   Human Resources Head Broketzky-Geiger told Ms. Martin that she had a "sad story," but proceeded to inform her that he could not help her.   Further, Human Resources Head Broketzky-Geiger told Ms. Martin that it would be unwise for her to return to her job after the events that had transpired.

**COUNT I**

**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
42 U.S.C. § 2000e-5(f),** *et seq.***, AS AMENDED**

**GENDER DISCRIMINATION
(Against the Corporate Defendants)**

449.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

450.    Novartis has discriminated against the Class Representatives and all members of the proposed class by treating them differently from and less preferably than similarly situated male employees and by subjecting them to discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory performance evaluations, discriminatory subjection to disciplinary procedures, disparate pay, disparate terms and conditions of employment, harassment, hostile work environments and other forms of discrimination in violation of Title VII.

451.    Novartis' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Class Representatives and the members of the proposed class.

452.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

453.    Novartis' policies, practices and/or procedures have produced a disparate impact against the Class Representatives and the class members with respect to their terms and conditions of employment.

454.    By reason of the continuous nature of Novartis' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

455.    By reason of the discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

### COUNT II
### VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000(e) *et seq.*

### SEXUAL HARASSMENT
### (Against the Corporate Defendants)

456.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

457.    Novartis has discriminated against Class Representatives and all the members of the proposed class by permitting an ongoing, severe and pervasive pattern and practice of sexual harassment against a class of female employees by creating and maintaining a sexually hostile work environment, in violation of Title VII.

458.    Novartis' sexual harassment altered the Class Representatives' and class members' conditions of employment by creating an abusive working environment for them.

459.    Novartis' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Class Representatives and the members of the proposed class.

460.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

461.    By reason of the continuous nature of Novartis' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

462.    By reason of the sexual harassment suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

<u>**COUNT III**</u>
**VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e(k)** *et seq.*

**PREGNANCY DISCRIMINATION**
**(Against the Corporate Defendants)**

463.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

464.    Novartis discriminated against the Class Representatives and the members of the proposed class because of or on the basis of pregnancy, childbirth, or related medical conditions.

103

465. The Class Representatives and the members of the proposed class were not treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

466. Novartis' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Class Representatives and the members of the proposed class.

467. As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

468. By reason of the continuous nature of Novartis' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

469. By reason of the pregnancy discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to legal and equitable remedies available under Title VII.

**COUNT IV**
**VIOLATIONS OF TITLE VII, 28 U.S.C. § 2000e(k)**

**RETALIATION**
**(Against the Corporate Defendants)**

470. Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

471.    Novartis retaliated against the Class Representatives and the members of the proposed class because they insisted upon a work environment free of sexual harassment, gender discrimination and pregnancy discrimination and also because they complained about sexual harassment, gender discrimination and pregnancy discrimination.

472.    Novartis retaliated against the Class Representatives and the members of the proposed class by subjecting them to adverse employment actions, including but not limited to, denying them promotions for which they were qualified and subjecting them to disparate terms and conditions of employment, gender discrimination, sexual harassment, a hostile work environment and/or other forms of discrimination in violation of Title VII.

473.    Novartis' actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to the Class Representatives and the members of the proposed class.

474.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

475.    By reason of the retaliation suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

<u>COUNT V</u>
**VIOLATIONS OF N.Y. EXEC. LAW § 296**

**GENDER DISCRIMINATION**
**(Against the Corporate Defendants)**

476.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

477.    Because of their gender, Novartis discriminated against the Class Representatives and the members of the proposed class in compensation or in the terms, conditions or privileges of their employment, in violation of New York Executive Law § 296.

478.    Because of their gender, Novartis also denied or withheld from the Class Representatives and the members of the proposed class their right to be admitted to or participate in an on-the-job training program, executive training program and/or management training program in violation of New York Executive Law § 296.

479.    Novartis further discriminated against the Class Representatives and the members of the proposed class in their pursuit of such programs and discriminated against them in the terms, conditions or privileges of such programs because of gender, in violation of New York Executive Law § 296.

480.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

481.    By reason of the continuous nature of Novartis' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class

106

Representatives and the members of the proposed class are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

482.    By reason of the gender discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under New York Executive Law § 296.

**COUNT VI**
**VIOLATIONS OF N.Y. EXEC. LAW § 296**

**SEXUAL HARASSMENT**
**(Against the Corporate Defendants)**

483.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

484.    Novartis discriminated against the Class Representatives and the members of the proposed class by permitting an ongoing and pervasive pattern and practice of sexual harassment against Plaintiff by creating and maintaining a sexually hostile work environment, in violation of New York Executive Law § 296.

485.    Novartis' sexual harassment altered the Class Representatives' and class members' conditions of employment by creating an abusive working environment for them.

486.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

487.    By reason of the sexual harassment suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under New York Executive Law § 296.

## COUNT VII
## VIOLATIONS OF N.Y. EXEC. LAW § 296

### RETALIATION
#### (Against the Corporate Defendants)

488.    Class Representatives re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

489.    In violation of New York Executive Law § 296, Novartis discharged, expelled and otherwise discriminated against the Class Representatives and the members of the proposed class because they opposed practices forbidden by New York Executive Law § 296 or because they filed a complaint, testified or assisted in a proceeding under New York Executive Law § 296.

490.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

491.    By reason of the sexual harassment suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under New York Executive Law § 296.

### COUNT VIII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Against the Corporate Defendants)

492.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

493.    While employed at Novartis, the Class Representatives and the members of the proposed class suffered intentional infliction of emotional distress at the hands of Defendants.

108

494.    Novartis' actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

495.    Novartis' actions can be regarded as atrocious and utterly intolerable in a civilized community.

496.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

497.    By reason of the continuous nature of Novartis' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

498.    By reason of the gender discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to legal and equitable remedies.

**COUNT IX**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(Against the Corporate Defendants)**

499.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

500.    Novartis' negligence caused the Class Representatives and the members of the proposed class to suffer emotional distress.

501.    Novartis owed a duty to the Class Representatives and the members of the proposed class.

502.    Novartis breached this duty and either unreasonably endangered the physical safety of the Class Representatives and the members of the proposed class, or caused the Class Representatives and the members of the proposed class to fear for their own safety.

503.    Novartis' actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

504.    Novartis' actions can be regarded as atrocious and utterly intolerable in a civilized community.

505.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

506.    By reason of the continuous nature of Novartis' discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

507.    By reason of the gender discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to legal and equitable remedies.

## COUNT X
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION

### (Against the Corporate Defendants)

508.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

509.    As a result of direct negligence on the part of Novartis, the Class Representatives and the members of the proposed class experienced emotional distress.

510.    Novartis placed its employees in a position to cause foreseeable harm, harm which the Class Representatives and the members of the proposed class most probably would have been spared had Novartis taken reasonable care in making its decision concerning the hiring and retention of the employee.

511.    Novartis knew, or should have known, of its employees' propensity for the sort of conduct which caused the injuries of the Class Representatives and the members of the proposed class.

512.    As a direct and proximate result of Novartis' aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

513.    By reason of the gender discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to legal and equitable remedies.

## COUNT XI
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-5(f), *et seq.*, AS AMENDED

### GENDER DISCRIMINATION
### (Against Thomas Ebeling)

514.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

515.    In his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling has discriminated against the Class Representatives and all members of the proposed class by treating them differently from and less preferably than similarly situated male employees. Ebeling has aided and abetted discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory performance evaluations, discriminatory subjection to disciplinary procedures, disparate pay, disparate terms and conditions of employment, harassment, hostile work environments and other forms of discrimination in violation of Title VII.

516.    In his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling's implementation of policies, practices and/or procedures has produced a disparate impact against the Class Representatives and the class members with respect to their terms and conditions of employment.

517.    As a direct and proximate result of Ebeling's aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

112

518.    By reason of the continuous nature of Ebeling's discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

519.    By reason of the discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

## COUNT XII
## VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000(e) *et seq.*

### SEXUAL HARASSMENT
### (Against Thomas Ebeling)

520.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

521.    In his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling has discriminated against Class Representatives and all the members of the proposed class by permitting an ongoing, severe and pervasive pattern and practice of sexual harassment against a class of female employees and by permitting a sexually hostile work environment, in violation of Title VII.

522.    As a direct and proximate result of Ebeling's aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

113

523.    By reason of the continuous nature of Ebeling's discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

524.    By reason of the sexual harassment suffered at Novartis, Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

**COUNT XIII**
**VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e(k)** *et seq.*

**PREGNANCY DISCRIMINATION**
**(Against Thomas Ebeling)**

525.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

526.    In his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling discriminated against the Class Representatives and the members of the proposed class because of or on the basis of pregnancy, childbirth, or related medical conditions.

527.    Ebeling knew or should have known that the Corporate Defendants were discriminating against pregnant female employees; denying such employees pay, promotions and bonuses; and retaliating against Novartis' pregnant employees.    Ebeling did nothing and/or encouraged the oppressive conduct to continue by taking no action.

528.   As a direct and proximate result of Ebeling's aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

529.   By reason of the pregnancy discrimination suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to legal and equitable remedies available under Title VII.

<u>COUNT XIV</u>
**VIOLATIONS OF 28 U.S.C. § 2000e(k)**

**RETALIATION**
**(Against Thomas Ebeling)**

530.   Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

531.   In his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling aided and abetted the corporate defendants' retaliation against the Class Representatives and the members of the proposed class because they insisted upon a work environment free of sexual harassment, gender discrimination and pregnancy discrimination and also because they complained about sexual harassment, gender discrimination and pregnancy discrimination.

532.   In his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling permitted and/or encouraged retaliation against the Class Representatives and the members of the proposed class by subjecting them to adverse employment actions, including but not limited to, denying them promotions for which they were

qualified and subjecting them to disparate terms and conditions of employment, gender discrimination, sexual harassment, a hostile work environment, and/or other forms of discrimination in violation of Title VII.

533.    As a direct and proximate result of Ebeling's aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

534.    By reason of the retaliation suffered at Novartis, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

**COUNT XV**
**VIOLATIONS OF N.Y. EXEC. LAW § 296, SUBDIVISION 6**

**GENDER DISCRIMINATION**
**(Aiding and Abetting Liability Against Thomas Ebeling)**

535.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

536.    Because of their sex, Novartis discriminated against the Class Representatives and the members of the proposed class in compensation or in the terms, conditions or privileges of their employment, in violation of New York Executive Law § 296.

537.    Because of their sex, Novartis also denied or withheld from the Class Representatives and the members of the proposed class their right to be admitted to or participate in an on-the-job training program or executive training program, in violation of New York Executive Law § 296.

538.    Novartis further discriminated against the Class Representatives and the members of the proposed class in their pursuit of such programs and discriminated against them in the terms, conditions or privileges of such programs because of sex, in violation of New York Executive Law § 296.

539.    As previously described, in his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling possesses knowledge, control and decision-making authority regarding the employment practices of Corporate Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation. Ebeling controls and influences whether the two Corporate Defendants engage in gender-discrimination, sexual harassment and retaliation against their female employees.

540.    Far from preventing or rectifying gender discrimination committed by the U.S. Corporate defendants, Ebeling aided, abetted and encouraged such discriminatory conduct.

541.    As a direct and proximate result of Ebeling's aiding and abetting conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

542.    By reason of the continuous nature of Ebeling's discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and the members of the proposed class are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

543.    By reason of the gender discrimination which Ebeling aided and abetted, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under New York Executive Law § 296.

## COUNT XVI
### VIOLATIONS OF N.Y. EXEC. LAW § 296, SUBDIVISION 6

### SEXUAL HARASSMENT
#### (Aiding and Abetting Liability Against Thomas Ebeling)

544.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

545.    Novartis discriminated against the Class Representatives and the members of the proposed class by permitting an ongoing and pervasive pattern and practice of sexual harassment against Plaintiff by creating and maintaining a sexually hostile work environment, in violation of New York Executive Law § 296.

546.    Novartis' sexual harassment altered the Class Representatives' and class members' conditions of employment by creating an abusive working environment for them.

547.    As previously described, in his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling possesses knowledge, control and decision-making authority regarding the employment practices of Corporate Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation. Ebeling controls and influences whether the two Corporate Defendants engage in gender-discrimination, sexual harassment and retaliation against their female employees.

548.    As a direct and proximate result of Ebeling's aiding and abetting aforementioned conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

549.    By reason of the sexual harassment suffered at Novartis, which Ebeling aided and abetted, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under New York Executive Law § 296.

## COUNT XVII
## VIOLATIONS OF N.Y. EXEC. LAW § 296, SUBDIVISION 6

### RETALIATION
### (Aiding and Abetting Liability Against Thomas Ebeling)

550.    Class Representatives re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

551.    In violation of New York Executive Law § 296, Novartis discharged, expelled and otherwise discriminated against the Class Representatives and the members of the proposed class because they opposed practices forbidden by New York Executive Law § 296 or because they filed a complaint, testified or assisted in a proceeding under New York Executive Law § 296.

552.    As previously described, in his capacities as Head of worldwide Pharmaceuticals Division, member of the Executive Committee of Novartis and member of the Board of Directors of Novartis Pharmaceuticals Corporation, Ebeling possesses knowledge, control and decision-making authority regarding the employment practices of Corporate Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation. Ebeling controls and influences whether the two Corporate Defendants engage in gender-discrimination, sexual harassment and retaliation against their female employees.

119

553.    Ebeling was aware of, or should have known that the U.S. corporate defendants were retaliating against women employees who were exercising their rights and complaining about gender discrimination at Novartis' United States facilities.

554.    As a direct and proximate result of Ebeling's aiding and abetting conduct, the Class Representatives and the members of the proposed class were damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

555.    By reason of the sexual harassment suffered at Novartis which Ebeling aided and abetted, the Class Representatives and the members of the proposed class are entitled to all legal and equitable remedies available under New York Executive Law § 296.

## PRAYER FOR RELIEF

WHEREFORE, the Class Representatives, on behalf of themselves and the members of the class whom they seek to represent, request the following relief:

A.    Certification of the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23 (a), (b)(2) and/or (b)(3), on behalf of the proposed plaintiff class, and designation of the proposed Class Representatives as representatives of this class and their counsel of record as class counsel;

B.    Declaratory judgment that Novartis' employment policies, practices and/or procedures challenged herein are illegal and in violation of Title VII;

C.    A permanent injunction against Novartis and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, and gender discrimination by the Defendants as set forth herein;

D.      An Order requiring Novartis to initiate and implement programs that (i) will provide equal employment opportunities for female employees; (ii) will remedy the effects of the Defendants' past and present unlawful employment policies, practices and/or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described above;

E.      An Order requiring Novartis to initiate and implement systems of assigning, training, transferring, compensating and promoting female employees in a non-discriminatory manner;

F.      An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (D) through (E) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (D) through (E) above;

G.      An Order placing or restoring the Class Representatives and the class members into those jobs they would now be occupying but for Novartis' discriminatory policies, practices and/or procedures;

H.      An Order directing Novartis to adjust the wage rates and benefits for the Class Representatives and the class members to the level that they would be enjoying but for the Defendants' discriminatory policies, practices and/or procedures;

I.      An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Class Representatives and the class members to be determined at trial;

121

J.    Any other appropriate equitable relief to which the Class Representatives and proposed class members are entitled;

K.    An award of compensatory, nominal and punitive damages to Class Representatives and the class in an amount not less than 200 million dollars;

L.    An award of litigation costs and expenses, including reasonable attorneys' fees, to the Class Representatives and class members;

M.    Pre-judgment interest;

N.    Such other and further relief as the Court may deem just and proper; and

O.    Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices, policies and/or procedures complained of herein and are determined to be in full compliance with the law.

## DEMAND FOR JURY

Plaintiffs demand trial by jury of all issues triable of right to a jury.


Respectfully submitted this 2nd day of June, 2005


_____

Jeremy Heisler, (JH-0145)
Steven Wittels, (SLW-8110)
**SANFORD, WITTELS & HEISLER, LLP**
545 Fifth Avenue
Suite 960
New York, NY 10017
Telephone: (646) 456-5695
Facsimile: (646) 723-2948

David Sanford, D.C. Bar No. 457933
Lisa Goldblatt, D.C. Bar No. 456187
**SANFORD, WITTELS & HEISLER, LLP**
2121 K Street, N.W.
Suite 700
Washington, D.C. 20037
Telephone: (202) 942-9124
Facsimile: (202) 628-8189

Grant Morris, D.C. Bar No. 926253
**LAW OFFICES OF GRANT E. MORRIS**
2121 K Street, N.W.
Suite 700
Washington, D.C. 20037
Telephone: (202) 661-3510
Facsimile: (202) 628-8189

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been served on June 2, 2005 via overnight mail in a prepaid envelope, correctly addressed to the following:

Richard H. Schnadig, Esq.
Jonathan A. Wexler, Esq.
**VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.**
222 North LaSalle St.
Chicago, IL 60601
(312) 609-7500

*Counsel for Defendant*

_____
David Sanford