UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

AMY VELEZ, PENNI ZELINKOFF, MINEL
HIDER TOBERTGA, MICHELLE WILLIAMS,
JENNIFER WAXMAN-RECHT, KAREN
LIGGINS, LORI HORTON, HOLLY WATERS,
WENDY PINSON, ROBERTA VONLINTEL,
ASHLEY NARMOUR, CATHERINE WHITE,
KELLY CORBETT, SUE EARL, JAMIE
HOLLAND, JOAN DURKIN, SIMONA LOPES,
MARYANNE JACOBY and MARTA DEYNE,

Individually and on Behalf of Others Similarly
Situated,

                Plaintiffs,

        -against-

NOVARTIS CORPORATION, NOVARTIS
PHARMACEUTICALS CORPORATION, and
THOMAS EBELING,

                Defendants.

------------------------------------------------------------

Case No. 04 Civ. 09194 (GEL)

## NOVARTIS PHARMACEUTICALS CORPORATION'S ANSWER TO PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT

## I.     NATURE OF THIS ACTION

### ALLEGATION NO. 1:

    Nineteen (19) women who work or have worked for Novartis in New York and sixteen (16) other states, as well as Washington, D.C., bring this action against Corporate Defendants Novartis Corporation and Novartis Pharmaceuticals Corporation (jointly "Novartis" or "Corporate Defendants") and against Defendant Thomas Ebeling ("Ebeling") (collectively "Defendants") to redress gender discrimination in employment. Specifically, Amy Velez, Penni Zelinkoff, Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Karen Liggins, Lori Horton, Holly Waters, Wendy Pinson, Roberta VonLintel, Ashley Narmour, Catherine White, Kelly Corbett, Sue Earl, Jamie Holland, Joan Durkin, Simona Lopes, Maryanne Jacoby and Marta Deyne, the Class Representatives ("Class Representatives"), all of whom are present or former employees of Novartis, bring this amended class action against Novartis on behalf of

themselves and all other female employees of Novartis who are similarly situated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended ("Title VII").

**ANSWER:**

For purposes of its responses, NPC interprets Plaintiffs' reference to "Novartis" in all allegations in this Amended Complaint as referring to NPC, and answers all allegations only on behalf of NPC. NPC admits that seventeen of its current and/or former employees have filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), et seq., as amended ("Title VII"), and seek to represent a class of female employees. NPC denies that it employed Ashley Narmour or Sue Earl. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 2:**

The Class Representatives have worked and/or continue to work for Novartis throughout the United States in sixteen (16) states: Alabama, Arkansas, California, Connecticut, Delaware, Illinois, Kansas, Maryland, Missouri, New Jersey, New York, Oregon, Pennsylvania, Tennessee, Virginia, Washington, and in Washington, D.C. Three Plaintiffs, Sue Earl, Simona Lopes and Marta Deyne, worked and/or continue to work for Novartis in New York.

**ANSWER:**

NPC admits that the plaintiffs have worked and/or continue to work in Alabama, California, Connecticut, Delaware, Illinois, Kansas, Maryland, Missouri, New Jersey, New York, Oregon, Tennessee, and Virginia, Washington, and in Washington, D.C. NPC denies that it employed Sue Earl. NPC admits that Simona Lopes and Marta Deyne worked in New York. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 3:**

The Class Representatives seek to represent female employees of Novartis who have been subjected to one or more aspects of the systemic gender discrimination described in this Complaint, including, but not limited to: (a) discriminatory policies, practices and/or procedures in selection, promotion and advancement; (b) disparate pay; (c) differential treatment; (d) gender hostility; (e) hostile work environment; (f) pregnancy discrimination; (g) sexual harassment; and

-2-

**ALLEGATION NO. 7:**

The Southern District of New York is the most logical forum in which to litigate the claims of the Class Representatives and the proposed class in this case. Novartis Corporation is headquartered in New York, New York and incorporated in the State of New York, with Registered Agents in New York. Additionally, Novartis Pharmaceuticals Corporation has both a physical presence and a Registered Agent in New York. Further, Class Representative Simona Lopes ("Lopes") resides in New York and Lopes and other Class Representatives worked for Novartis in New York. Finally, the Class Representatives and potential class members reside in all areas of the United States in which Novartis conducts business.

**ANSWER:**

NPC denies that the Southern District of New York is the most logical forum in which to litigate. NPC denies that any of the purported class representatives, other than Lopes reside in New York. NPC denies that the Class Representatives and potential class members reside in all areas of the United States in which NPC conducts business. NPC lacks knowledge and information sufficient to form a belief as to where Lopes currently resides. NPC admits that Lopes and Deyne worked in New York. NPC lacks knowledge and information sufficient to form a belief as to where Novartis Corp. has registered agents. NPC admits the remaining allegations contained in this Paragraph.

**III.   PROCEDURAL HISTORY**

**ALLEGATION NO. 8:**

Class Representative Amy Velez timely filed a Charge of Discrimination with the New Jersey Division on Civil Rights and the Equal Employment Opportunity Commission ("EEOC") on or about July 15, 2003. Ms. Velez received her Notice of Right to Sue on August 24, 2004, and on November 19, 2004, timely filed suit within ninety (90) days of receipt of her Notice of Right to Sue. Class Representatives Penni Zelinkoff, Karen Liggins, Lori Horton, Holly Waters and Roberta VonLintel also filed Charges with the EEOC and have each received Notices of Right to Sue. Class Representatives Minel Hider Tobertga, Michelle Williams, Jennifer Waxman-Recht, Wendy Pinson, Ashley Narmour, Catherine White, Kelly Corbett, Sue Earl, Jamie Holland, Joan Durkin, Simona Lopes and Marta Deyne have filed charges of gender discrimination with the EEOC and are in the process of perfecting their Notices of Right to Sue.

-4-

**ANSWER:**

NPC denies that Velez filed a timely Charge of Discrimination with the New Jersey Division on Civil Rights and the Equal Employment Opportunity Commission ("EEOC") on July 15, 2003. NPC lacks knowledge and information regarding the date Velez received a Notice of Right to Sue. NPC admits Velez filed suit on November 19, 2004 in the United States District Court for the Southern District of New York and on November 3, 2004 in the United States District Court for the District of Columbia. NPC admits that Lori Horton, Karen Liggins, Wendy Pinson, Minel Hider Tobertga, Holly Waters, Roberta VonLintel, Jennifer Waxman-Recht, Michelle Williams, Penni Zelinkoff, Ashley Narmour, Catherine White, Kelly Corbett, Sue Earl, Jamie Holland, Joan Durkin, Simona Lopes and Marta Deyne have filed Charges of Discrimination with the EEOC alleging gender discrimination. NPC denies that it employed Narmour or Earl. NPC lacks knowledge and information sufficient to form a belief as to whether the Plaintiffs are in the process of perfecting their Notices of Right to Sue.

**ALLEGATION NO. 9:**

The Class Representatives are relying on their own EEO charges and/or those of other Class Representatives.

**ANSWER:**

NPC denies the allegations contained in this Paragraph.

**IV.    PARTIES**

**A.    Plaintiffs**

**ALLEGATION NO. 10:**

Plaintiff Amy Velez is a female citizen of the United States and a resident of Laurel in the State of Maryland. Ms. Velez was employed by Novartis from approximately January 1997 to April 2004 in Novartis' Washington, D.C. sales district. Throughout that time, Ms. Velez worked as a sales representative, sales consultant, and senior sales consultant, a position she held until her constructive discharge from Novartis in April 2004.

**ALLEGATION NO. 22:**

Plaintiff Kelly Corbett is a female citizen of the United States and a resident of Fairfax in the State of California. Ms. Corbett was employed by Novartis from approximately May 2002 to March 2005 as a district manager in California.

**ANSWER:**

NPC lacks knowledge and information sufficient to form a belief as to Corbett's current residence. NPC admits that it employed Corbett as a district manager in California from May 2002 to March 2005. NPC denies the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 23:**

Plaintiff Sue Earl is a female citizen of the United States and a resident of Sparta in the State of New Jersey. Mrs. Earl was employed by Novartis in New Jersey, New York and Pennsylvania from approximately July 1991 to March 2005. During that time, Mrs. Earl held the positions of Long-term Care sales representative and Adult Care accounts manager, and served as a field sales trainer and a member of the Market Advisory Board.

**ANSWER:**

NPC denies that it employed Earl. NPC lacks knowledge and information sufficient to form a belief as to the remaining allegations contained in this Paragraph.

**ALLEGATION NO. 24:**

Plaintiff Jamie Holland is a female citizen of the United States and a resident of Salisbury in the State of Maryland. Ms. Holland was employed by Novartis in Baltimore, Maryland, Washington, D.C. and Delaware from approximately April 2000 to August 2004. During that time, Ms. Holland held the positions of senior sales consultant and executive sales consultant.

**ANSWER:**

NPC lacks knowledge and information sufficient to form a belief as to Holland's current residence. NPC admits it employed Holland as a senior sales consultant and executive sales consultant in Baltimore, Maryland, Washington, D.C. and Delaware from approximately April 2000 to August 2004. NPC denies the remaining allegations contained in this Paragraph.

N.    SUE EARL

### Background

**ALLEGATION NO. 293:**

Plaintiff Sue Earl ("Mrs. Earl") was hired by Novartis in approximately July 1991 as a Long-term Care sales representative. She subsequently became an Acute Care Account Manager and also served in the roles of Field Sales Trainer and member of the Market Advisory Board. Mrs. Earl worked for Novartis in New York, New Jersey and Pennsylvania. She was constructively discharged from Novartis in March 2005. Mrs. Earl filed an EEO Charge in approximately May 2005, in which she complained about the gender discrimination she experienced at Novartis.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### Denials of Promotion

**ALLEGATION NO. 294:**

In approximately 2002, while Mrs. Earl was working in Acute Care, Novartis created an Acute Care "Associate Director" position, in which Mrs. Earl was extremely interested. Her manager, Ken Notaro ("Notaro"), considered Mrs. Earl his leading candidate for the position. However, when Mrs. Earl interviewed with Eastern Regional Account Manager John Hawkins ("Hawkins"), he told her that he was hesitant to promote her because she was in the Pennsylvania district, which was not performing well. Mrs. Earl explained that she had been transferred to the Pennsylvania district only several months before the interview, having previously worked very successfully in the high-performing New York district. Regional Manager Hawkins nonetheless continued to object to Mrs. Earl's promotion.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 295:**

That evening, Regional Manager Hawkins left Mrs. Earl a voicemail message stating that they had reached a decision and he had good news to share with her. When Mrs. Earl spoke with Regional Manager Hawkins, however, he informed her that a male employee, Dan Cullman ("Cullman"), received the promotion. Cullman worked in Corporate Accounts and did not have relevant experience for the position. When Mrs. Earl pointed out that Cullman lacked Acute

-98-

Care knowledge, as Regional Manager Hawkins was well aware, Regional Manager Hawkins told her that he was counting on her to train Mr. Cullman in his new position.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 296:**

At a meeting shortly afterwards, numerous other employees joked that Mrs. Earl did not receive the promotion because she did not "have a penis." Following this denial of promotion in 2002, Mrs. Earl continued to excel in her new district and, in fact, was ranked the top sales representative in the country in 2003.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 297:**

Mrs. Earl complained to Human Resources about being denied the Acute Care Associate Director promotion, but to her knowledge, Human Resources took no action in response to her complaint.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 298:**

In addition, when Mrs. Earl expressed her interest in a position in the Home Care division to Regional Manager Hawkins, he pointed out that the position required a great deal of travel and commented that the travel would not suit Mrs. Earl well because she had four children. Upon information and belief, managers did not prevent male employees from advancing their careers with Novartis because they had children.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

-99-

**Disparate Pay**

**ALLEGATION NO. 299:**

In 2002, Mrs. Earl was one of approximately four employees who received the Career Achievement Award for being an "advanced" performer who had ten or more years with the company. At the meeting during which Mrs. Earl collected this award, Vice President Rob Harrington ("Harrington") asked her whether she noticed that she was the only female on stage.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to

form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 300:**

Further, at the end of 2002, Mrs. Earl's performance was rated "solid," even though she had received the Career Achievement Award for her advanced performance. Sales representatives received ratings of "needs improvement," "solid," "advanced," or "exceptional." Had Mrs. Earl received the "advanced" rating that she clearly deserved, she would have been entitled to an additional $30,000 in commission. However, because she was rated "solid," Mrs. Earl was denied the $30,000 commission.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to

form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 301:**

In 2003, Mrs. Earl was ranked the number one sales representative in the country. However, Regional Manager John Hawkins selected a lower ranking male employee as the "exceptional" performer. As a result, this male employee received an additional $10,000 that Mrs. Earl was denied.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to

form a belief as to the allegations contained in this Paragraph.

**Pregnancy Discrimination**

**ALLEGATION NO. 302:**

In approximately 1997, Mrs. Earl became pregnant. Before her pregnancy, Mrs. Earl served the role of Field Sales Trainer. As a Field Sales Trainer, she had greater responsibilities, including training other sales representatives, and was supposedly being groomed for management positions. Even though the Field Sales Trainer role was supposed to be a two year rotation, Mrs. Earl was removed from the role after only one year when she became pregnant. Mrs. Earl was prematurely removed from the role because she was going to be taking maternity leave.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 303:**

During Mrs. Earl's pregnancy, Vice President Harrington rode along with her. While Mrs. Earl was ready to begin working at approximately 7:30 a.m., Vice President Harrington did not arrive until approximately 8:30 a.m., at which time they began the day. During the ride along, Mrs. Earl mentioned to Vice President Harrington that she was pregnant. Harrington ended the ride along in the early afternoon, telling Mrs. Earl that he had to end the day early in order to catch a flight. However, after the ride along, Vice President Harrington wrote a memo to management stating that he was trying to analyze why employees were not able to make five calls per day and that, after riding along with a sales representative, he determined it was because employees were starting their days late and ending early. Because other managers inquired as to which sales representative was being referenced in Vice President Harrington's memo, Mrs. Earl's reputation was unfairly tarnished.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**Differential Treatment and Hostile Work Environment**

**ALLEGATION NO. 304:**

After Dan Cullman received the Acute Care Associate Director promotion that Mrs. Earl was denied, he favored male employees and subjected female employees to harsher treatment. For example, Cullman harassed Mrs. Earl for being approximately one minute late to a meeting, even though he had shown up one and a half hours late to a meeting on another occasion.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to

form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 305:**

Further, because of his lack of relevant experience, Cullman was unable to competently perform his job as Acute Care Associate Director. Upon information and belief, several female employees attempted to get Cullman removed from his position due to his incompetence.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to

form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 306:**

In March 2005, a female candidate for a position at Novartis confided in Mrs. Earl that the male manager with whom she had interviewed inappropriately interrogated her about her personal life, for example, asking her when she planned on having children.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to

form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 307:**

Mrs. Earl contacted Human Resources on several occasions to complain about the discrimination she was experiencing. After the first time she contacted Human Resources, in approximately 2002, it became common knowledge among her coworkers and managers that she had complained. Mrs. Earl believed that she was singled out by Regional Manager Hawkins as a result of her complaint to Human Resources. Regional Manager Hawkins made threatening comments, such as telling Mrs. Earl that she could go to Human Resources, but that Human Resources works for him.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

**ALLEGATION NO. 308:**

In addition, many of Mrs. Earl's female coworkers confided in her that Regional Manager Hawkins frequently touched them in a way that made them uncomfortable, including touching their hair and putting his arm around them.

**ANSWER:**

NPC denies that it employed Earl and thus lacks knowledge and information sufficient to form a belief as to the allegations contained in this Paragraph.

### O.    JAMIE HOLLAND

#### Background

**ALLEGATION NO. 309:**

Plaintiff Jamie Holland ("Ms. Holland") was hired by Novartis in April 2000 as a Senior Sales Consultant in Baltimore, Maryland and Washington, D.C.    In September 2001, Ms. Holland was transferred to Wilmington, Delaware to work as an Executive Sales Consultant and she continued to hold that position until her resignation in August 2004. Ms. Holland filed an EEO Charge in approximately June 2005, in which she complained about the gender discrimination she experienced at Novartis.

**ANSWER:**

NPC admits that it hired Holland in April 2000 as a Senior Care Sales Consultant in Baltimore, Maryland and Washington, D.C. and that she was transferred in September 2001 to Wilmington, Delaware to work as an Executive Sales Consultant. NPC admits that Holland held that position until her resignation in August 2004 and that she filed an EEO Charge in approximately June 2005 in which she complained about alleged gender discrimination. NPC denies the remaining allegations contained in this Paragraph.

#### Denials of Promotion

**ALLEGATION NO. 310:**

In May 2004, Ms. Holland was denied entry into the Management Development Workshop ("MD1"), which is necessary to advance into management positions at Novartis. Ms. Holland was told that she could not enter the June 2004 MD1 training course because of her current sales numbers. However, her enrollment in the training had previously been based on

## ADDITIONAL AND AFFIRMATIVE DEFENSES

### General Defenses

1.    No Plaintiff may recover for any acts occurring more than 300 days prior to the day she filed her EEOC charge.

2.    Plaintiffs' claims are barred to the extent Plaintiffs have failed to exhaust the administrative prerequisites for filing suit under Title VII.

3.    Plaintiffs' claims are barred to the extent they are not like or reasonably related to the underlying EEOC Charges.

4.    Those Plaintiffs and putative class members who are no longer employed by NPC have failed to mitigate their damages.

5.    The claims of any Plaintiff and putative class member are barred to the extent any Plaintiff or putative class member has executed or, in the future executes, a release of employment-related claims.

6.    NPC exercised reasonable care to prevent and promptly correct alleged harassing behavior and the claims of Plaintiffs and putative class members are barred to the extent they unreasonably failed to take advantage of NPC's preventive and corrective opportunities, including but not limited to internal complaint procedures, or avoid harm otherwise.

7.    Plaintiffs and putative class members are not entitled to punitive damages in that NPC has acted at all times with good faith efforts to comply with all laws prohibiting discrimination.

8.    Plaintiffs' and putative class members' claims are barred to the extent Defendant would have taken the same action giving rise to the claims even if it had not taken their gender and/or pregnancy or maternity or disability leave into account in taking the action.

-163-

9.    Ashley Narmour and Sue Earl are not proper plaintiffs because they were not employees of Novartis Pharmaceuticals Corporation.

10.    The New York Executive Law does not apply to one or more of the Plaintiffs and/or putative Class Members.

11.    One or more Plaintiffs lack standing to bring and may not represent putative class members, in whole or in part, with respect to the asserted class claims.

12.    One or more Plaintiffs' and putative class members' claims are barred by payment, set off and accord and satisfaction.

13.    One or more Plaintiffs' and putative class members' claims are barred by their own unclean hands.

### Defenses Regarding Individual Plaintiffs

#### Karen Liggins

14.    The NPC Code of Conduct expressly prohibits NPC employees from recording conversations of another employee without that employee's full knowledge and consent.  NPC punishes such violations by terminating the offending employee.  Liggins violated the Company's Code of Conduct by recording a telephone conversation she had with Human Resources Manager Carole Robinson and Regional Director Kathy Kobe in or about June 2005. A copy of this recording was produced by Plaintiff's counsel on October 17, 2005. NPC would have terminated Liggins because she recorded this conversation if she had not resigned before any action could be taken against her. Therefore, any back pay awarded to Liggins should be cut-off as of the date this violation was discovered by the Company.

#### Jennifer Waxman-Recht

NEWYORK/#160854.1

15.   The NPC Code of Conduct expressly prohibits NPC employees from recording conversations of another employee without that employee's full knowledge and consent. NPC punishes such violations by terminating the offending employee. Jennifer Waxman-Recht violated the Company's Code of Conduct by recording a telephone conversation she had with Regional Director John Curtin. A copy of this recording was produced by Plaintiff's counsel on October 11, 2005. NPC would have terminated Liggins because she recorded this conversation if she had not resigned before any action could be taken against her. Therefore, any back pay awarded to Waxman-Recht should be cut-off as of the date this violation was discovered by the Company.

### Maryanne Jacoby

16.   The NPC Code of Conduct expressly prohibits NPC employees from recording conversations of another employee without that employee's full knowledge and consent. NPC punishes such violations by terminating the offending employee. Maryanne Jacoby violated the Company's Code of Conduct by recording a teleconference involving her manager and other sales representatives from her area without informing any of the other participants. A copy of this recording was produced by Plaintiff's counsel on December 21, 2005. NPC would have terminated Jacoby because she recorded this conversation if she had not resigned before any action could be taken against her. Therefore, any back pay awarded to Jacoby should be cut-off as of the date this violation was discovered by the Company.

### Kelly Corbett

17.   The NPC Code of Conduct expressly prohibits NPC employees from sharing confidential information with non-employees. Kelly Corbett forwarded proprietary and confidential company documents/information to former NPC employee Jane Voisin by e-mail on

January 18, 2004. Additionally, Corbett used the Company's computer system to forward inappropriate e-mails to both external individuals as well as her subordinates. NPC would have terminated Corbett's employment if it had discovered this series of violations before she had resigned. Therefore, any back pay awarded to Corbett should be cut-off as of the date this violation was discovered by the Company.

**Amy Velez**

18.    Velez is barred from recovery because her EEOC Charge was dismissed as untimely.

19.    The NPC Code of Conduct provides that NPC employees "must be truthful in all communications with one another, customers and governmental agencies. We must keep complete and accurate business records." Amy Velez violated the Code of Conduct when she asked another sales representative, Laura Dubnansky, to lie and say that she attended a business meal that Dubnansky did not actually attend so that the per capita cost would be less than it would be if Velez reported the actual number of attendees. Velez further violated the Code of Conduct when she expensed items as business meal costs when in fact she was bringing food home to her family. NPC would have terminated Velez had she still been employed on the date these violations were discovered. Therefore, any back pay awarded to Corbett should be cut-off as of the date this violation was discovered by the Company.

20.    Velez further violated the Company's Code of Conduct when she explained to Laura Dubnansky that she could extend her post-pregnancy leave of absence by claiming to have post-partum depression and telling Dubnansky that she knew a doctor who would make such a diagnosis. NPC would have terminated Velez had she still been employed on the date this

NEWYORK/#160854.1

violation was discovered.  Therefore, any back pay awarded to Corbett should be cut-off as of the date this violation was discovered by the Company.


Respectfully submitted,

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.


By: s/ Jonathan A. Wexler
     JONATHAN A. WEXLER
     805 Third Avenue
     New York, New York 10020
     (212) 407-7700
     (212) 407-7799

     Attorneys for Defendant
     NOVARTIS PHARMACEUTICALS
     CORPORATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
AMY VELEZ, SONIA KLINGER,                    :
PENNI ZELINKOFF, MINEL HIDER
TOBERTGA, MICHELLE WILLIAMS,         :
JENNIFER WAXMAN-RECHT,
KAREN LIGGINS, LORI HORTON,              :          04 Civ. 9194 (GEL)
HOLLY WATERS, STEPHANIE CATES,
WENDY PINSON, ROBERTA                      :
VONLINTEL, ASHLEY NARMOUR,
CATHERINE WHITE, KELLY                      :
CORBETT, SUE EARL, JAMIE
HOLLAND, JOAN DURKIN, SIMONA         :
LOPES, MARYANNE JACOBY, and
MARTA DEYNE,                                      :

Individually and on Behalf of Others          :
Similarly Situated,
                                                          :
PLAINTIFFS,                                         :

                                                          :
v.
                                                          :          **AFFIDAVIT OF SERVICE**

NOVARTIS CORPORATION,
NOVARTIS PHARMACEUTICALS            :
CORPORATION and THOMAS
EBELING,                                             :

DEFENDANTS.                                      :
-------------------------------------------------------X

STATE OF NEW YORK    )
                                 )  ss.:
COUNTY OF NEW YORK )

       MINDA BARANDA,  being duly sworn, deposes and says:

       1.       I am not a party to this action, am over eighteen years of age, and reside in
Union, New Jersey.

       2.       On March 20, 2006, I caused a true copy of the within NOVARTIS
PHARMACEUTICALS CORPORATION'S ANSWER TO PLAINTIFFS' FOURTH
AMENDED CLASS ACTION COMPLAINT by depositing same enclosed in postpaid properly
addressed wrapper in an official depository under the exclusive care and custody of the United
States Post Office within the State of New York addressed as follows:

Lisa Ann Goldblatt, Esq.
**SANFORD, WITTELS & HEISLER, LLP**
2121 K Street, N.W.
Suite 700
Washington, DC 20037

Grant Morris, Esq.
**LAW OFFICES OF GRANT E. MORRIS, ESQ.**
2121 K St., N.W.
Suite 700
Washington D.C. 20037

_____
/ Minda Baranda

Sworn to and subscribed before me
on this 20th day of March, 2006

_____
Notary Public

Linda S. Dobson
Notary Public, State of New York
No. 01DO6018206
Qualified in Queens County
Commission Expires January 04, 2007