Westlaw.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
(Cite as: 244 F.R.D. 243)

Page 1

▷

Velez v. Novartis Pharmaceuticals Corp.
S.D.N.Y.,2007.

United States District Court,S.D. New York.
Amy VELEZ, et al., Plaintiffs,
v.
NOVARTIS PHARMACEUTICALS CORPORATION, Novartis Corporation, and Thomas Ebeling, Defendants.
**No. 04 Civ. 9194(GEL).**

July 31, 2007.
As Amended Aug. 16, 2007.

**Background:** Pharmaceutical company employees brought gender discrimination suit under Title VII against employer and its corporate parent, alleging various forms of disparate treatment including discrimination in compensation, promotion and promotional opportunities, personnel evaluations, and adverse treatment of women taking pregnancy leave. Corporate parent moved for summary judgment, and employees moved for class certification.

**Holdings:** The District Court, Lynch, J., held that:
(1) employees failed to show, under "single or joint employer" test, that parent's operations were sufficiently integrated with subsidiary's to give rise to any liability by parent for alleged acts of discrimination;
(2) claims of compensation and promotion discrimination were reasonably related to claims of harassment and hostile work environment, for purposes of determining whether all claims were administratively exhausted and scope of class period;
(3) numerosity requirement for class certification was met;
(4) commonality requirement for class certification was met by statistical and anecdotal evidence, although class would not be certified as to claims of discrimination in pay on basis of pregnancy;
(5) typicality certification requirement was met;
(6) adequacy of representation certification requirement was met;
(7) class action was maintainable on ground that injunctive relief would be appropriate and necessary were employees to succeed on the merits; and
(8) issue of maintainability on ground that questions of law or fact common to class members predominated and that class action was superior to other available methods of adjudication would be deferred until after liability phase of class action.

Motions granted.

West Headnotes

**[1] Civil Rights 78 €==>1112**

78 Civil Rights
  78II Employment Practices
    78k1108 Employers and Employees Affected
      78k1112 k. Multiple Entities; Third Parties. Most Cited Cases
Parent company can be held liable for its subsidiary's violations of Title VII under the "single or joint employer" test, under which parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Civil Rights 78 €==>1112**

78 Civil Rights
  78II Employment Practices
    78k1108 Employers and Employees Affected
      78k1112 k. Multiple Entities; Third Parties. Most Cited Cases
Four-factor "single or joint employer" test for determining when parent company may be considered "employer" of subsidiary's employee under Title VII may be satisfied by showing that there is an amount of participation that is sufficient and necessary to total employment process, even absent total

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

Page 2

control or ultimate authority over hiring decisions. Civil Rights Act of 1964, § 701(b), 42 U.S.C.A. § 2000e(b).

**[3] Civil Rights 78 ⟶1112**

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1112 k. Multiple Entities; Third Parties. Most Cited Cases

Most important element in four-factor "single or joint employer" test for determining when parent company may be considered "employer" of subsidiary's employee under Title VII is whether the two enterprises exhibit centralized control of labor relations, including tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions; this particular criterion has been distilled to a critical question of what entity made final decision regarding employment matters related to person claiming discrimination. Civil Rights Act of 1964, § 701(b), 42 U.S.C.A. § 2000e(b).

**[4] Civil Rights 78 ⟶1112**

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1112 k. Multiple Entities; Third Parties. Most Cited Cases

Pharmaceutical company employees failed to show, under "single or joint employer" test, that parent corporation's operations were sufficiently integrated with those of subsidiary for parent to incur any liability for alleged acts of gender discrimination; fact parent's vice president of Human Resources (HR) performed due diligence on personnel who would be transferred in support of operations being acquired from another company and merged into pharmaceutical company was not evidence of centralized control of labor relations, and other evidence submitted, such as fact parent and subsidiary submitted joint applications for business magazine's "Best Places to Work" survey, was even weaker. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[5] Labor and Employment 231H ⟶25**

231H Labor and Employment
    231HI In General
        231Hk22 Nature, Creation, and Existence of Employment Relation
            231Hk25 k. Who Is Employer; Multiple Entities. Most Cited Cases

Fact that parent and subsidiary maintain the same benefits does not suggest centralized control of labor relations; common benefits package speaks only to economies of scale.

**[6] Civil Rights 78 ⟶1112**

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1112 k. Multiple Entities; Third Parties. Most Cited Cases

When considering "interrelation of operations" prong of integration analysis for whether parent company can be held liable for its subsidiary's violations of Title VII, factors considered include whether (1) parent was involved directly in subsidiary's daily decisions relating to production, distribution, marketing, and advertising, (2) entities shared employees, services, records, and equipment, (3) entities commingled bank accounts, accounts receivable, inventories, and credit lines, (4) parent maintained subsidiary's books, (5) parent issued subsidiary's paychecks, and (6) parent prepared and filed subsidiary's tax returns. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[7] Civil Rights 78 ⟶1112**

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1112 k. Multiple Entities; Third Parties. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
**(Cite as: 244 F.R.D. 243)**

Page 3

Fact that parent corporation did not have written lease for office space it rented from subsidiary although annual rent was over one million dollars, while evidence of their close relationship, had nothing to do with labor relations for purposes of determining whether parent could be held liable under Title VII for alleged gender discrimination against employees of subsidiary. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[8] Civil Rights 78 ⚖1112

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1112 k. Multiple Entities; Third Parties. Most Cited Cases
In Title VII suit in which pharmaceutical company employees sought to hold parent corporation liable for alleged acts of gender discrimination, fact that employees of various companies were told to think of corporations as "one big family" and that parent corporation filed consolidated tax return on subsidiary's behalf, while indicating some degree of interrelationship of operations, did not suggest degree of entanglement generally found to satisfy that prong of integration analysis even in combination with other factors. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[9] Labor and Employment 231H ⚖25

231H Labor and Employment
    231HI In General
        231Hk22 Nature, Creation, and Existence of Employment Relation
            231Hk25 k. Who Is Employer; Multiple Entities. Most Cited Cases
Common management and common ownership, the last two prongs of single employer test, are less important than interrelation of operations and centralized control of labor relations as they represent ordinary aspects of parent-subsidiary relationship.

[10] Labor and Employment 231H ⚖25

231H Labor and Employment
    231HI In General
        231Hk22 Nature, Creation, and Existence of Employment Relation
            231Hk25 k. Who Is Employer; Multiple Entities. Most Cited Cases
Fact that parent assists subsidiary's employee in locating other employment within company's group does not indicate centralized control of labor relations where parent typically provides such assistance.

[11] Corporations 101 ⚖1.5(3)

101 Corporations
    101I Incorporation and Organization
        101k1.5 Separate Corporations, Disregarding Separate Entities
            101k1.5(3) k. Parent and Subsidiary Corporations. Most Cited Cases
Directors and officers holding positions with parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership.

[12] Labor and Employment 231H ⚖25

231H Labor and Employment
    231HI In General
        231Hk22 Nature, Creation, and Existence of Employment Relation
            231Hk25 k. Who Is Employer; Multiple Entities. Most Cited Cases
In order to use "single employer doctrine," employees of subsidiary corporation need to prove more than an overlap in boards or management of subsidiary and parent.

[13] Corporations 101 ⚖215

101 Corporations
    101IX Members and Stockholders
        101IX(D) Liability for Corporate Debts and Acts
            101k215 k. Nature and Grounds in General. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

Page 4

Parent corporation's possession of a controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability.

### [14] Corporations 101 ⇒1.5(1)

101 Corporations  
    101I Incorporation and Organization  
        101k1.5 Separate Corporations, Disregarding Separate Entities  
            101k1.5(1) k. In General. Most Cited Cases

### Labor and Employment 231H ⇒25

231H Labor and Employment  
    231HI In General  
        231Hk22 Nature, Creation, and Existence of Employment Relation  
            231Hk25 k. Who Is Employer; Multiple Entities. Most Cited Cases  
The law only treats employees of a corporate entity as employees of a related entity under extraordinary circumstances.

### [15] Federal Civil Procedure 170A ⇒184.25

170A Federal Civil Procedure  
    170AII Parties  
        170AII(D) Class Actions  
            170AII(D)3 Particular Classes Represented  
                170Ak184 Employees  
                    170Ak184.25 k. Prior Administrative Proceeding, Use or Availability; Limitations. Most Cited Cases  
In employment discrimination case, class representative can only represent those individuals who have either filed timely Equal Employment Opportunity Commission (EEOC) charge or could have filed one at time class representative's charge was filed.

### [16] Federal Civil Procedure 170A ⇒184.25

170A Federal Civil Procedure  
    170AII Parties  
        170AII(D) Class Actions  
            170AII(D)3 Particular Classes Represented  
                170Ak184 Employees  
                    170Ak184.25 k. Prior Administrative Proceeding, Use or Availability; Limitations. Most Cited Cases  
Timely filing of administrative charge by named plaintiff in employment discrimination class action satisfies charge filing obligation of all members of class; such a charge must give some indication that grievance affects group of individuals defined broadly enough to include those who seek to piggyback on claim.

### [17] Civil Rights 78 ⇒1516

78 Civil Rights  
    78IV Remedies Under Federal Employment Discrimination Statutes  
        78k1512 Exhaustion of Administrative Remedies Before Resort to Courts  
            78k1516 k. Scope of Administrative Proceedings; Like or Related Claims. Most Cited Cases  
To satisfy exhaustion of administrative remedies requirement in employment discrimination case, employees' claims not included in timely Equal Employment Opportunity Commission (EEOC) charge must be "reasonably related" to claims made therein, meaning that conduct complained of would fall within scope of EEOC investigation which can reasonably be expected to grow out of charge of discrimination; claims alleging retaliation by employer against employee for filing EEOC charge and claims alleging further incidents of discrimination carried out in precisely the same manner alleged in EEOC charge may be considered reasonably related.

### [18] Federal Civil Procedure 170A ⇒184.25

170A Federal Civil Procedure  
    170AII Parties  
        170AII(D) Class Actions  
            170AII(D)3 Particular Classes Represen-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
**(Cite as: 244 F.R.D. 243)**

Page 5

ted
      170Ak184 Employees
         170Ak184.25 k. Prior Administrative Proceeding, Use or Availability; Limitations. Most Cited Cases
For purposes of determining scope of class period in gender discrimination case, claims of compensation and promotion discrimination were reasonably related to claims of harassment and hostile work environment raised in earliest Equal Employment Opportunity Commission (EEOC) charge and were administratively exhausted. Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e).

**[19] Federal Civil Procedure 170A ⇐161.1**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
           170Ak161.1 k. Factors, Grounds, Objections, and Considerations in General. Most Cited Cases

**Federal Civil Procedure 170A ⇐171**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
           170Ak171 k. In General; Certification in General. Most Cited Cases
There are two sets of requirements for class certification: (1) court must be persuaded, after rigorous analysis, that numerosity, commonality, typicality, and adequacy of representation prerequisites have been satisfied, and (2) plaintiffs must show that proposed class action fits into one of the three categories for maintainability of class actions. Fed.Rules Civ.Proc.Rule 23(a, b), 28 U.S.C.A.

**[20] Federal Civil Procedure 170A ⇐172**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
           170Ak172 k. Evidence; Pleadings and Supplementary Material. Most Cited Cases
District judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each requirement of class certification rule has been met. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[21] Federal Civil Procedure 170A ⇐184.15**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
      170Ak184 Employees
         170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases
Numerosity requirement for class certification was met in employment discrimination case where proposed class consisted of "all women who are currently holding, or have held, a sales-related job" with pharmaceutical company during a five-year period; class could number in the thousands. Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[22] Federal Civil Procedure 170A ⇐164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
           170Ak164 k. Representation of Class; Typicality. Most Cited Cases

**Federal Civil Procedure 170A ⇐165**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
           170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues. Most Cited Cases
Commonality and typicality requirements for class certification tend to merge because both serve as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

Page 6

guideposts for determining whether named plaintiff's claim and class claims are so interrelated that interests of class members will be fairly and adequately protected in their absence. Fed.Rules Civ.Proc.Rule 23(a)(2, 3), 28 U.S.C.A.

**[23] Federal Civil Procedure 170A ⇐174**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak174 k. Consideration of Merits. Most Cited Cases
To determine commonality for class certification purposes, it is not necessary to decide whether plaintiffs' evidence is ultimately compelling. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[24] Federal Civil Procedure 170A ⇐174**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak174 k. Consideration of Merits. Most Cited Cases
Court should not refrain from fact-finding on motion for class certification in employment discrimination case simply because it may overlap with merits inquiry; however, statistical dueling is not relevant to certification stage unless such dueling presents a valid basis for denying class certification. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[25] Federal Civil Procedure 170A ⇐184.10**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.10 k. Discrimination and Civil Rights Actions in General. Most Cited Cases
Class certification of employment discrimination case is not appropriate unless plaintiffs can show that challenged practice is causally related to pattern of disparate treatment or has a disparate impact; where decisionmaking process is difficult to review because of role of subjective assessment, significant statistical disparities are relevant to determining whether challenged employment practice has a classwide impact.

**[26] Federal Civil Procedure 170A ⇐184.15**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases
Commonality requirement for class certification was met in pharmaceutical company employees' Title VII gender discrimination suit, even though report of employees' expert analyzing performance management and related compensation system used by employer to determine whether it was vulnerable to bias in decision making and criticizing performance evaluation system on number of grounds was by itself insufficient to support class certification on any issue because it illustrated only the potential for discrimination; employees also offered statistical and anecdotal evidence of disparate impact in performance evaluation scores, compensation, and promotions, and of discrimination on the basis of pregnancy. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.; Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[27] Civil Rights 78 ⇐1176**

78 Civil Rights
   78II Employment Practices
      78k1164 Sex Discrimination in General
         78k1176 k. Pregnancy; Maternity. Most Cited Cases
Pregnancy Discrimination Act (PDA) does not require the creation of special programs for pregnant

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
**(Cite as: 244 F.R.D. 243)**

Page 7

women, nor does it mandate any special treatment; to the contrary, statute specifically requires that pregnant women be treated the same as all other employees with similar disabilities. Civil Rights Act of 1964, § 701(k), 42 U.S.C.A. § 2000e(k).

**[28] Civil Rights 78 €⇒1176**

78 Civil Rights
 78II Employment Practices
  78k1164 Sex Discrimination in General
   78k1176 k. Pregnancy; Maternity. Most Cited Cases

**Federal Civil Procedure 170A €⇒184.15**

170A Federal Civil Procedure
 170AII Parties
  170AII(D) Class Actions
   170AII(D)3 Particular Classes Represented
    170Ak184 Employees
     170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases
In pharmaceutical company employees' gender discrimination action, class would not be certified as to claims of discrimination in pay on basis of pregnancy; it was not discriminatory to treat pregnancy-related leave the same as other forms of leave, and employees had offered no evidence that employer's compensation policies did otherwise. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.; Civil Rights Act of 1964, § 701(k), 42 U.S.C.A. § 2000e(k).

**[29] Federal Civil Procedure 170A €⇒184.10**

170A Federal Civil Procedure
 170AII Parties
  170AII(D) Class Actions
   170AII(D)3 Particular Classes Represented
    170Ak184 Employees
     170Ak184.10 k. Discrimination and Civil Rights Actions in General. Most Cited Cases
Commonality and typicality requirements for class certification of employment discrimination claims can be satisfied by affidavits, statistical evidence, or both. Fed.Rules Civ.Proc.Rule 23(a)(2,3), 28 U.S.C.A.

**[30] Federal Civil Procedure 170A €⇒164**

170A Federal Civil Procedure
 170AII Parties
  170AII(D) Class Actions
   170AII(D)1 In General
    170Ak164 k. Representation of Class; Typicality. Most Cited Cases
"Typicality" required for class certification does not require that factual background of each named plaintiff's case be identical to that of all class members; rather, it requires that disputed issue of law or fact occupy essentially the same degree of centrality to named plaintiff's claim as to that of other members of proposed class. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[31] Federal Civil Procedure 170A €⇒164**

170A Federal Civil Procedure
 170AII Parties
  170AII(D) Class Actions
   170AII(D)1 In General
    170Ak164 k. Representation of Class; Typicality. Most Cited Cases
Primary criterion for determining typicality for certification purposes is forthrightness and vigor with which representative party can be expected to assert interests of class members. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[32] Federal Civil Procedure 170A €⇒184.15**

170A Federal Civil Procedure
 170AII Parties
  170AII(D) Class Actions
   170AII(D)3 Particular Classes Represented
    170Ak184 Employees
     170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases
Typicality requirement for class certification was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

met in Title VII gender discrimination class action by pharmaceutical company employees, despite analysis by employer's expert showing that named plaintiffs' claims of promotion and compensation discrimination were not reflective of other women hired for similar jobs at same time as plaintiffs and concluding that each named plaintiff was, with one exception, the only woman in her "hiring cohort," i.e., group of women hired for similar jobs at the same time, who experienced disparate treatment of which she complained. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.; Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[33] Federal Civil Procedure 170A ⇌164**

170A Federal Civil Procedure  
    170AII Parties  
        170AII(D) Class Actions  
            170AII(D)1 In General  
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases  
There are two separate inquiries under adequacy of representation requirement for class certification: first requires showing that class counsel is experienced, qualified, and able to conduct litigation, and second is demonstration that there is no conflict of interest between named plaintiffs and other members of class. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[34] Federal Civil Procedure 170A ⇌184.15**

170A Federal Civil Procedure  
    170AII Parties  
        170AII(D) Class Actions  
            170AII(D)3 Particular Classes Represented  
                170Ak184 Employees  
                      170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases  
Adequacy of representation requirement for class certification was met in Title VII gender discrimination action by pharmaceutical company employees, despite contention that inclusion of pregnancy discrimination claims created conflict between class members; while tension over lost incentive pay might be factor in some relationships between pregnant women and their teammates, court could not imagine, and employer did not suggest, any particular impact that putative tension might have on proceedings. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.; Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[35] Federal Civil Procedure 170A ⇌184.15**

170A Federal Civil Procedure  
    170AII Parties  
        170AII(D) Class Actions  
            170AII(D)3 Particular Classes Represented  
                170Ak184 Employees  
                      170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases  
In Title VII gender discrimination action by pharmaceutical company employees, inclusion of managers in plaintiff class did not create conflict that would preclude finding of adequacy of representation required for class certification; if supervisory employees and supervisees all were subject to discrimination, all had an equal interest in remedying the discrimination, and named plaintiffs could still be expected to litigate case with ardor, and potential for conflict did not necessarily defeat class certification. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[36] Federal Civil Procedure 170A ⇌164**

170A Federal Civil Procedure  
    170AII Parties  
        170AII(D) Class Actions  
            170AII(D)1 In General  
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases  
Class certification is inappropriate where putative class representative is subject to unique defenses which threaten to become focus of litigation. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[37] Federal Civil Procedure 170A ⇌184.15**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

Page 9

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
           170Ak184 Employees
              170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases
In Title VII gender discrimination action by pharmaceutical company employees, named plaintiffs could adequately represent interests of female managers in class even though only named plaintiff who was manager was subject to unique defense that she improperly disclosed corporate information to friend in violation of company policy; employer did not suggest any way in which their pursuit of that defense could affect interests of other class members or that plaintiff manager's credibility was adversely affected by their allegations. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.; Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[38] Declaratory Judgment 118A ⇐305**

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(C) Parties
         118Ak305 k. Representative or Class Actions. Most Cited Cases

**Federal Civil Procedure 170A ⇐165**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
           170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues. Most Cited Cases
Finding, for certification purposes, that class action is maintainable on ground that party opposing class has acted or refused to act on grounds generally applicable to class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to class as whole, is appropriate where (1) positive weight or value to plaintiffs of injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[39] Federal Civil Procedure 170A ⇐184.15**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
           170Ak184 Employees
              170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases
Class action by pharmaceutical company employees alleging gender discrimination under Title VII was maintainable on ground that injunctive relief would be appropriate and necessary were employees to succeed on the merits. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.; Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[40] Federal Civil Procedure 170A ⇐184.15**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
           170Ak184 Employees
              170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases
Issue of maintainability of Title VII gender discrimination class action on ground that questions of law or fact common to class members predominated and that class action was superior to other available methods of adjudication would be deferred until after liability phase of class action; it was not necessary to decide that issue at certification stage where action was found maintainable on another ground. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.; Civil Rights Act of 1964, § 703(a)(1), 42

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

Page 10

U.S.C.A. § 2000e-2(a)(1).

*248 David W. Sanford, Angela Corridan, Jeremy Heisler, and Steven Wittels, Sanford, Wittels & Heisler, LLP, Washington, DC, and New York, NY, and Grant Morris, Washington, DC, for plaintiffs.  
Vincent R. FitzPatrick, Jr., Heather K. McDevitt, and Jack E. Pace III, White & Case LLP, New York, NY, for defendant Novartis Corporation.  
Jonathan A. Wexler, Richard H. Schnadig, Thomas G. Abram, and Aaron R. Gelb, Vedder, Price, Kaufman & Kammholz, P.C., New *249 York, NY, and Chicago, IL, for defendant Novartis Pharmaceuticals Corporation.  
Andrea S. Christensen, Kaye Scholer, LLP, New York, NY, for defendant Thomas Ebeling.

### OPINION AND ORDER

LYNCH, District Judge.

Female employees of Novartis Pharmaceuticals Corporation ("NPC") bring this gender discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Defendant Novartis Corporation ("Corporation"), the corporate parent of NPC, moves for summary judgment, arguing that plaintiffs have failed to show that Corporation is subject to liability for its subsidiary's actions. Plaintiffs also move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Both motions will be granted.

### BACKGROUND

Plaintiffs are nineteen women presently or formerly employed by NPC in sales-related positions.[FN1] They claim that NPC discriminates against them in various ways, including in compensation, promotion and promotional opportunities, personnel evaluations, and by adverse treatment of women who take pregnancy leave. They seek injunctive relief, back pay and front pay, and compensatory and punitive damages.

FN1. Two of the nineteen named plaintiffs, Ashley Narmour and Sue Earl, sue only in their individual capacities, and not as putative class representatives. (P. Class Cert. Mem. 3 n. 1.)

NPC is a pharmaceutical company with about 6,000 sales representatives, headquartered in East Hanover, New Jersey, with operations in all 50 states. The corporation's organizational structure divides the country into "territories," each of which has one or more sales representatives responsible for marketing NPC's products to local doctors. NPC also has "national field forces" of employees focusing on areas such as "mass markets," institutional markets, and specialty physicians. NPC is wholly owned by defendant Corporation, a holding company with three employees, through another company, Novartis Financial. As discussed below, the parties dispute the extent and nature of the relationship between Corporation and NPC.

Defendant Thomas Ebeling is Chief Executive Officer ("CEO") of Novartis Pharma AG, a related company that is not a party to this case. Ebeling is also a boardmember of NPC, and is alleged to have been actively involved with the management of NPC. (Compl. ¶ 44.)

After extensive discovery, plaintiffs move for certification of a class consisting of

> [a]ll women who are currently holding, or have held, a sales-related job position with [NPC] during the time period July 15, 2002 through the present, including those who have held positions as Sales Representatives, Sales Consultants, Senior Sales Consultants, Executive Sales Consultants, Sales Associates, Sales Specialists, Senior Sales Specialists, and District Managers I.

(P. Class Cert. Mem. 1.) In support of the motion for class certification, plaintiffs offer evidence that includes the declarations of 87 women who are or were employees of NPC, as well as two expert reports.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
**(Cite as: 244 F.R.D. 243)**

Page 11

Defendants oppose the request for class certification, primarily on the grounds that plaintiffs' statistical and anecdotal evidence fails to show the existence of common questions of fact and law. Defendant Corporation moves for summary judgment on the grounds that plaintiffs have failed to show it that its operations are sufficiently integrated with NPC's operations to give rise to liability for any acts of discrimination.

## DISCUSSION

I. *Novartis Corporation's Motion for Summary Judgment*

A. **Summary Judgment Standard**

Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden to *250 establish the absence of any material factual issues. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In determining whether there are genuine issues of material fact," the Court must "resolve all ambiguities and draw all permissible factual inferences" in favor of the non-moving party. *Id.* (citation and internal quotation marks omitted).

B. **Standards for Parent Company Liability Under Title VII**

[1] A parent company can be held liable for its subsidiary's violations of Title VII under the "single or joint employer" test developed by the National Labor Relations Board and adopted by the Second Circuit in the Title VII context. *Gulino v. N.Y.S. Educ. Dep't,* 460 F.3d 361, 378 (2d Cir.2006). Under this test,

> [A] parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

*Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995).

[2] The four-factor test may be satisfied "by a showing that there is an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Id.* at 1241 (internal citations, alterations and quotation marks omitted). "We focus our inquiry ... on the second factor, centralized control of labor relations,"*id.* at 1241, a "crucial element of the inquiry." *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 341 (2d Cir.2000) (internal citations and quotation marks omitted). Because centralized control of labor relations is the focus of the analysis, it will be discussed first.

C. **Centralized Control of Labor Relations**

[3] The most important element in the four-factor test is "whether the two enterprises exhibit centralized control of labor relations, including tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions." *Parker,* 204 F.3d at 341. "This particular criterion has been distilled to a critical question: what entity made the final decision regarding employment matters related to the person claiming discrimination?" *Regan v. In the Heat of the Nite, Inc.,* 93 Civ. 862, 1995 WL 413249, at *3 (S.D.N.Y. July 12, 1995).

Corporation relies heavily on this Court's decision in *Salemi v. Boccador, Inc,* No. 02 Civ. 06648, 2004 WL 943869 (S.D.N.Y. Apr. 29, 2004). In that case, the Court held that there was a genuine issue

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

Page 12

of material fact as to whether a corporation and its parent company should be treated as an integrated employer for Title VII purposes, even though the level of control exercised by the parent company was "less than that described in many of the cases that have allowed integration under Title VII."*Id.* at *5. Acknowledging that centralized control of labor relations was the "key factor" in the inquiry, *id.* at *4, the Court analyzed that factor in terms of the specific allegations in the case, which concerned the conditions of the plaintiff's employment, not failure to promote or wrongful termination. *Id.* at *5. The Court held that

> the relevant employment decisions for purposes of integrating [the two companies] are not simply the hiring or firing of plaintiff, but rather are those decisions that construct the conditions of employment for employees at the plaintiff's level, including not only the hiring and firing of employees at [her] level, but also the hiring and firing of the manager [of the subsidiary company] and the setting of overall policies for employee conduct and discipline.

*Id.* In this case, the relevant employment decisions for the most part also concern conditions of employment. Plaintiffs' allegations include discriminatory promotion, disparate pay, differential treatment, hostile work environment, discrimination against women who take pregnancy leave, sexual harassment, and retaliation. (Compl. ¶ 3.)

[4] Nothing about the allegations concerning Corporation, however, suggests that **251** it has any control over the personnel policies of NPC, much less the conditions of employment experienced by NPC employees. Unlike the situation in *Salemi,* where the officer who served as president of both corporations "controlled many of [the subsidiary's] employment policies, even those as quotidian as dress code," and "exercised this authority on behalf of [the parent corporation],"2004 WL 943869 at *6, plaintiffs have pointed to no evidence that any Corporation officer has any control whatsoever over the conditions of employment at NPC. Uncontra-

dicted testimony in the record indicates that Corporation never tells NPC's HR personnel what policies to adopt or how to respond to an employee complaint, and never communicates with them to discuss the hiring or firing of NPC's employees. (Reply Ex. 2 at 299.)

Plaintiffs contend that there is a "blending" of human resources functions between Corporation and NPC. They note that James Robinson, Vice President of Corporation's HR department, is also Vice President of HR for two related companies, Novartis Services and Novartis Financial, and contend that Ronbinson "has also been responsible for the HR aspect of [NPC's] acquisitions of sales personnel." To support this claim, they note that on one occasion when Corporation planned to acquire certain operations from another company and merge those operations into NPC, Robinson performed due diligence on the personnel who would be transferred in support of those operations. (P.Ex. E.1 at 52-53, 55-56.) No reasonable factfinder could find, however, that this due diligence was evidence of centralized control of labor relations.

In connection with the acquisition, Robinson wrote a report on the "HR piece of the due diligence," but did not share it with anyone at NPC's HR department. (*Id.* at 56, 60.) Although this service may have in some indirect sense involved personnel management at NPC (in that that was the subject of the report), nothing suggests that Robinson exercised any *control* over labor relations at NPC. The writing of the report was not a joint HR function, but a financial analysis of the prospects of a proposed acquisition by the holding company. Thus, Robinson's analysis of the proposed deal is not evidence that Corporation exercised any control over the conditions of employment at NPC.

Other evidence submitted by plaintiffs is even weaker. Plaintiffs note that Corporation and NPC have submitted joint applications for Fortune Magazine's "Best Places to Work" survey. Plaintiffs acknowledge, however, the rules of the contest required that corporations apply together with all af-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
**(Cite as: 244 F.R.D. 243)**

Page 13

filiates, rather than individually.[FN2] (P. Mem.[FN3] 11-12.) The only inference that can be drawn from the joint submission, therefore, is that the various Novartis entities wished to be known as good places to work. The law of corporate liability is not governed by the rules of a magazine contest.

> FN2. The joint-application policy makes eminent sense, given that many major corporations have a surfeit of affiliated subsidiaries. If the contest were structured otherwise, the entire "Best Places to Work" list could theoretically be filled with one corporation and its subsidiaries.

> FN3. This Opinion and Order adjudicates two motions, which were separately briefed. For the sake of brevity, the memoranda of law will be cited throughout the "Discussion" section of this opinion as "D. Mem.," "P. Mem.," "D. Reply," and so forth. It should be understood that such citations refer to the parties' summary judgment memoranda when they appear in the discussion of summary judgment, and that they refer to the class certification memoranda when they appear in the discussion of class certification.

Plaintiffs also rely on the Novartis companies' use of Lisa DiPaolo, an NPC administrative employee. DiPaolo works for NPC and does separate work for Corporation, for which Corporation reimburses NPC. (Reply Ex. 4 at 135.) Plaintiffs do not contend that DiPaolo's services for Robinson at Corporation pertain in any way to NPC's personnel policies or practices. The fact that the NPC employee is paid for HR work at Corporation, and the fact that the employee's work at Corporation is limited to Corporation's HR needs, is evidence of *separation* of HR functions between the two corporations. Moreover, the fact that a single NPC employee is used by Corporation says nothing about whether Corporation controls conditions of employment at NPC.

*252 Plaintiffs also note that Corporation's Head of HR participates in HR-related meetings at NPC. The evidence suggests that Corporation sometimes adopts policies formulated by NPC. (D. Ex. E.3 at 229-34.) It is not surprising that Corporation, which has three employees, would use policies adopted by NPC, a much larger affiliated corporation, as a model. But nothing in the record indicates that it is in any way obligated to do so, or that Corporation has the ability to dictate the terms of any policies to NPC.

[5] Finally, plaintiffs also argue that the two corporations share employee benefit plans. However, "the fact that the companies maintained the same benefits does not suggest centralized control of labor relations." *Balut v. Loral Elec. Sys.,* 988 F.Supp. 339, 347 (S.D.N.Y.1997). Rather, a "common benefits package speaks only to economies of scale ... and not to centralized control of labor relations." *Kellett v. Glaxo Enter.,* 91 Civ. 6237, 1994 WL 669975, at *5 (S.D.N.Y. Nov.30, 1994).

Plaintiffs have failed, in short, to offer any meaningful evidence of centralized control of labor relations. There is no evidence that Corporation and NPC "appear to make joint hiring and firing decisions." *Lihli Fashions Corp. v. N.L.R.B.,* 80 F.3d 743, 747 (2d Cir.1996). Nor is there evidence from which a reasonable factfinder could conclude that Corporation exerted control over the conditions of employment at NPC. As in a similar case,

> [i]t is uncontroverted that [the two companies] have separate human resources departments, and that [the subsidiary] establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees. It is likewise undisputed that plaintiffs worked for [the subsidiary] and that each was supervised by another [subsidiary] employee. It follows from these undisputed facts that [the subsidiary], and not [the parent], made the 'final decisions' regarding plaintiffs' employment that are at issue here.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
(Cite as: 244 F.R.D. 243)

Page 14

*Duffy v. Drake Beam Morin,* No. 96 Civ. 5606, 1998 WL 252063, at *4 (S.D.N.Y. May 19, 1998). Therefore, there is no genuine issue of material fact as to this critical prong of the inquiry.

**D. Interrelation of Operations**

[6] When considering the "interrelation of operations" prong of the integration analysis, courts in this district have considered factors including:

> (1) whether the parent was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) whether the two entities shared employees, services, records, and equipment; (3) whether the entities commingled bank accounts, accounts receivable, inventories, and credit lines; (4) whether the parent maintained the subsidiary's books; (5) whether the parent issued the subsidiary's paychecks; and (6) whether the parent prepared and filed the subsidiary's tax returns.

*Herman v. Blockbuster Entm't Group,* 18 F.Supp.2d 304, 309 (S.D.N.Y.1998), *aff'd* 182 F.3d 899 (2d Cir.1999). Plaintiffs offer no evidence pertaining to the first, third, or fifth of these factors.

The evidence on which plaintiffs rely to show interrelation of operations is weak. There is no evidence that Corporation "establish[es] the operating practices and management practices" at NPC. *Cook,* 69 F.3d at 1241. Rather, plaintiffs' evidence primarily establishes that Corporation, which is very small, shares some services with and purchases others from NPC for reasons of efficiency.

Corporation and NPC share office space in Florham Park, New Jersey. A reasonable factfinder could conclude, based on testimony introduced by plaintiffs (P.Ex. C), that the office space is not clearly marked as separate, although there is contradictory evidence in the record. (D.Ex. 6.) Similarly, plaintiffs note that Corporation and NPC employees have access to the same phone directory and intranet services (P. Mem. 16), and that NPC provides IT services to Corporation. (P. Mem. 17.) Although these facts, if true, would indicate that Corporation and NPC are closely-affiliated companies, they do not indicate any interrelationship that is relevant *253 to control over conditions of employment at NPC.

A lengthy list of other asserted connections offered by plaintiffs includes little of relevance. Plaintiffs contend that Corporation pays NPC to store its records at NPC's warehouse, but offer no evidence that this was anything other than an arm's-length transaction. Plaintiffs' claim that all of the relevant Novartis companies use Pricewaterhousecoopers as external auditors is even less compelling. Any number of companies use that auditor's services without being affiliated in any way. Plaintiffs' contention that Novartis Services decides which NPC drugs need patent protection (P. Mem. 17) is irrelevant to whether Corporation exercises any control over NPC's personnel functions. Plaintiffs also claim that Corporation's deputy general counsel keeps custody of NPC's minute books. (P. Mem. 17.) This fact establishes that the parent company is keeping track of the operations of its subsidiary, but not that it exercises any control over NPC's operations. *See Balut,* 988 F.Supp. at 345-346 ("The fact that [the parent] Loral reviewed [the subsidiary's] operations biannually, however, does not demonstrate an interrelationship, because a parent typically reviews a subsidiary's progress on a periodic basis"). Plaintiffs note that Corporation provides some capital financing to NPC, but this is typical of a relationship between parents and subsidiaries. Nor does the allegation that Corporation has the power to approve or disapprove NPC's budget suggest an interrelationship of operations; rather, this is a normal corollary of ownership.

[7] Plaintiffs also rely on what they call a "lack of arm's-length dealings" between the two corporations. (P. Mem. 9.) They note that Corporation does not have a written lease for the office space it rents from NPC, although the annual rent is over one million dollars. This is evidence of a close relation-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243  
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522  
**(Cite as: 244 F.R.D. 243)**

Page 15

ship, but it has nothing to do with labor relations. Nor does the informality of the arrangement raise a question about whether it was agreed to at arm's length.

Plaintiffs claim that Corporation decides how much Novartis Services will bill NPC for audit, legal, and intellectual property-related services it performs for NPC (P. Mem. 9), but this allegation concerns the relationship between Corporation and Novartis Services, not Corporation and NPC. Similarly, plaintiffs' claim that loans from Novartis Financial to NPC are approved by NPC's board without any effort to get a better deal from non-Novartis companies. (P. Mem. 10.) Even if true, this allegation concerns the relationship between NPC and Novartis Financial, not NPC and Corporation.

[8] Finally, plaintiffs note that employees of the various Novartis companies are told to think of the corporations as "one big family" (P. Mem. 18), and that NPC files its tax return through Corporation, Novartis Financial, and Novartis Services. Corporation files the consolidated tax return. (P. Mem. 17.) While these allegations do indicate some degree of interrelationship of operations, they do not suggest the degree of entanglement generally found to satisfy this prong of the analysis, even in combination with the other allegations discussed above. *Cf. Regan,* 1995 WL 413249, at *3 (finding interrelationship of operations where employees rotated informally between the relevant companies, and where employee records, payroll records, and bank deposits of each company were kept together); *Parker,* 204 F.3d at 341 (relying on pay stubs that listed an employee's employer as paid "on behalf of" the parent "through" the subsidiary); *Linskey v. Heidelberg Eastern, Inc.,* 470 F.Supp. 1181, 1184 (E.D.N.Y.1979) (noting that the subsidiary could request employees from the parent, and the parent had the "absolute privilege" of appointing employees to the subsidiary, including its president). If such routine connections among corporate affiliates necessitated a finding of interrelated operations, most large corporate families would count as single enterprises for Title VII purposes. Even if the facts as alleged by plaintiffs are true, the evidence is insufficient for a reasonable factfinder to find for plaintiffs on this prong.

**E. Common Management**

[9] Common management and common ownership, the last two prongs of the single employer test, "are less important as they *254 represent ordinary aspects of the parent-subsidiary relationship." *Meng v. Ipanema Shoe Corp.,* 73 F.Supp.2d 392, 403 (S.D.N.Y.1999). Thus, "the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Id.,* quoting *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 778 (5th Cir.1997).

[10] As to common management, plaintiffs first point out that Paulo Costa, CEO of Corporation, was formerly the CEO of NPC, and that other officers have moved from one corporation to the other. This is not "common" management. As a general matter, "the fact that a parent assists a subsidiary's employee in locating other employment within the company's group does not indicate centralized control of labor relations where the parent typically provides such assistance." *Balut,* 988 F.Supp. at 346 (internal citations omitted). "To hold otherwise would deter a parent from making referrals for valued employees, by transforming a common courtesy into a means of 'control.' " *Id.* This is no less true when the employee in question is CEO.

[11] As to actual overlap, the boards of directors of Corporation and NPC are separate and distinct, although it is undisputed that there is overlap in the membership of the boards. Three members of Corporation's board are also members of NPC's board, and a fourth member of Corporation's board is an NPC officer. (*See* P. Mem. 6, D. Mem. 24.) There is no current overlap of corporate officers, although in the past there has been an overlap of up to three officers, none of whose functions pertained to HR

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
**(Cite as: 244 F.R.D. 243)**

Page 16

or labor relations. (Robinson Decl., D. Ex. 6 ¶ 9.) These facts must be considered "in the light of the well established principle that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership." *Herman,* 18 F.Supp.2d at 312, quoting *Lusk,* 129 F.3d at 779 (citation omitted).[FN4]

> FN4. Plaintiffs' contention that NPC has no "independent" directors adds nothing to this analysis. The testimony on which they rely establishes merely that the directors in question are not "independent directors" in the normal sense of that term, that is, directors not otherwise associated with the company they serve. (Merkelson Dep., Reply. Ex. 3, at 154.)

[12] Plaintiffs "need to prove more than an overlap in boards or management in order to use the single employer doctrine." *Dewey v. PTT Telecom Netherlands, U.S., Inc.,* No. 94 Civ. 5983, 1995 WL 425005, at *3 (S.D.N.Y. Jul.19, 1995). In *Herman,* the court found plaintiffs' evidence of common management insufficient, despite the fact that the two companies shared a CEO and CFO, because the "two entities maintained distinct management structures," 18 F.Supp.2d at 313, and, crucially, there was no evidence that the parent's corporate officers had "participated in any respect in the employment decisions affecting Plaintiffs." *Id.* The same is true here. Thus, plaintiffs' evidence of common management is insufficient on this factor as well.

**F. Common Ownership or Financial Control**

[13] It is undisputed that Corporation wholly owns Novartis Financial, which in turn wholly owns NPC, and that both Corporation and NPC are ultimately owned by Novartis AG, a non-party corporation based in Switzerland. "A parent corporation's possession of a controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability." *Meng,* 73 F.Supp.2d at 403, quoting *Lusk,* 129 F.3d at 778. Thus, this factor alone is insufficient to support an integrated-enterprise theory of liability.

[14] "[T]he law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir.1996). This is not that extraordinary case. Because plaintiffs have failed to show that Corporation and NPC function as a single enterprise, Corporation cannot be held liable for any violation of Title VII by NPC, *255 and Corporation's motion for summary judgment will be granted.[FN5]

> FN5. Because Corporation's motion for summary judgment is granted, there is no need to address its arguments against class certification, which primarily concern the lack of evidence implicating Corporation in any discrimination. For the remainder of the opinion, therefore, references to "defendants" should be understood to mean defendants NPC and Ebeling, who submitted joint briefs on the class certification question.

**II. *Plaintiffs' Motion for Class Certification***

**A. Exhaustion and the Scope of the Class Period**

Defendants raise a threshold argument which, if meritorious, would affect the scope of the evidence relevant to class certification.

A plaintiff may bring an employment discrimination action under Title VII only after filing a timely charge with the EEOC or with "a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e). Defendants argue that plaintiffs did not file a charge with the Equal Opportunity Employment Commission ("EEOC") satisfying the exhaustion requirement until January 25, 2005, and that the class period,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

244 F.R.D. 243
244 F.R.D. 243, 101 Fair Empl.Prac.Cas. (BNA) 522
**(Cite as: 244 F.R.D. 243)**

which plaintiffs say opens July 15, 2002, therefore cannot open until March 31, 2004. (Ltr. from Richard H. Schnadig to the Court, dated June 13, 2007.)

[15][16][17] A class representative can only represent those individuals who have either filed a timely EEOC charge or could have filed one at the time the class representative's charge was filed. "[T]he timely filing of an administrative charge by a named plaintiff in a class action satisfies the charge filing obligation of all members of the class." *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1056 (2d Cir.1990). Such a charge must give "some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim." *Id.* at 1058 (discussing the issue under the ADEA). The plaintiffs' claims must be "reasonably related" to the claims made in the timely EEOC charge, meaning that "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 83 (2d Cir.2001).[FN6] The Second Circuit has described this principle as "essentially an allowance of loose pleading." *Id.* (internal citation and quotation marks omitted).

> FN6. There are two other kinds of claims that may be considered "reasonably related": those alleging "retaliation by an employer against an employee for filing an EEOC charge," and those alleging "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). Neither is at issue here.

Plaintiffs argue that the EEOC charge of plaintiff Amy Velez, filed on July 15, 2003, and the November 10, 2004 charge filed by plaintiff Michelle Williams, satisfied the exhaustion requirement.[FN7] Defendants contend that these charges do not raise the same claims raised by the class, and that the earliest relevant EEOC charge by a putative class representative is the January 25, 2005 charge filed by Jennifer Waxman-Recht. (Schnadig Ltr. at 3 & Ex. 1.) If Waxman-Recht's EEOC charge is the first charge satisfying the exhaustion requirement, the class period could open no earlier than March 31, 2004, which is 300 days before Waxman-Recht's charge was filed. *See* 42 U.S.C. § 2000e-5(e)(1) (establishing 300-day filing period for certain states).

> FN7. Defendants argue that Velez's charge cannot support class claims because it was "never perfected"-meaning that the EEOC dismissed the charge on August 24, 2004 for failure to file a timely charge. (Schnadig Ltr. Ex. 3.) The EEOC, however, withdrew this determination upon Velez's submission of evidence that the charge had in fact been timely filed, and the reason for dismissal was "altered to reflect an administrative dismissal of the charge." (Sanford Ltr. Ex. B.) Thus, there is no basis in the record on which to conclude that Velez's charge was not timely filed.

Velez's charge alleges, on behalf of herself and a putative class of women at NPC, that NPC discriminates against her as "part of a continuing pattern and practice of discrimination against female Novartis employees, including but not limited to subjecting female employees to a sexually hostile work *256 environment, harassment, and denying female employees the full rights afforded to them under the FMLA."(Schnadig Ltr. Ex. 2.) Another charge, filed by Michelle Williams on November 11, 2004, makes the same claims, on behalf of Williams and the class. It also claims that the "pattern and practice" of discrimination includes "denying female employees promotions and promotional opportunities in favor of less qualified male employees." (Schnadig Ltr. Ex. 4.)

[18] Defendants argue that claims of compensation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.