UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMY VELEZ, SONIA KLINGER, PENNI ZELINKOFF, MINEL HIDER TOBERTGA, MICHELLE WILLIAMS, JENNIFER WAXMAN-RECHT, KAREN LIGGINS, LORI HORTON, HOLLY WATERS, STEPHANIE CATES, WENDY PINSON and ROBERTA VONLINTEL, | ) ) ) ) ) ) ) ) ) ) | |
| Individually and on Behalf of Others Similarly Situated, | ) ) ) | 04 Civ. 09194 (GEL) |
| PLAINTIFFS, | ) ) ) | |
| v. | ) ) | |
| NOVARTIS CORPORATION and NOVARTIS PHARMACEUTICAL CORPORATION, | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

## DECLARATION OF SUE EARL

I, Sue Earl, do hereby swear and affirm as follows:

1. I make this Declaration based upon personal and professional knowledge.

2. I am over 21 years of age and fully competent to make this Declaration. My address is 115 Conestoga Trail, Sparta, New Jersey 07871 and my telephone number is (973) 729-0754.

3. I am a member of a protected class, female.

## Declaration of Sue Earl

4. I worked for Novartis in New Jersey, New York and Pennsylvania from approximately July 1991 until my resignation in March 2005. During that time, I held the positions of Long-term Care Sales Representative and Acute Care Accounts Manager, and served as a Field Sales Trainer and a member of the Market Advisory Board.

5. In the course of my employment, Novartis has subjected me to discrimination in employment based on my gender, female, by denying me promotions in favor of less senior, less qualified male employees and subjecting me to disparate terms and conditions of employment, a hostile work environment, and other forms of discrimination.

6. In approximately 1997, I became pregnant and began to experience first-hand how difficult it is to be pregnant at Novartis. For example, I served the role of Field Sales Trainer at Novartis before my pregnancy. As a Field Sales Trainer, I had greater responsibilities, including training other Sales Representatives, and was supposedly being groomed for management positions. Even though the Field Sales Trainer role was supposed to be a two year rotation, I was removed from the role after only one year when I became pregnant. I believe that I was prematurely removed from the role because I was going to be taking maternity leave.

7. Further, I began to be subjected to much closer scrutiny after I became pregnant. Specifically, if I was a few minutes late to a meeting, I observed that other employees and managers noted my tardiness. Conversely, male employees and non-pregnant female employees were not held to such strict standards. In addition, during my pregnancy, the Vice President of Acute Care, Rob Harrington, rode along with me during my sales calls. While I was ready to begin working at 7:30 a.m., Mr. Harrington did not arrive until 8:30 a.m., at which time we began the day. During the ride along, I mentioned to Mr. Harrington that I was pregnant. Mr. Harrington ended the ride along in the early afternoon, because he told me he had to catch a flight. However, after the ride along, Mr. Harrington wrote a memo to management stating that he was trying to analyze why employees were not able to make five sales calls each day and that, after riding along with a Sales Representative, he determined it was because employees were starting their days late and ending early. Because other managers inquired as to which Sales Representative was being referenced in Mr. Harrington's memo, my reputation was unfairly tarnished.

## Declaration of Sue Earl

8. During my career with Novartis, I was also denied promotions in favor of less qualified male employees. For example, in approximately 2002, while I was working in the Acute Care division, John Hawkins became the Eastern Regional Account Manager. At approximately the same time, Novartis was creating an Acute Care "Associate Director" position, in which I was extremely interested. My manager, Ken Notaro, also considered me his leading candidate for the position. When I interviewed with Mr. Hawkins, he told me that he was hesitant to promote me because I was in the Pennsylvania district, which was not performing well. However, I was transferred to the Pennsylvania district only several months before the interview, having previously worked very successfully in the New York district, which was the number one district in the nation in 2000 and 2001. In fact, I had been transferred because Novartis needed a sales representative who could boost the Pennsylvania district's performance. Even though I explained this to Mr. Hawkins, he continued to object to my promotion because of Pennsylvania's sales numbers.

9. Later that evening, I received a voicemail from Mr. Hawkins that they had reached a decision and he had good news to share with me. When I spoke with Mr. Hawkins, however, he informed me that a male employee, Dan Cullman, received the promotion. Mr. Cullman worked in Corporate Accounts and did not have the relevant experience that I had. When I pointed out that Mr. Cullman did not have Acute Care knowledge, as Mr. Hawkins was well aware, Mr. Hawkins told me that he was counting on me to train Mr. Cullman in his new position. At a meeting shortly afterwards, numerous other employees were joking that I did not receive the promotion because I did not "have a penis." Following this denial of promotion in 2002, I continued to excel in my new district and, in fact, was ranked the top Sales Representative in the country in 2003.

10. As the Acute Care Associate Director, Mr. Cullman favored male employees and subjected female employees to harsher treatment. For example, he harassed me and gave me a lower rating on my annual review for being approximately one minute late to a meeting, even though Mr. Cullman had shown up 1.5 hours late to a meeting on another occasion. Further, because of his lack of relevant experience, Mr. Cullman is currently unable to perform his job competently. I know of several female employees who are attempting get Mr. Cullman removed from his position.

## Declaration of Sue Earl

11. In addition, when I expressed my interest in a position in the Home Care division to Mr. Hawkins, he pointed out that the position required a great deal of travel and commented that the travel would not suit me well because I had four children. I do not believe that managers prevented male employees from advancing their careers with Novartis because they had children.

12. Additionally, in 2002, I was one of approximately four employees who received the Career Achievement Award for being an "advanced" performer who had ten or more years with the company. At the meeting during which I collected my award, Vice President Rob Harrington asked me whether I noticed that I was the only female on stage. Further, at the end of 2002, my performance was rated "solid," even though I had received this award for my advanced performance. Sales Representatives receive ratings of "needs improvement," "solid," "advanced," or "exceptional." Had I received the "advanced" rating that I clearly deserved, I would have been entitled to an additional $30,000 in commission. However, because I was rated "solid," I was denied the $30,000 commission.

13. The following year, in 2003, I was ranked the number one Sales Representative in the country. However, Mr. Hawkins selected a male employee as the "exceptional" performer. As a result, this male employee received an additional $10,000 that I was denied.

14. In approximately 2004, when Novartis transferred me to the New York district, Regional Manager John Hawkins falsely stated that I was extremely upset and emotional because of the transfer and was crying to my clients because I had to leave them. In fact, I had never cried and was not upset. Further, when I asked my clients whether they gave that false information to Mr. Hawkins, they said they had not and were as confused as I was.

15. I also learned of Novartis' hostility towards female employees in March 2005, shortly before I left Novartis, when a female candidate was interviewing for a position with Novartis. This woman confided in me that the male manager who interviewed her inappropriately interrogated her about her personal life during the interview, for example, asking her when she planned on having more children.

16. In addition, many female coworkers told me that Mr. Hawkins frequently touched them in a way that made them uncomfortable, including putting his arm around them and touching their hair.

## Declaration of Sue Earl

17. During my employment with Novartis, I contacted Human Resources on several occasions to complain about the discrimination I was experiencing. I first contacted Human Resources in approximately 2002 about manager Joe Bernauer, who was believed to be incompetent by many employees. It became common knowledge among my coworkers and managers that I had complained. As a result, I believe that I was singled out by Mr. Hawkins because he and Mr. Bernauer belonged to the same "good old boys'" network at Novartis. In fact, at a dinner in 2003 during which Mr. Hawkins became extremely drunk, he stood up, looked directly at me and announced, "Joe Bernauer is my number one guy and if anyone messes with him, they have to mess with me." I believed that this statement was in direct reference to my complaint to Human Resources about Mr. Bernauer. Mr. Bernauer was eventually removed from his position due to his incompetence as a manager.

18. In addition, Mr. Hawkins made threatening comments, such as telling me that I could go to Human Resources, but that Human Resources works for him. When I complained about being denied the Acute Care Associate Director position in 2002, to my knowledge, Human Resources took no action in response to my complaint.

19. I believe the gender discrimination that I have suffered at Novartis is consistent with the discrimination suffered by other female employees of Novartis.

I DECLARE under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

5/24/05
Date

Sue Earl

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2008, a copy of the foregoing was filed electronically. Notice of filing will be sent to the following parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

>Allyson Marie Smith
>**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C**
>10 Madison Avenue, Suite 402
>Morristown, NJ 07960
>
>*Attorney for Novartis Consumer Health, Inc.*

>\_\_\_/s/ Steven Wittels\_\_\_
>Steven Wittels