**Z**

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

**H**
Cardinale v. Southern Homes of Polk County, Inc.
M.D.Fla.,2008.

United States District Court, M.D. Florida,
Tampa Division.
Lori A. CARDINALE, Plaintiff,
v.
SOUTHERN HOMES OF POLK COUNTY, INC.,
a Florida Corporation and Edward H. Laderer, Jr.,
Defendants.
**No. 8:06-CV-1295-JDW-MSS.**

March 19, 2008.

Travis R. Hollifield, Winter Park, FL, for Plaintiff.
J. Carlton Mitchell, Mahlon H. Barlow, Sivyer,
Barlow & Watson, PA, Tampa, FL, Gregory Alan
Hearing, Thompson, Sizemore, Gonzalez & Hear-
ing, PA, Tampa, FL, for Defendants.

### ORDER

JAMES D. WHITTEMORE, District Judge.
*1 **BEFORE THE COURT** are Defendants' Mo-
tion for Summary Judgment (Dkt.45), to which
Plaintiff has responded in opposition (Dkt.72) and
Plaintiff's Amended Dispositive Motion for Sum-
mary Judgment (Dkt.68), to which Defendants have
responded in opposition (Dkt.74). Upon considera-
tion, Defendants' Motion for Summary Judgment
(Dkt.45) is **GRANTED** and Plaintiffs' Motion for
Summary Judgment is **DENIED.**Based on the un-
disputed material facts, Defendant Southern Homes
did not have "50 or more employees for each work-
ing day during each of 20 or more calendar work-
weeks in the current or preceding calendar year"
and therefore did not constitute an "employer" sub-
ject to the FMLA. 29 U.S.C. § 2611(4)(A)(I).

### Background

Plaintiff, Lori Cardinale, began working for De-
fendant Southern Homes of Polk County, Inc.

(Southern Homes), a residential builder, in 2004.
(Dkt. 49, Masters Aff. ¶¶ 10, 45; Dkt. 56, Cardinale
Aff. ¶ 3). In 2005, Plaintiff became pregnant.
(Cardinale Aff. ¶ 4). Her expected delivery date
was October 13, 2005. (Cardinale Aff. ¶ 9). On
September 2, 2005, Plaintiff's doctor ordered her to
the hospital emergency room. (Cardinale Aff. ¶¶
8-10). Plaintiff was admitted to the hospital where
she was treated and released two days later with in-
structions to stay on bed rest until delivery.
(Cardinale Aff. ¶¶ 10-11). As a result, Plaintiff
began her maternity leave on September 2, 2005.
(Masters Aff. ¶ 46). On or about September 16,
2005, Defendant Edward Laderer notified Plaintiff
that Southern Homes would give her eight weeks of
unpaid leave beginning on September 2, 2005, and
that if she did not return after eight weeks she
would no longer work for Southern Homes. (Dkt.
57, Ex. B-6, Laderer Depo. at 253).

Plaintiff gave birth on September 28, 2005.
(Cardinale Aff. ¶ 14). Plaintiff failed to return to
work eight weeks after she began her maternity
leave on September 2, 2005 and was terminated.
(Cardinale Aff. ¶ 25, Masters Aff. ¶ 47). Plaintiff
alleges that Defendants' failure to notify her of her
rights and to allow her twelve weeks of leave viol-
ates the Family and Medical Leave Act (FMLA)
(Dkt.2, ¶¶ 37, 39). Plaintiff also contends that De-
fendants' refusal to allow her to participate in its
Employee Home Buying Program was in retaliation
for attempting to assert her FMLA rights. (Dkt. 2, ¶
39; Dkt. 72, pp. 18-19).[FN1]

> FN1. The Employee Home Buying Pro-
> gram allows eligible employees to pur-
> chase a lot in a Southern Homes residential
> community and have a home built by
> Southern Homes for the cost of materials
> and building expenses plus 10%.
> (Cardinale Aff. ¶ 18). Plaintiff alleges, and
> Defendants do not dispute, that she was
> eligible to participate in this program.
> (Cardinale Aff. ¶ 20). Plaintiff expressly

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

asserts that she does not contend that her termination or failure to be rehired constitute retaliation or discrimination under the FMLA. (Dkt.72, p. 18). Her sole complaint with regard to retaliation and discrimination is that Defendants refused to allow her to participate in the Employee Home Buying Program because they wanted to see whether she would return to work after her maternity leave before allowing her to participate. (Dkt.72, pp. 8-9).

### Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case."*Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259-60 (11th Cir.2004) (internal citations omitted)."An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party."*Id.* at 1260.All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1280 (11th Cir.2004).

*2 Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.*Celotex,* 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the

claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson,* 477 U.S. at 249;*Morrison v. Amway Corp.,* 323 F.3d 920, 924 (11th Cir.2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party.*Id.*

### Discussion

Plaintiff brings her claims pursuant to the FMLA, 29 U.S.C. § 2601 *et seq.* The FMLA provides, in pertinent part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter."29 U.S.C. § 2612(a)(1)(A).[FN2]"Circumstances may require that FMLA leave begin before the actual date of birth of a child. An expectant mother may take FMLA leave pursuant to paragraph (a)(4) of this section before the birth of the child for prenatal care or if her condition makes her unable to work."29 C.F.R. § 825.112(c).[FN3] Except in certain circumstances not applicable to this litigation, an eligible employee who takes leave is entitled, on return, "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1). The FMLA makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter" or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."29 U.S.C. § 2615.

> FN2. Pursuant to 29 U.S.C. § 2612(c), the leave may be unpaid.

> FN3.29 C.F.R. § 825.112, which mirrors 29 U.S.C. § 2612(a)(1)(D), provides that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

an employer covered by the FMLA is re-
quired to grant leave to an eligible employ-
ee "[b]ecause of a serious health condition
that makes the employee unable to perform
the functions of the employee's job."

Section 2615(a) sets forth prohibited acts under the
FMLA and creates two distinct types of claims: in-
terference claims and retaliation claims. 29 U.S.C.
§ 2615(a); *Hurlbert v. St. Mary's Health Care Sys.,*
439 F.3d 1286, 1293 (11th Cir.2006). In an interfer-
ence claim, "an employee asserts that his employer
denied or otherwise interfered with his substantive
rights under the [FMLA] ."*Id.* (citations omitted).
In a retaliation claim, "an employee asserts that his
employer discriminated against him because he en-
gaged in activity protected by the
[FMLA]."*Id.*(citations omitted). Plaintiff's claim
that she was entitled to notification of her FMLA
rights and twelve weeks of leave is an interference
claim. Plaintiff's claim that she was prohibited from
participating in the Employee Home Buying Pro-
gram is a retaliation claim.

### Defendants are not "employers" pursuant to the FMLA

**\*3** Defendants argue that Southern Homes,
Plaintiff's employer, is not an "employer" subject to
the FMLA because it did not have the requisite 50
employees and that Plaintiff is not an "eligible em-
ployee" as defined by the Act. The FMLA defines
an "employer" as "any person engaged in com-
merce or in any industry or activity affecting com-
merce who employs 50 or more employees for each
working day during each of 20 or more calendar
workweeks in the current or preceding calendar
year."29 U.S.C. § 2611(4)(A)(I).FN4

FN4. The alleged FMLA violation oc-
curred in 2005. It is undisputed that De-
fendants did not have 50 or more employ-
ees during 20 or more workweeks in 2004.
(Dkt.45, p. 3). The relevant year of inquiry
is 2005.

In order to reach the necessary 50 employees to
subject Southern Homes to the FMLA, Plaintiff
counts two distinct groups of individuals, sixteen
part-time student workers who worked summers for
Southern Homes, and three employees of LM Prop-
erties of Polk County, Inc., a land acquisition cor-
poration owned by Laderer and Gregory
Masters.FN5The parties agree that unless both
groups of individuals are counted, Southern Homes
does not meet the threshold of 50 employees under
the FMLA.FN6

FN5. Lederer and Masters also own South-
ern Homes. (Masters Aff. ¶ 37). Defend-
ants argue that, as principals of Southern
Homes, they should not be counted. De-
fendants also argue that former salesper-
sons who appear on payroll records be-
cause they received post-termination com-
missions should not count toward the
50/20 requirement. Plaintiff concedes that
these employees do not count. (Dkt.72, p. 2).

FN6. Defendants concede that if the part-
time student workers and employees of
LM Properties are counted, Southern
Homes had 50 or more employees for 21
weeks in 2005. (Dkt. 49, Masters Aff. Ex.
A). However, if the part-time student
workers and employees of LM Properties
are not "employees," then Southern Homes
is not an "employer" of "50 or more em-
ployees for each working day during each
of 20 or more calendar workweeks."

### Student Workers

The FMLA provides that the term "employee" has
the same meaning as in the Fair Labor Standards
Act (FLSA).29 U.S.C. § 2611(3). The FLSA
defines the term employee as "any individual em-
ployed by an employer."29 U.S.C. § 203(e)(1). The
term "employ" means "to suffer or permit to
work."29 U.S.C. § 203(g)."When determining
whether one is an 'employee' under the FMLA,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

Page 4

courts apply the same test used with regard to the Fair Labor Standards Act ."*Demers v. Adams Homes of Northwest Fla., Inc.,* No. 6:06-cv-1235-Orl-31KRS, 2007 WL 3333440, at *3 (M.D.Fla. Nov.7, 2007) (citing *Wascura v. Carver,* 169 F.3d 683, 686 (11th Cir.1999); *Watson v. Drummond Co., Inc.,* 436 F.3d 1310, 1316 (11th Cir.2006))."Under the FLSA, employment is defined with striking breadth."*Demers,* 2007 WL 3333440, at *2 (citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992))."The suffer or permit to work standard ... has been called the broadest definition of employee that has ever been included in one act."*Antenor v. D & S Farms,* 88 F.3d 925, 929 n. 5 (11th Cir.1996) (citations omitted).

To determine whether one is an "employee" pursuant to the FMLA, courts must look to the "economic reality of whether the putative employee is economically dependent upon the alleged employer."*Demers,* 2007 WL 3333440, at *2 (citations omitted). This inquiry requires the Court to examine six factors: 1) the degree of control exercised by the alleged employer, 2) the relative investments of the alleged employer and employee, 3) the degree to which the employee's opportunity for profit and loss is determined by the employer, 4) the skill and initiative required in performing the job, 5) the permanency of the relationship, and 6) the degree to which the alleged employee's tasks are integral to the employer's business. *Id.* at *3 (citations omitted).[FN7]

> FN7. Defendants contend that the "economic realities" test does not apply because they concede that the student workers were not independent contractors. (Dkt.74, p. 8). While caselaw applying the "economic realities" test naturally arises in the context of a dispute regarding whether a worker is an employee or an independent contractor, Defendants have cited no authority for the proposition that the "economic realities" test is only applicable

when an employer takes the position that a worker is an independent contractor. Defendants' argument that the student workers were neither employees nor independent contractors is unpersuasive. Defendants argue that "[t]he students should not be counted toward Southern Homes' employee count because of the nature [of] their relationship with Southern Homes and of the work they performed."(Dkt.74, p. 8). The "economic realities" test examines these factors and will be applied in this case.

The FMLA does not distinguish between part-time and full-time employees. Rather, the focus is on whether an employer maintains an employment relationship with the individuals in question. *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (11th Cir.1997)."Part-time employees, like full-time employees, are considered to be employed each working day of the calendar week, as long as they are maintained on the payroll."29 C.F.R. § 825.105(c). Although an employment relationship is most readily demonstrated by an individual's appearance on an employer's payroll, the existence of an employment relationship is determinative, not an appearance on the payroll. *Walters,* 519 U.S. at 206, 211.

*4 Ultimately, the test is whether an employment relationship existed between the employer and employee. *Walters,* 519 U.S. at 207 ("[A]n employer 'has' an employee if he maintains an employment relationship with that individual.").[FN8] In this case, the representative student workers had an "employment relationship" with Defendants and therefore are countable as employees under the FMLA's broad definition.[FN9]*See Clark v. St. Joseph's/Candler Health Sys.,* No. 4:05-CV-1 19, 2006 WL 2228929, at *4 (S.D.Ga. Aug.3, 2006), *aff'd* 225 F. App'x 799 (11th Cir.2007) (summer employees counted as employees during the period that they had employment relationship with employer); *Conley v. Bostic,* No. I:90-CV-998-JEC, 1993 WL 741854 n. 3 ("Title VII requires consider-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

ation of all employees of a defendant, whether full-time or part-time, temporary or permanent, and regardless of the length of time they are employed."). Accordingly, the 16 student workers are included in Southern Homes' employee count.

> FN8. "Under the interpretation we adopt, ... all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when. He is counted as an employee for each working day after arrival and before departure." *Walters,* 519 U.S. at 211.

> FN9. Plaintiff requests that 16 student workers be counted as employees for the purposes of determining whether Southern Homes had the requisite number of employees needed to be covered by the FMLA. She claims that she took depositions of three student workers, Jessie Newbolt, Tyler Newbolt and Zach Miller, as a representative sample of Southern Homes' student workers. (Dkt. 68, at 17). Defendants do not contend that Jessie Newbolt, Tyler Newbolt, and Zach Miller are not representative of the student workers. Thus, all 16 student workers are countable.

### 1. Degree of control

"Control is only significant when it shows an individual exerts such control over a meaningful part of the business that she stands as a separate economic entity." *Usery v. Pilgrim Equip. Co., Inc .,* 527 F.2d 1308, 1312-13 (5th Cir.1976). The record evidence does not reflect substantial control on the part of the student workers. The student workers were assigned to work at either Southern Homes' main office or at construction sites. (Masters Aff. ¶ 27). The student workers kept time sheets and were paid hourly. (Dkt. 52, J. Newbolt Depo. at 41; Dkt. 51, T. Newbolt Depo. at 98-99; Dkt. 50, Miller Depo. at 32). Before they were paid, their supervisors had

to sign off on their time sheets. (J. Newbolt Depo. at 41, 110; T. Newbolt Depo. at 54-55, 72-73, 82-83, 115; Miller Depo. at 32). The student workers had schedules which were set subject to their availability and desired work hours and approval by Southern Homes. (J. Newbolt Depo. at 25-26, T. Newbolt. Depo at 60, 72-73, 82-83, 115; Miller Depo. at 32; Dkt. 57, Ex. B-3, Lim Depo. at 303). If the students wanted to deviate from that schedule, they were required to obtain their supervisor's approval. (T. Newbolt Depo. at 72-73, 83, 115). If they were unable to meet their schedule, they were required to call a supervisor and inform them that they were unable to work. (T. Newbolt Depo. at 73, 82-83, 115). Time off was approved in advance. (T. Newbolt Depo. at 60). They did not have discretion to complete their assignments any way they wanted, but were required to follow the instructions of their supervisors. (J. Newbolt Depo. at 143; T. Newbolt Depo. at 28, 41-44, 115; Miller Depo. at 35). They performed work such as making copies, delivering and picking up documents, filling out paperwork, running errands, filing, picking up trash, touch-up painting, moving building materials between houses, cleaning up job sites, and sweeping out houses. (Masters Aff. ¶ 27). This factor weighs in favor of an employer-employee relationship.

### 2. Relative Investments

**\*5** The student workers did not provide their own supplies or equipment. (J. Newbolt Depo. at 53-54; T. Newbolt Depo. at 42-47, 71-72; Miller Depo. at 36-37). They often used their own vehicles to run errands, but were reimbursed for mileage. They provided their own automobile insurance. (J. Newbolt Depo. at 43, 54; T. Newbolt Depo. at 62-63). This factor weighs in favor of an employer-employee relationship. *See Demers,* 2007 WL 333440, at * 4 (that defendant paid for the majority of plaintiff's supplies weighed in favor of an employer-employee relationship); *see also Sakacsi v. Quicksilver Delivery Sys., Inc.,* No. 8:06-cv-1297-T-24MAP, 2007 WL 4218984, at *6 (M.D.Fla.2007) ( [B]ecause a car is an essential

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415

**2008 WL 788460 (M.D.Fla.)**

vehicle in most households, the drivers' investment of providing their own cars, gas, maintenance, and automobile insurance is not entirely persuasive") (citations omitted). As in *Sakacsi,* there is no evidence that the student workers "purchased or used an automobile exclusively" for work purposes.

### 3. Opportunity for Profit and Loss

As previously discussed, the student workers were paid on an hourly basis and worked on a pre-arranged schedule. They had no control over their profit and loss. This factor weighs in favor of an employer-employee relationship. *See Sakacsi,* 2007 WL 4218984, at *7 (quoting *Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 267 (5th Cir.1987) ("The fact that an individual could request more work or re-negotiate his or her compensation is not indicative of independent contractor status, because any employee can do those things as well.")).

### 4. Skill and Initiative Required

"A lack of specialization indicates that an individual is an employee, not an independent contractor."*Molina v. S. Fla. Express Bankserv, Inc.,* 420 F.Supp.2d 1276, 1286 (M.D.Fla.2006) (citing *Halferty,* 821 F.2d at 265). The work performed by the students, as described above, did not require specialized skills. This factor weighs in favor of an employer-employee relationship. *Compare Freund v. Hi-Tech Satellite, Inc.,* 185 F. App'x 782, 784 (11th Cir.2006) (plaintiff had special skills to properly install home satellite and entertainment systems).

### 5. Permanency of the Relationship

Defendants contend, and Plaintiff does not dispute, that "[t]here was never any expectation or understanding that Southern Homes would have any additional work ... during a particular school year or from one summer to the next."(Masters Aff. ¶ 26). A student worker who desired to return to Southern

Homes for the following summer would call Masters and ask whether work was available. (T. Newbolt Depo. at 36, Miller Depo. at 55). Plaintiff alleges, and Defendants do not dispute, that Tyler Newbolt worked for Southern Homes every summer from 1999 to 2006 and during two full academic years. (Dkt.68, p. 21). After working during the summer of 2005, Zach Miller returned to Southern Homes as a construction superintendent. (Miller Depo. at 55).

*6 "Florida is an 'at-will employment' State, which means that employment relationships are generally terminable at will by either party."*Demers,* 2007 WL 3333440, at *5. Thus, the "permanency of the relationship" factor provides little insight into whether there is an employment relationship.*Id.; see also Sakacsi,* 2007 WL 4218984, at *8;*Harrell v. Diamond A Entertainment, Inc.,* 992 F.Supp. 1343, 1352 (M.D.Fla.1997). Part-time, summer workers enjoy an employment relationship with their employers, notwithstanding the part-time and temporary nature of their employment. *See Clark v. St. Joseph's/Candler Health Sys .,* supra', *Conley v. Bostic, supra.*

### 6. Degree to which the Student Workers' Tasks were Integral

"The extent to which the task performed by the alleged employee was integral to the business of the employer is a factor indicating dependence."*Harrell,* 992 F.Supp. at 1352. If an employee's tasks are an integral part of the employer's business, this factor weighs in favor of finding an employer-employee relationship. *Sakacsi,* 2007 WL 4218984, at *8. The tasks performed by the student workers were not necessarily integral to Southern Homes' business. However, even if the tasks were not integral, "this does not overcome the employment relationship clearly suggested by the other factors."*McLaughlin v. Stineco, Inc.,* 697 F.Supp. 436, 449 (M.D.Fla.1988) (finding employment relationship where the workers were supervised by the defendants or their agents, had no opportunity for

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

profit or loss, and did not generally invest in equipment).

In sum, the summer part-time student workers enjoyed an employment relationship with Southern Homes and are properly counted under the FMLA.FN10

> FN10. Defendants' calculation of Southern Homes' employees excludes students workers and temporary employees who did not work every working day of a given week. (Masters Aff. ¶¶ 25, 29, Ex. A). An employee must be counted if the employer and the employee have an employment relationship, regardless of whether the employee received compensation every day of the workweek in question. *Walters,* 519 U.S. 202, 117 S.Ct. 660, 136 L.Ed.2d 644. As discussed, the student employees had an employment relationship with Southern Homes. However, since counting student workers and temporary workers who did not work every day in a given week (but not LM Properties employees) would not put Southern Homes' employee count over the 50 employee/20 workweek threshold, inclusion of these employees does not alter the outcome.

**Employees of LM Properties**

LM Properties of Polk County, Inc. is a corporation in the business of acquiring and selling land to developers. (Dkt. 49, Masters Aff. ¶ 37). Southern Homes has no ownership interest in LM Properties. LM Properties, like Southern Homes, is owned by Laderer and Masters. Plaintiff contends that Southern Homes and LM Properties are interrelated to a degree that Southern Homes and LM Properties should be considered a single employer under the FMLA, and that the employees of LM Properties should be counted in determining whether Southern Homes is subject to the FMLA.

LM Properties maintains and leases several residen-

tial and commercial properties, which does not involve Southern Homes "in any way." (Masters Aff. ¶ 40). The majority of land acquired by LM Properties is sold to Southern Homes, although it sells to other residential developers (Masters Aff. ¶ 37-38). LM Properties also acquires and sells commercial properties, "which does not involve Southern Homes in any way" (Masters Aff. ¶ 39). "LM Properties is fully capitalized and operates fiscally independent from Southern Homes" (Masters Aff. ¶ 31, 41).

As of May 1, 2005, LM Properties had three employees (Masters Aff. ¶ 33-34). At that time, Michael Peeples was LM Properties' manager, Lynda Hutto was the controller of LM Properties and Luke Markham was a joint employee of LM Properties and Southern Homes. Notwithstanding that Southern Homes and LM Properties are separate and distinct corporate entities and that Plaintiff was never an employee of LM Properties, Plaintiff argues that these three employees of LM Properties should be included in Southern Homes' employee totals in order to meet the qualifying 50 or more employees during 20 or more calendar workweeks to subject Southern Homes to the FMLA. Plaintiff contends these three individuals should count as employees of Southern Homes under Plaintiff's theory of horizontal integration. Plaintiff's contentions are unpersuasive. Based on the undisputed facts of record, a jury could not reasonably conclude that these separate corporations are "highly integrated with respect to ownership and operations" such that they could be counted as a single employer under the FMLA. *Clark v. St. Joseph's/Candler Health Sys.,* 225 F. App'x at 800.

*7 "The single employer doctrine is not limited to parent-subsidiary relationships, but the issue becomes more difficult when considering whether two separate corporations owned by a single entity should be considered a single employer ..."*Rogers v. Sugar Tree Prods.,* 7 F.3d 577, 582 (7th Cir.1993), *abrogated on other grounds,*166 F.3d 937 (7th Cir.1999). Plaintiffs alleging horizontal

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

Page 8

rather than vertical integration carry a higher burden. *Keenan v. Matchmaker Intern., Inc. of Mobile,* No. Civ.A. 98-0515-CB-C, 1999 WL 33590522, at * 6 (S.D.Ala. Jan.20, 1999)."It is not enough for plaintiffs merely to show some interrelation among the corporate entities."*E.E. O.C. v. Con-Way, Inc.,* 2007 WL 2610367, 4 (D.Or. Sept.4, 2007). Accordingly, Plaintiff is required to present evidence that the corporate entities are interrelated to an unusual degree. *Id*

Pursuant to 29 C.F.R. § 825.104(c)(2):

> Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:
>
> (i) Common management;
>
> (ii) Interrelation between operations;
>
> (iii) Centralized control of labor relations; and
>
> (iv) Degree of common ownership/financial control.

When applying the "integrated employer" test, "not every factor need be present, and no single factor is controlling."*Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332, 1341 n. 5 (11th Cir.1999). However, "analysis of the four factors should be informed by certain economic concerns. This is because the 50-employee exception is an economic one rooted in protecting small businesses, and the purpose of 'integrated employer' test is to ensure that a defendant has not structured itself to avoid labor laws."*Engelhardt v. S.P. Richards Co., Inc.,*

472 F.3d 1, 5 (1st Cir.2006) (citing *Papa v. Katy Indus., Inc.,* 166 F.3d 937, 942 (7th Cir.1999).

First of all, that the two corporations are owned by the same two individuals does not establish an interrelatedness such that they may be considered a single employer under the FMLA. Common ownership alone is not sufficient to establish that two entities are a "single employer" for FMLA purposes.*Morrison v. Magic Carpet Aviation,* 383 F.3d 1253, 1257 (11th Cir.2004)."The 'common management' factor generally turns on whether there are common directors and officers" for both entities. *McCulley v. Allstate Tech. Servs.,* No. 04-0115-WS-B, 2005 WL 1475314, at * 28 (S.D.Ala. June 21, 2005) (citing *McKenzie v. Davenport-Harris Funeral Home,* 834 F.2d 930, 933 (11th Cir.1987); *Fike v. GoldKist, Inc.,* 514 F.Supp. 722, 727(N.D.Ala.1981), *aff'd,*664 F.2d 295 (11th Cir.1981)).

*8 Laderer and Masters are officers and directors of Southern Homes and LM Properties and the sole shareholders of Southern Homes and LM Properties. (Laderer Depo. at 53; Dkt. 57, Ex. B-8, Masters Depo. at 32-33, 37). Sanghee Lim served as an officer of both companies. (Masters Depo. at 226; Lim Depo. at 99-100, 104-105). Based on these facts, the common ownership and management factor is arguably met. Notwithstanding, Plaintiff has not demonstrated that Southern Homes and LM Properties are integrated to a degree which renders them a "single employer" for FMLA purposes.

The undisputed facts relied on by Plaintiff to support her contention that Southern Homes and LM Properties are an integrated single employer are: Southern Homes and LM Properties share adjoining office suites and LM Properties' employees use Southern Homes' kitchen and bathroom; LM Properties' employees use Southern Homes' copy machine and computers; Southern Homes purchases basic office supplies such as pens and paper for the use of both companies; Southern Homes and LM Properties share a telephone system and email system; Southern Homes and LM Properties use the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

Page 9

same third party vendor, Outsource Management Solutions, for processing payroll and other administrative and human resource functions; the companies use the same employee handbook; Southern Homes maintains all personnel files; the companies are covered by the same general premises liability insurance policy; the companies share an automobile insurance policy; LM Properties' accountant (Lynda Hutto) filled in when Southern Homes' accountant was unavailable, without reimbursement from Southern Homes; the companies pool their employees to obtain dental and vision insurance; employees of both companies participate in the same retirement and profit sharing plan and receive the same benefits; and employee Luke Markham is a joint employee of both companies. (Dkt. 57, Ex. B-1, Hutto Depo. at 1617, 34, 43-44, 76, 137-138, 169, 147-149, 173-174, 206-209; 212; Dkt. 46, Hutto Aff. ¶¶ 6, 7, 9, 10; Dkt. 57, Ex. B-10, Peeples Depo. at 153-155; Dkt. 57, Ex. B-11, Steele Depo. at 39-41; Lim Depo. at 122-124).

Notwithstanding, it is likewise undisputed that Southern Homes and LM Properties occupy separate office suites, separated by a hallway; LM Properties pays its proportionate share of the rent; LM Properties pays for its own utilities; LM Properties pays for its share of services provided by Outsource Management Solutions; each company pays its percentage of the automobile insurance bill; LM Properties pays for its own cellular telephone expense, automotive and travel expenses and specialty employee supplies; the companies file separate tax returns; the companies have separate bank accounts and federal tax identification numbers; the companies conduct separate shareholder meetings; Luke Markham is paid separately by each company according to the amount of time he spends working for each company; Michael Peeples, LM Properties' manager, had no function with Southern Homes and Southern Homes had its own managers "who had no function at LM Properties."(Hutto Aff. ¶¶ 5, 7; Hutto Depo. at 43, 210; Masters Aff. ¶¶ 10, 33-36; Dkt. 75, Laderer Supp. Aff. ¶ 9; Dkt. 76, Masters Supp. Aff. ¶ 6).

*9 Given these undisputed facts, it cannot be said that Southern Homes and LM Properties constitute a single employer under the FMLA. *Con-way,* 2007 WL 2610367 (finding that parent and subsidiaries were not a single employer where they filed consolidated financial statements and tax returns, participated in common pension and benefits plans, shared office space and technical equipment but paid proportionate share of expenses, shared payroll and other administrative services but paid respective costs, and used a single telephone directory, email system and news bulletin system; *Fike,* 514 F.Supp. at 726-27 (rejecting single employer status where companies had no common offices, employees, or telephones, had separate accounting records, financial statements, and tax returns, and where one company reimbursed the other for payroll and other services); *Clark,* 2006 WL 2228929, at *5 (no integration where defendant provided other company with office space, payroll services and access to healthcare and other benefits, where other company maintained its own bank accounts, offices, equipment and storage facilities, business records, and performed its own marketing).

Significantly, LM Properties is not a wholly owned subsidiary of Southern Homes, or vice versa. This is not a situation, as in most cases upholding an integrated single employer finding, where a wholly owned subsidiary is operated and controlled by its parent, or where a subsidiary is controlled by its parent which owns a majority of the subsidiary. *See McKenzie v. Davenport-Harris Funeral Home,* 834 F.2d at 933).[FN11] Rather, based on this record, Southern Homes and LM Properties are shown to operate independently of each other in their day to day business activities. The two corporations maintain separate bank accounts and file separate tax returns. They occupy separate, albeit adjoining office suites. While they share certain things, including a phone system, computers, a copier, insurance policies and employee benefit plans, each corporation pays its proportionate share of those expenses. With one exception, they have separate employees. With respect to the one joint employee, Luke

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

Markham, each corporation pays its proportionate share of Markham's compensation, usually 50/50.

> FN11. Although not cited by Plaintiff, *McKenzie* is nonetheless distinguishable on its facts. In *McKenzie,* in addition to common ownership, the company considered for integration (Protective) owned a majority of stock in the defendant company (Davenport-Harris).*Id.* at 931 n. 1. Additionally, the salary checks for Davenport-Harris were issued by Protective. *Id.* at 931.The two companies advertised themselves as "twins in service." *Id.* at 934.Moreover, the plaintiff in *McKenzie* worked for both companies. Unlike *McKenzie,* none of the evidence presented by Plaintiff in the present case raises a genuine issue of material fact.

The most compelling evidence Plaintiff presents supporting an inference of interrelatedness is the testimony of Lynda Hutto. She testified and avers that the two companies shared a 401K profit sharing plan (Hutto Depo. at 147-148; Dkt. 46, Hutto Aff. ¶ 9). When Hutto left Southern Homes to work for LM Properties and later returned to Southern Homes, she was able to maintain her 401K account and was permitted to retain her accrued vacation benefits. (*Id.* at 149, 169). In addition to the employee profit sharing plan, Southern Homes and LM Properties shared an employee retirement plan and pooled their employees to obtain health, dental and vision insurance (Hutto Aff. ¶ 8). Finally, employees of LM Properties were eligible to participate in Southern Homes' home buying program. (Hutto Aff. ¶ 9).

**\*10** Without more, this evidence does not establish an interrelatedness to an unusual degree, at least to the extent that a jury would be reasonably justified in considering the two corporations a single employer. The 50 employee threshold under the FMLA "is an economic one rooted in protecting small businesses, and the purpose of the 'integrated employer' test is to ensure that a defendant has not

structured itself to avoid labor laws."*Engelhardt v. S.P. Richards Co., Inc.,* 472 F.3d at 5 (citing *Papa v. Katy Indus., Inc.,* 166 F.3d at 942);*E.E.O.C. v. Con-Way, Inc., supra* ("It is common for parent companies and their subsidiaries to have common pension and benefits plans in order to achieve certain economic efficiencies, and courts have held this type of action is not evidence of single employer status."(citations omitted)). Just as it would be "antithetical to the purpose for excepting smaller businesses from liability to impose liability on the parent" under the FMLA when a subsidiary takes economic advantage of the parent's purchasing power, it would likewise be antithetical to the FMLA's 50 employee threshold to subject a small corporation to liability under the FMLA merely because it pools its resources with an unrelated sister corporation to provide employee benefits. *Engelhardt v. S.P. Richards Co., Inc.,* 472 F.3d at 7.[FN12]

> FN12. The First Circuit quoted this explanation from *Papa v. Katy Indus., Inc.,* 166 F.3d 937, 942 (7th Cir.1999)): "Firms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or ownership. The choice between the two modes of integration is unrelated to the exception. Take contractual integration first. A firm too small to have its own pension plan will join in a multi employer pension plan or will in effect pool with other employers by buying an insurance policy...." This does not render them integrated employers. *Cruz-Lovo v. Ryder Sys., Inc.,* 298 F.Supp.2d 1248, 1253 (S.D.Fla.2003), *aff'd,*88 F. App'x 381 (11th Cir.2003).

Small companies like Southern Homes should not be deprived of their exemption from the FMLA simply because they are able to take advantage of certain economies of scale, such as participating in a shared employee benefit plan, so long as they

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415

**2008 WL 788460 (M.D.Fla.)**

maintain their "identity as a small business." *Engelhardt v. S.P. Richards Co., Inc.,* 472 F.3d at 6 (discussing in context of parent/subsidiary). Plaintiff points to no evidence that Southern Homes and LM Properties did not maintain their identities as small businesses. Pooling employees to provide employee benefits is reflective of a desire to capitalize on certain economies of scale and should not, without more, render two distinct corporations a single employer under the FMLA. Similarly, that employees of LM Properties were eligible to participate in Southern Homes' home buying program does not demonstrate an unusual degree of interrelatedness with respect to management, control and operations. Rather, it reflects nothing more than a shared employee benefit available by virtue of the common ownership of the two companies whose business interests compliment each other. Moreover, nothing in this evidence suggests that LM Properties had any involvement in the employment relationship between Plaintiff and Southern Homes. "Facts that show some corporate connection unrelated to the employment relationship have much less significance than facts that tend to show control over employment decisions."*Con-way, supra* at *3.

Finally, Plaintiff does not suggest, and there is nothing in this record to suggest, that these two corporations were formed to avoid the requirements of the FMLA. "Because the law created corporations primarily to limit liability, it is well-settled that courts should be highly deferential to the corporate form and should only disregard it in extraordinary circumstances," such as where separate corporations were formed in order evade the law. *Keenan,* 1999 WL 33590522, at * 5, 6. "[I]n order to conduct a horizontal piercing, the plaintiff must show that the corporate form is but a mirage. The corporate relationships must have been created not to limit liability but to evade or avoid the requirements of the law."*Id.* at *6.

*11 In sum, the undisputed facts do not establish that Southern Homes and LM Properties are interre-

lated to the degree that they constitute a single employer under the FMLA or that these two corporations were created to avoid the requirements of the law. The evidence on which Plaintiff relies to demonstrate an interrelation of operations and centralized control of labor relations does not raise a genuine issue from which a jury could find that Southern Homes and LM Properties constitute an integrated employer. Plaintiff's contention that these two corporations should be horizontally merged merely to reach the 50 employee threshold under the FMLA essentially ignores their separate corporate identities, their separate management and operations, and their separate financial identities. Plaintiff presents no evidence that the shared services and equipment were atypical or the sharing arrangement evidenced an intent by Southern Homes to evade the requirements of law. Accordingly, the employees of LM Properties may not be properly included in Southern Homes' employee count in determining whether Southern Homes is subject to FMLA.

### Counting employees

Eliminating the three employees of LM Properties from Plaintiff's employee count (Dkt.60), Southern Homes had 50 or more employees only for 15 weeks in 2005: the weeks ending May 8th, May 15th, May 22nd, May29th, June 5th, June 12th, June 19th, June 26th, July 3rd, July 10th, July 17th, July 24th, July 31st, August 7th and August 14th. Accordingly, Southern Homes is not an "employer" as defined by FMLA. 29 U.S.C. § 2611(4)(A)(I). Southern Homes is therefore entitled to summary judgment.

Plaintiff also brought claims against Edward Laderer individually. Pursuant to section 261 l(4)(A)(ii)(I), an employer includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."Pursuant to the plain language of the FMLA, a corporate officer or supervisor can be sued in his individual capacity. 29 C.F.R. § 825.104(d); *see*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155 Lab.Cas. P 35,415
**2008 WL 788460 (M.D.Fla.)**

*also Waters v. Baldwin County,* 936 F.Supp. 860, 863 (S.D.Ala.1996) (holding that supervisory employees can be sued in their individual capacities). However, because Southern Homes does not constitute an "employer" inder the FMLA, Laderer could not have acted "in the interest of an employer" pursuant to § 2611(4)(A) (ii)(I). Defendant Edward Laderer is likewise entitled to summary judgment. Accordingly, it is

**ORDERED AND ADJUDGED:**

1) Defendants' Motion for Summary Judgment (Dkt.45) is **GRANTED** .

2) Plaintiff's Amended Dispositive Motion for Summary Judgment (Dkt.68) is **DENIED.**

3) Plaintiff's Motion to Strike Arlene ("Statler") Vuona from Defendants' Amended Witness List and to Strike Her Affidavit from Defendants' Response to Plaintiff's Amended Dispositive Motion for Summary Judgment (Dkt.78) is **DENIED.**

4) Plaintiff's Motion to Strike Reply Argument in Defendants' Response to Plaintiff's Amended Dispositive Motion for Summary Judgment (Dkt.80) is **DENIED.**

**\*12** 5) Defendants' Motion to Strike Plaintiff's Motion to Strike Arlene Vuona from Defendants' Amended Witness List and to Strike Her Affidavit from Defendants' Response to Plaintiff's Amended Dispositive Motion for Summary Judgment (Dkt.83) is **DENIED.**

6) All other pending motions are **DENIED as moot.**

7) The Clerk is directed to enter judgment in favor of Defendants and to close this case.

**DONE AND ORDERED.**

M.D.Fla.,2008.
Cardinale v. Southern Homes of Polk County, Inc.
Slip Copy, 2008 WL 788460 (M.D.Fla.), 155

Lab.Cas. P 35,415

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.