BB

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 816182 (S.D.N.Y.), 162 L.R.R.M. (BNA) 2610
**1999 WL 816182 (S.D.N.Y.)**

Page 1

▷
Rodriguez v. International Broth. of Teamsters, AFL-CIO
S.D.N.Y.,1999.

United States District Court, S.D. New York.
Jaime RODRIGUEZ, Plaintiff,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO; International Brotherhood of Teamsters, Local 813; and Eugene Maney, as Trustee for Local 813 and as an Individual, Defendants.
No. 98 Civ. 8849(JSR).

Oct. 13, 1999.

### MEMORANDUM ORDER

RAKOFF, J.

*1 Plaintiff Jaime Rodriguez sues defendants International Brotherhood of Teamsters, AFL-CIO ("IBT"), Local 813 of the International Brotherhood of Teamsters ("Local 813"), and Eugene Maney, as Trustee for Local 813 and as an individual, for alleged violations of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 412, the IBT and Local 813 constitutions, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* the New York Human Rights Law, N.Y. Exec. Law § 296, and new York defamation law. Defendants move to dismiss the federal claims asserting, *interalia,* that plaintiff has failed to state claims under either the LMRDA or the union constitutions, and that plaintiff has failed to comply with a key procedural prerequisite to the filing of a Title VII action. The Court grants defendants' motion with respect to these federal claims and, declining to exercise supplemental jurisdiction over the remaining state law claims, dismisses plaintiff's complaint in its entirety.

The pertinent facts, as alleged in the Amended Complaint,[FN1] are as follows:

> FN1. Finding the factual allegations in plaintiff's initial Complaint likely to be insufficient to state a claim, and upon the representation of plaintiff's counsel that the necessary allegations could be made, this Court granted plaintiff leave to file an Amended Complaint. *See* transcript, 2/11/99.

At the times here relevant, plaintiff Rodriguez, a Puerto Rican male, was a dues-paying member of the IBT employed by Local 813 as a business agent. Plaintiff was also elected a delegate to the 1996 IBT convention, the first formal event in the presidential contest between incumbent Ronald Carey and challenger James P. Hoffa, Jr. In September, 1996, following that convention, Carey appointed defendant Maney as the new trustee for Local 813, which had been under IBT trusteeship since 1993. According to the Amended Complaint, Maney used his new position as trustee to pressure plaintiff and other business agents to support Carey's re-election by purchasing tickets to a re-election dinner, distributing campaign literature at work sites during working hours, and donating $200 each to the campaign. Believing that Maney had threatened a business agent with discharge if he refused to contribute $500 to the Carey campaign, Rodriguez complied with Maney's requests despite the fact that he personally favored Hoffa.

In January 1997, Carey defeated Hoffa in the race for the IBT presidency, but the election was subsequently invalidated and a new election ordered. In the renewed contest, plaintiff chose to support Hoffa openly, and began publicly associating with several key Hoffa supporters. Around the same period of time, members of the Local started to mobilize to end the trusteeship. At the June 1998 general membership meeting, the first called by Maney for more than six months, members twice moved to petition the IBT to release Local 813 from the trust-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 816182 (S.D.N.Y.), 162 L.R.R.M. (BNA) 2610
**1999 WL 816182 (S.D.N.Y.)**

Page 2

eeship. Maney, however, blocked these challenges by refusing to call a vote on the petition. He also refused to allow members to speak on business properly before the meeting. Finally, after observing Rodriguez openly associating with Hoffa supporters outside the meeting hall, Maney ordered another business agent to retrieve plaintiff and accompany him back into the meeting hall.

*2 One month after the June meeting, Maney called Rodriguez into his office and fired him as business agent for Local 813. Initially, Maney justified the termination by accusing plaintiff of accepting bribes from employers. When pressed, however, he asserted that "some members had told him that plaintiff and Sylvester Needham [another business agent] were the 'ring leaders' of the movement to terminate the trusteeship and thus, end his leadership."Am. Compl. at ¶ 63. Maney further stated that he had been ordered to get the membership back under control by whatever means necessary and that he could not have plaintiff "cutting his legs from underneath him."*Id.* Nonetheless, after another discussion Maney agreed to rescind plaintiff's termination as long as plaintiff and the other business agents promised to help "quiet down" members opposed to the trusteeship. *Id.* at ¶ 64.Thereafter, Maney instructed plaintiff and other business agents to circulate and obtain membership signatures to a petition that denounced the actions taken by certain members favoring self-government for Local 813 and affirmed continued support for the trusteeship.

In August of 1998, plaintiff informed Maney's aide that the membership had refused to sign the petition. One week later, Maney again fired plaintiff, this time permanently, and replaced him with a white male. One week after that, Sylvester Needham, who had also failed to obtain any signatures, was discharged.

Plaintiff's first federal claim asserts that his termination violated the LMRDA. Relying on § 101(a)(2) of that Act-which protects the rights of a union member to "meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting,"29 U.S.C. § 411(a)(2)-plaintiff alleges that defendants impermissibly discharged him because of his support for the Hoffa campaign and Maney's belief that plaintiff was orchestrating the movement to end the trusteeship.

The cause of action that plaintiff here invokes,[FN2] however, is available only to protect a union member in the exercise of his rights as a member, and not in his capacity as a union employee. *SeeFinnegan v. Leu,* 456 U.S. 431, 434 (1982) (holding that business agents and all other appointed union officers have no cause of action under §§ 101(a)(2) and 102). In the instant case, plaintiff's factual allegations belie his conclusory assertion that defendants interfered with his rights as a union member. For example, plaintiff does not claim that defendants prevented him from participating in any member activities, nor does he allege that defendants sought to remove him as delegate, assuming, *arguendo,* that plaintiff retained that position after the conclusion of the 1996 IBT convention. Rather, plaintiff's allegation is that his free speech was impaired by defendants' termination of his employment, which relates solely to plaintiff's rights as an employee. Therefore, plaintiff states no claim under § 102 in his capacity as a union member.

> FN2. Section 102 of the Act provides a cause of action for violations of the preceding section. 29 U.S.C. § 412.

*3 Rodriguez responds that even if his claim relates solely to his status as a union employee, the claim falls within a narrow exception recognized as allowing appointed union officials to state § 102 claims where they have been dismissed as " 'part of a purposeful and deliberate attempt ... to suppress dissent within the union.'" *Finnegan,* 456 U.S. at 440 (quoting *Schonfeld v. Penza,* 477 F.2d 899, 904 (2d Cir.1973)); *see also**Maddalone v. Local 17,*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 816182 (S.D.N.Y.), 162 L.R.R.M. (BNA) 2610
**1999 WL 816182 (S.D.N.Y.)**

*United Brotherhood of Carpenters,* 152 F.3d 178, 183 (2d Cir.1998). Plaintiff claims to fall within this exception, however, only by reference to general conduct allegedly engaged in by IBT prior to the adoption of the LMRDA in 1959 and documented in the legislative history of that Act. *See* Pl.'s Second Mem. of Law at 2. Such vague and conclusory assertions, untimely and untied to anything particular regarding plaintiff, are insufficient to demonstrate the "extreme circumstances," *Cotter v. Owens,* 753 F.2d 223, 228 (2d Cir.1985), calling for the invocation of this exception.

Likewise, plaintiff's few specific, contemporary allegations of improper conduct directed towards the union membership-that Maney failed to call frequent membership meetings, denied members' requests to discuss union business at the June 1998 meeting, refused to permit a vote on a petition to end the trusteeship, and attempted to secure membership signatures in a petition expressing support for the trusteeship-are insufficient to support his claim. Assuming, *arguendo,* that the alleged conduct was even improper, it falls well below the level of "longstanding and well-documented patterns of harassment and intimidation,"*Maddalone,* 152 F.3d at 184, previously recognized by the Second Circuit as justifying the exception. *See id.*(economic reprisals against union members and disruption of union meetings); *Cotter,* 753 F.2d at 228-29 (fifteen-year history of litigation between dissident groups and leadership); *Johnson v. Kay,* 860 F.2d 529, 537 (2d Cir.1988) (physical threats and attempts to disrupt meetings and block communications between union president and her supporters); *Schonfeld,* 477 F.2d at 904 (lengthy history of intra-union conflict). Accordingly, plaintiff's cause of action under the LMRDA must be dismissed.

Plaintiff's next federal claims allege violations of Article II, Section 2(a) of the IBT constitution, which prohibits union members from knowingly harming or discriminating against "fellow member[s]." The claims are brought in federal court pursuant to Section 301 of the LMRA, 29 U.S.C. §, which confers federal subject matter jurisdiction over a suit by a union member for the violation of member rights created pursuant to a contract between labor organizations, including an international union constitution. *See Wooddell v. International Brotherhood of Electrical Workers,* 502 U.S. 93, 101-102 (1991).[FN3] However, notwithstanding that the Constitutional provision plaintiff relies on addresses the rights of union members, the actions plaintiff asserts violated this provision impacted him solely in his capacity as a union employee and had no impact on him in his capacity as a union member.

> FN3. While plaintiff also asserts claims for violation of the Local 813 constitution, these are not federal claims because local constitutions are not contracts between labor organizations. Rather, as plaintiff himself recognizes, these claims, if viable at all, arise pursuant to state law. *See* Pl.'s Second Mem. of Law at 14-15. *See also Korzen v. Local Union 705, International Brotherhood of Teamsters,* 75 F.3d 285, 288 (7th Cir.1996).

*4 Specifically, plaintiff alleges that defendants violated Article II, Section 2(a), by: (1) forcing union *employees,* including plaintiff, to donate money to the Carey campaign; (2) forcing union *employees,* including plaintiff, to campaign for Carey during working hours; (3) falsely accusing plaintiff of abusing his *business agent position* by taking bribes from employers; and, (4) terminating plaintiff's employment as *business agent.*Because plaintiff has alleged nothing to demonstrate that the provision on which he relies "was intended to protect [union] employees as well as members of the union,"*Korzen v. Local Union 705, International Brotherhood of Teamsters,* 75 F.3d 285, 289 (7th Cir.1996), he fails to state a claim under § 301. *Id.;see also Yerdon v. Henry,* 91 F.3d 370, 379 (2d Cir.1996).

Moreover, independently of plaintiff's failure to state the elements of a claim for breach of the IBT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 816182 (S.D.N.Y.), 162 L.R.R.M. (BNA) 2610
**1999 WL 816182 (S.D.N.Y.)**

Page 4

Constitution, he has failed to exhaust the intraunion remedies provided under that Constitution. While enforcement of this exhaustion doctrine is within the discretion of the Court, enforcement will generally be granted where the defendants demonstrate that the intraunion remedies available are neither inadequate, nor futile, nor unreasonable. *SeeJohnson v. General Motors,* 641 F.2d 1075, 1079-1080 (2d Cir.1981). Although defendants bear the burden of persuasion on all three points, in the instant case the Court need only consider the reasonableness of the intraunion remedies, as plaintiff nowhere suggests that resort to intraunion remedies would be either inadequate or futile. *Seeid.* at 1080 ("In this case, Johnson does not claim inadequacy or futility of the appeals procedure. Accordingly, we need consider only the reasonableness of the intraunion remedy in light of all the circumstances.").

In order to prove that intraunion remedies are reasonable, defendants may demonstrate "that Union members have been informed of the availability of internal ... remedies and that these procedures are not particularly cumbersome or confusing."*Id.* Here, defendants assert that Article XIX of the IBT constitution delineates clear procedures for bringing claims for violations of the constitution. In response, plaintiff does not contend that these procedures are inherently cumbersome or confusing, only that he should not be penalized for failing to exhaust the procedures because, he asserts, he was unaware of these provision and, under the *Johnson* case, it is the union's responsibility to notify its members which procedures to use. *See* Pl.'s Second Mem. of Law at 16. However, plaintiff overstates the degree to which *Johnson* absolves a plaintiff of responsibility for his own failure to exhaust intraunion remedies. In *Maddalone v. Local 17, United Brotherhood of Carpenters and Joiners of Amer.,* 152 F.3d 178, 187 (2d Cir.1998), the Second Circuit held that, particularly where (as here) a plaintiff is not just a union member but also a union employee, it is reasonable to expect him to be aware of the intraunion remedies "contained in the union's Constitution and Rules."*Id.SeealsoBennett v. Saunders,* 199 WL 529539, at *3 (S.D.N.Y.1999) ( "Plaintiffs either knew or should have known" of procedures in union constitution.). Such an expectation is even more appropriate in the instant case where, in contrast to *Maddalone,* plaintiff is seeking to enforce a specific substantive provision of the very constitution whose procedural provisions he claims not to have noticed. Accordingly, there is no basis for excusing plaintiff's failure to exhaust intraunion remedies and his claims under the IBT Constitution must be dismissed not only for failure to state a claim, but on this independent ground as well.

*5 Plaintiff's only remaining federal claim alleges that defendant IBT discriminated against him on the basis of his national origin in violation of Title VII. It is undisputed, however, that plaintiff failed to name the IBT in the administrative charge he filed with the Equal Employment Opportunity Commission ("EEOC").*See* Am. Compl., Ex. 2; transcript, 4/22/99, at 29. Accordingly, this Court is without subject matter jurisdiction to hear plaintiff's Title VII claim unless this case fits within the "identity of interest" exception that "permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge."*Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991). The "identity of interest" exception, however, is intended to benefit "parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements,"*id.,* and is unavailable to a party who was represented by counsel when his or her EEOC charge was filed. *SeeHarrington v. Hudson Sheraton Corp.,* 2 F.Supp.2d 475, 478 (S.D.N.Y.1998); *Alfano v. Costello,* 940 F.Supp. 459, 465 n. 2 (N.D.N.Y.1996); *Tarr v. Credit Suisse Asset Management, Inc.,* 958 F.Supp. 785, 794 (E.D.N.Y.1997); *Sharkey v. Lasmo (AUL Ltd.),* 906 F.Supp. 949, 954 (S.D.N.Y.1995). Accordingly, since plaintiff has conceded that he was represented by counsel when he filed his EEOC charge, *see* transcript, 4/22/99, at 29, the "identity of interest" exception does not apply and plaintiff's

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 816182 (S.D.N.Y.), 162 L.R.R.M. (BNA) 2610
**1999 WL 816182 (S.D.N.Y.)**

Page 5

Title VII claim must be dismissed.

For the aforementioned reasons, defendants' motions to dismiss are granted with respect to each of plaintiff's claims under federal law. In the absence of any remaining federal claims, the Court declines to exercise jurisdiction over the remaining state law claims and, accordingly, those claims are dismissed without prejudice. See *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). Clerk to enter judgment.

SO ORDERED.

S.D.N.Y.,1999.
Rodriguez v. International Broth. of Teamsters, AFL-CIO
Not Reported in F.Supp.2d, 1999 WL 816182 (S.D.N.Y.), 162 L.R.R.M. (BNA) 2610

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.